## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

CHAD PELISHEK,

           Plaintiff,                              Case No.: 2:23-CV-1048

v.

CITY OF SHEBOYGAN, MAYOR RYAN
SORENSON in his individual and official
capacity, ALDERPERSONS ON
SHEBOYGAN'S COMMON COUNCIL,
BARBARA FELDE, ROBERTA FILICKY-
PENESKI, AMANDA SALAZAR, all in their
individual and official capacities; and
DIRECTOR OF UPTOWN SOCIAL EMILY
RENDALL-ARAUJO in her individual and
official capacity;

           Defendants.

---

**DEFENDANTS CITY OF SHEBOYGAN, MAYOR RYAN SORENSON,
ALDERPERSONS BARBARA FELDE, ROBERTA FILICKY-PENESKI, AMANDA
SALAZAR, AND DIRECTOR EMILY RENDALL-ARAUJO'S
BRIEF IN SUPPORT OF THEIR FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)
MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY**

# TABLE OF CONTENTS

I.   Procedural History .................................................................................2

II.  Legal Standard for a Motion to Dismiss ................................................2

III. Argument ...............................................................................................3

    A.  Plaintiff's Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 8 ............3

    B.  Plaintiff's 42 U.S.C. § 1983 Official Capacity Claims Against All Individually Named Defendants Must Be Dismissed As A Matter Of Law ...............................4

    C.  Plaintiff's Title VII Claims Against All Individually Named Defendants Must Be Dismissed In Their Entirety As A Matter Of Law ...................................................4

    D.  Claim One: Violation of Title VII – Hostile Work Environment Claim ................5

    E.  Claim One: Violation of Title VII – Disparate Treatment Claim ...........................9
        1.  Plaintiff Has Failed To Allege Sufficient Facts To Establish The First Prong Of A Reverse Discrimination Claim .............................................10
        2.  Plaintiff Has Failed To Allege Sufficient Facts That He Suffered An Adverse Employment Action...............................................................12
        3.  Plaintiff Has Failed To Allege Sufficient Facts That He Was Treated Less Favorably Than Similarly Situated Individuals Not In His Protected Class ........................................................................................14

    F.  Claim Two: 42 U.S.C. § 1983 - Violation Of Fourteenth Amendment Equal Protection Of The Law........................................................................................15
        1.  Membership In A Class ........................................................................16
        2.  Class-Of-One .......................................................................................18

    G.  Claim Three: First Amendment Retaliation Claim ...............................................20
        1.  Plaintiff Did Not Engage In Constitutionally Protected Speech.............21
            1.  August 22 Department Head Meeting ...........................................21
            2.  Plaintiff's Alleged Statements Expressing Concerns About The DEI Group's War On White Christian Men And The City's Fraudulent Public Investigation Report .........................................21
        2.  Plaintiff Does Not Adequately Allege That He Suffered An Adverse Action That Would Likely Deter Free Speech ......................................22
        3.  Plaintiff Does Not Allege That Plaintiff's Speech Was 'At Least A Motivating Factor' In The Alleged Adverse Action...............................24

    H.  Claim Four: First Amendment Prior Restraint Claim............................................25
        1.  Confidential Information Ordinance......................................................26
            a.  Plaintiff Lacks Standing To Assert A First Amendment Claim ....26

  b. Plaintiff Has Failed To State A Claim that The City Confidential Information ordinance Is A Facially Unconstitutional Prior Restraint On Protected Speech..................................27

 2. False Statements Ordinance.................................................29
  a. Plaintiff Lacks Standing To Assert a First Amendment Claim .....29
  b. Plaintiff Has Failed To State A Claim That The City's False Statements Ordinance Is A Prior Restraint On Protected Speech...... ............................................................................30

 3. November 21, 2022 Letter .....................................................31
 4. February 7, 2023 Email.........................................................34
 5. March 8, 2023 Email.............................................................35

I. Director Rendall-Araujo and Alderperson Salazar Are Entitled To Dismissal Of Plaintiff's 42 U.S.C. § 1983 Claims Against Them In Their Entirety..................38
 1. Factual Allegations Against Ms. Rendall-Araujo and Alderperson Salazar Are Not Entitled To A Presumption Of Truth .........................38
 2. Plaintiff Fails To Allege Sufficient Facts That Allow For An Inference That The Complained Of Conduct Was Engaged In Under Color Of Law ....................................................................................40
  1. Ms. Rendall-Araujo...............................................40
  2. Alderperson Salazar ..............................................41
 3. Plaintiff Fails To Allege Sufficient Facts Demonstrating Their Personal Involvement In Relation To His § 1983 Violation Of His First and Fourteenth Amendment Rights.................................................42
  1. Ms. Rendall-Araujo...............................................42
  2. Alderperson Salazar ..............................................44

J. Alderpersons Felde, Filicky-Peneski and Salazar Are Entitled to Dismissal Of Plaintiff's 42 U.S.C. § 1983 Claims .....................................................46

K. Mayor Sorenson and Alderpersons Felde, Filicky-Peneski and Salazar Are Entitled To Absolute Legislative Immunity ...........................................47

L. The Individually Named Defendants Are Entitled To Qualified Immunity On Plaintiff's 42 U.S.C. § 1983 - Fourteenth Amendment and First Amendment Prior Restraint Claims..................................................................................48
 1. Fourteenth Amendment – Equal Protection Of The Laws.....................49
 2. First Amendment – Prior Restraint Claim ...............................51

M. Plaintiff Fails To State A Claim Against The City Based on Monell Liability For Plaintiff's 42 U.S.C. § 1983 Alleging Violations of the First Amendment and Fourteenth Amendment ............................................................................54
 1. Fourteenth Amendment – Equal Protection Of The Law Claim ............54
 2. First Amendment – Retaliation Claim ....................................57
 3. First Amendment – Prior Restraint Claim ................................58

N. Plaintiff's Claim For Punitive Damages Against the City and the Individually Named Defendants In Their Official Capacities Must Be Dismissed ...................59

O. Plaintiff's Request For Declaratory Judgment and Injunctive Relief Should Be Dismissed As A Matter Of Law............................................................................60

IV. Conclusion .........................................................................................................................60

<u>**TABLE OF AUTHORITIES**</u>

<u>**U.S. Supreme Court Cases**</u>
*Albright v. Oliver,* 510 U.S. 266 (1994) ...............................................................16
*Alexander v. United States*, 509 U.S. 544 (1993) .....................................26, 31, 33, 37
*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ..........................................................49
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................2, 3, 11, 12, 17, 42
*Behrens v. Pelletier*, 516 U.S. 299 (1996) .........................................................49
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................2, 3, 11. 12. 17
*Board of the County Comm'rs v. Brown,* 520 U.S. 397 (1997)...............................57
*Bogan v. Scott-Harris*, 523 U.S. 44 (1998)......................................................47, 48
*Cantwell v. Connecticut*, 310 U.S. 296 (1940) ...................................................26
*City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981) ..............................60
*Connick v. Myers*, 461 U.S. 138 (1983).............................................................20
*Enquist v. Or. Dep't of Agric.,* 553 U.S. 591 (2008) ...........................................16
*Garcetti v. Ceballos,* 547 U.S. 410 (2006) .....................................................20, 25
*Green v. Mansour,* 474 U.S. 64 (1985)..............................................................60
*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ......................................................49
*Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993)...............................................5, 6
*Humphries v. CBOCS West, Inc.,* 474 F.3d 387 (7th Cir. 2007), aff'd, 553 U.S. 442 (2008).......15
*Kennedy v. Bremerton Sch. Dist.,* 142 S.Ct. 2407 (2022)....................................20
*Kentucky v. Graham,* 473 U.S. 159 (1985).........................................................4
*Malley v. Briggs*, 475 U.S. 335 (1986) ............................................................49
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)...................................9
*Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 691 (1978)...............................................................................................47, 54, 55, 56, 57, 58, 59
*Pearson v. Callahan*, 555 U.S. 223 (2009).........................................................49
*Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986)........................................55, 59
*Pickering v. Board of Education*, 391 U.S. 563 (1968)........................................20
*Polk v. County*, 454 U.S. 312 (1981) .............................................................40
*Procunier v. Navarette*, 434 U.S. 555 (1978) ..................................................49
*SE. Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) ......................................26
*St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ..................................................56
*Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002) .........................................26
*United States v. Nat'l Treasury Employees Union*, 513 U.S. 454 (1995) .............................................................................................25, 26, 27, 28, 30, 32, 34, 36
*Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000)...........................................16
*West v. Atkins*, 487 U.S. 42 (1988).................................................................16


<u>**Seventh Circuit Cases**</u>
*Alexander v. Casino Queen, Inc.,* 739 F.3d 972 (7th Cir. 2014) .............................5, 7
*Ballance v. City of Springfield*, 424 F.3d 614 (7th Cir. 2005)..............................10
*Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677 (7th Cir. 1992)...................................3
*Baxter v. Vigo County School Corporation*, 26 F.3d 728 (7th Cir. 1994)....................................55
*Bell v. Keating,* 697 F.3d 445 (7th Cir. 2012)..................................................27
*Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781 (7th Cir. 2007) ...........................13

iv

*Burk v. Raemisch,* 555 F.3d 592 (7th Cir. 2009) .....................................................42, 47

*Chapin v. Fort-Rohr Motors, Inc.* 621 F.3d 673 (7th Cir. 2010)............................13, 14

*Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331 (7th Cir. 2004) ...............................13

*Crue v. Aiken,* 370 F.3d 668 (7th Cir. 2005)....................................................................25

*D.B. ex rel. Kurtis B. v. Kopp*, 725 F3d 681 (7th Cir. 2013) ..........................................19

*Del Marcelle v. Brown County Corp.,* 680 F.3d 887 (7th Cir. 2012) ..............................18

*Doe v. Galster,* 768 F.3d 611 (7th Cir. 2014)..................................................................17

*Donald v. Polk County,* 836 F.2d 376 (7th Cir. 1988)....................................16, 41, 42

*EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326 (7th Cir. 2002)..........................................13

*Fares Pawn, LLC v. Indiana Dept. of Financial Institutions*, 755 F.3d 839 (7th Cir. 2014) ..18, 19

*Formella v. Brennan,* 817 F.3d 503 (7th Cir. 2016) ..............................................10, 11 15

*Gable v. City of Chi.*, 296 F.3d 531 (7th Cir. 2002) .........................................................54

*George v. Walker*, 535 F.3d 535 (7th Cir. 2008) .............................................................20

*Gill v. City of Milwaukee,* 850 F.3d 335 (7th Cir. 2017)..................................................59

*Good v. Univ. of Chi. Med. Ctr.,* 673 F.3d 670 (7th Cir. 2012).......................................10

*Green Valley Invs. v. Winnebago County,* 794 F.3d 864 (7th Cir. 2015) .........................31, 33, 37

*Grieveson v. Anderson,* 538 F.3d 763 (7th Cir. 2008)...............................................54, 58

*Hansen v. Bennett,* 948 F.2d 397 (7th Cir. 1991) ...........................................................47

*Harnishfeger v. United States,* 943 F.3d 1105 (7th Cir. 2019).......................................20

*Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014 (7th Cir. 2003) ......................46

*Humphries v. CBOCS West, Inc.*, 474 F.3d 387 (7th Cir. 2007) ....................................15

*Jennings v. Emry*, 910 F.2d 1434 (7th Cir. 1990)..............................................................4

*Kingman v. Frederickson,* 40 F.4th 597 (7th Cir. 2022)...........................................21, 22

*Kuhn v. Goodlow,* 678 F.3d 552 (7th Cir. 2012) .............................................................46

*Lambert v. Peri Formworks Sys., Inc.,* 723 F.3d 863 (7th Cir. 2013) ...............................7

*L.P.* v. *Marian Catholic High Sch.,* 852 F.3d 690 (7th Cir. 2017) .................................16

*Luckie v. Ameritech Corp.,* 389 F.3d 708 (7th Cir. 2004) .................................................6

*Mannie v. Potter,* 394 F.3d 977 (7th Cir. 2005) ...............................................................7

*McCauley v. City of Chicago,* 671 F.3d 611 (7th Cir. 2011)..............................................2

*Mills v. Health Care Service Corp.*, 171 F.3d 450 (7th Cir. 1999).............................9, 11

*Milwaukee Deputy Sheriff's Ass'n v. Clarke,* 574 F.3d 370 (7th Cir. 2009) .....................

......................................................................................28, 31, 32, 33, 35, 37

*Minix v. Canarecci,* 597 F.3d 824 (7th Cir. 2010) ..........................................................60

*Ngeunjuntr v. Metropolitan Life Ins. Co.,* 146 F.3d 464 (7th Cir. 1998)..........................7

*Nischan v. Stratosphere Quality, LLC,* 865 F.3d 922 (7th Cir. 2017) ...............................

*Nabozny v. Podlesny,* 92 F.3d 446 (7th Cir. 1996).........................................................17

*Passananti v. Cook Cty.*, 689 F.3d 655 (7th Cir. 2012)......................................................5

*Peele v. Country Mut. Ins. Co.*, 288 F.3d 319 (7th Cir. 2002) ........................................10

*Phelan v. City of Chicago,* 347 F.3d 679 (7th Cir. 2003) ...............................................10

*Porter v. Erie Foods, Int'l, Inc.* 576 F.3d 629 (7th Cir. 2009) ..................................13-14

*Power v. Summers,* 226 F.3d 815 (7th Cir. 2000).....................................................23, 24

*Rateree v. Rockett,* 852 F.2d 946 (7th Cir.1988) ...........................................................48

*Reget v. City of La Crosse,* 595 F.3d 691 (7th Cir. 2010) ..............................................16

*Roby v. CWI, Inc.*, 579 F.3d 779 (7th Cir. 2009)............................................................13

*Samuelson v. Laporte Cmty. Sch. Corp.*, 526 F.3d 1046 (7th Cir. 2008) ........25, 26, 28, 32, 35, 37

*Sciafe v. VA,* 49 F.4th 1109 (7th Cir. 2022)..............................................................5, 7

*Silk v. City of Chicago*, 194 F.3d 788 (7th Cir. 1999) ................................................................6
*Sivard v. Pulaski County*, 17 F.3d 185 (7th Cir. 1994)..............................................................54
*Smith v. Metro. Sch. District*, 128 F.3d 1014 (7th Cir. 1997).....................................................4
*Spiegla v. Hull,* 371 F.3d 928 (7th Cir. 2004).............................................................................21
*Srail v. Vill. of Lisle*, 588 F.3d 940 (7th Cir. 2009) ....................................................................19
*Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir. 1985).........................................................54
*Sutliff, Inc. v. Donovan Cos., Inc.*, 727 F.2d 648 (7th Cir. 1984)..............................................17
*Taha v. Int'l Bhd. of Teamsters, Local 781,* 947 F.3d 464 (7th Cir. 2020) ...................................3
*T.E. v. Grindle*, 599 F.3d 583 (7th Cir. 2010)..............................................................................47
*Toney v. Burris*, 829 F.2d 622 (7th Cir. 1987)............................................................................60
*Tutman v. WBBM-TV, Inc./CBS, Inc.* 209 F.3d 1044 (7th Cir. 2000) ..........................................14
*Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918 (7th Cir. 1992)...............................................3
*U.S. EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276 (7th Cir. 1995)....................................4
*Valentine v. City of Chicago*, 452 F.3d 670 (7th Cir. 2006) ........................................................40
*Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771 (7th Cir. 1994) ...............................3, 4
*Whittaker v. N. Ill. Univ.*, 424 F.3d 640 (7th Cir. 2005).................................................................6
*Williams v. Banning*, 72 F.3d 552 (7th Cir. 1995).........................................................................5
*Wolf-Lillie v. Sonquist*, 699 F.2d 864 (7th Cir. 1983)..................................................................42

**Eastern District Wisconsin**
*Anthony v. City of Sacramento Sheriff's Dept.,* 845 F. Supp. 1396 (E.D. Ca. 1994)....................41
*Gnatzig v. Medco Health Solutions, Inc.,* 2009 U.S. Dist. LEXIS 49274 (E.D. Wis. June 11, 2009) ..................................................................................................................................................
..........................................................................................................................................6, 11, 15
*Haze v. Kucibek,* 2016 U.S. Dist. LEXIS 50283 (E.D. Wis. April 14, 2016) ........................ 18-19
*Hobbs v. Shesky*, 2022 U.S. Dist. LEXIS 202037 (E.D. Wis., November 7, 2022)......................4
*Odogba v. Wisconsin Dep't of Justice*, 22 F. Supp. 3d 895 (E.D. Wis. 2014) .............................46
*Rouse v. City of Milwaukee*, 921 F.Supp. 583 (E.D. Wis. 1996).................................................41
*Sitz v. Am. Fam. Mut. Ins. Co.,* 585 F. Supp. 3d 1187 (E. D. Wis. 2022) .................................7, 8

**Western District Wisconsin**
*Allen-Noll v. Madison Area Tech. Coll.,* 2018 U.S. Dist. LEXIS 217234 (W.D. Wis. Dec. 28, 2018).............................................................................................................................................47
*Brown v. Kemp,* 506 F. Supp.3d 649 (W.D. Wis. Dec. 10, 2020) ................................................29
*Collegians for a Constructive Tomorrow-Madison v. Regents of Univ. of Wisconsin Sys.*, 820 F. Supp. 2d 932 (W.D. Wis. 2011).................................................................................................47
*Walker v. J.H. Findorff & Sons, Inc.,* 2022 U.S. Dist. LEXIS 9223 (W.D. Wis. Jan. 19, 2022) ......
.......................................................................................................................................7, 8, 9

**Other Court Cases**
*Barrett v. Bd. of Educ.*, 13 F. Supp. 3d 502 (E.D.N.C. 2014) ....................................................60
*Harding v. Gray,* 9 F.3d 150 (D.C. Cir. 1993) ..............................................................................9
*Woodward v. City of Worland,* 977 F.2d 1392 (10th Cir. 1992) .................................................41

**Other Authorities**
Rule 11 ...........................................................................................................................................40

vi

Fed. R. Civ. P. 12(b)(6)..............................................................................................2

42 U.S.C. § 1981..................................................................................................46

42 U.S.C. § 1983..........................4, 15, 16, 20, 25, 38, 40, 41, 42, 46, 47, 48, 54, 57, 58, 59, 60

42 U.S.C. § 2000e-2(a)(1).........................................................................................5

5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1224 (4th ed.)..........3

U.S. Const. Amend. XIV ........................................................................................16

Melville Nimmer, Nimmer on Freedom of Speech, § 4.03, p. 4-14 (1984) ...............................26

Sheboygan Mun. Code § 2-251 .............................................................................27, 29

Sheboygan Mun. Code § 18-3 .........................................................................30, 31, 56

Sheboygan Mun. Code § 86.92...................................................................................43

# I. PROCEDURAL HISTORY

Plaintiff Chad Pelishek filed the present litigation on August 7, 2023, against six Defendants asserting a claim that he was subjected to discrimination and harassment in violation of Title VII, his Fourteenth Amendment Right to equal protection under the law was violated, and that his First Amendment rights were violated both in the form of a prior restraint as well as in retaliation for exercising said rights. For the reasons set forth below, Defendants move the Court to dismiss Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) as a matter of law because Plaintiff has failed to state any claim upon which relief may be granted.

# II. LEGAL STANDARD FOR A MOTION TO DISMISS

A party may assert that a complaint fails to state a claim upon which relief can be granted by a pre-answer motion. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint for failure to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly,* 550 U.S. at 570. In examining a pleading under Fed. R. Civ. P. 12(b)(6), the court must "accept the well-pleaded facts in the complaint as true while separating out legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011)*; (citing Iqbal,* 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations plausibly suggest an entitlement to relief." *Id. (citing Iqbal,* 556 U.S. at 681) (internal quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In keeping with the principles enunciated in *Iqbal* and *Twombly,* the Seventh Circuit has determined that sheer speculation, bald assertions and unsupported conclusory statements may be rejected when evaluating a Rule 12(b)(6) motion to dismiss. *Taha v. Int'l Bhd. of Teamsters, Local 781,* 947 F.3d 464, 469 (7th Cir. 2020).

Plaintiff's Complaint includes numerous allegations based on information and belief which the Seventh Circuit has held is "a clearly improper locution" under the federal rules, which require "a duty of reasonable pre complaint inquiry not satisfied by rumor or hunch." *See Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683-84 (7th Cir. 1992); *see also Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992) (Court held that allegations made upon information and belief "are insufficient, even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions.") Plaintiff fails to include any information in his Complaint identifying sufficient data to justify interposing his "based on information and belief" allegations. *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1224 (4th ed.).

## III. ARGUMENT

### A. Plaintiff's Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 8.

This Court should screen and dismiss Plaintiff's Complaint because it fails to comply with Federal Rule of Civil Procedure 8(a)(2) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8 is to provide the court and the defendants fair notice of the nature of the plaintiff's claims. *Vicom, Inc. v. Harbridge Merchant Servs*., 20 F.3d 771, 775 (7th Cir. 1994). Neither the court nor the defendants should be forced "to forever sift through [the complaint's] pages in search of [an] understanding" of the

3

nature of the plaintiff's claims. *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990). Here, Plaintiff's Complaint fails to satisfy this requirement at 267 numbered paragraphs spread over 42 pages, attaching eleven exhibits and asserted against six defendants. The Complaint is dense and extremely difficult to decipher at times what factual allegations are made with respect to which defendants. It is precisely the type of "prolix and confusing complaint" that warrants dismissal to avoid the needless expenditures of resources by Defendants and this Court. *Vicom,* 20 F.3d at 776.

**B. Plaintiff's 42 U.S.C. § 1983 Official Capacity Claims Against All Individually Named Defendants Must Be Dismissed As A Matter Of Law.**

In his Complaint, Plaintiff asserts all four claims against the City as well as all five of the individually named Defendants. The individually named Defendants all move to dismiss the claims against them in their official capacities on the basis that those claims are duplicative of the claims brought against the City of Sheboygan. Binding precedent holds that in relation to 42 U.S.C § 1983 claims, "an official capacity suit, is in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *Smith v. Metro. Sch. District*, 128 F.3d 1014, 1020 n.3 (7th Cir. 1997) *see also Hobbs v. Shesky*, 2022 U.S. Dist. LEXIS 202037 at *23 (E.D. Wis., November 7, 2022) ("By suing [city employees] in their 'official capacities,' the plaintiff did nothing more than sue the city . . . which he'd also sued. Suing the defendants in their 'official capacities' contributes nothing when a plaintiff has sued the governmental entity of which the defendant is a part.").

**C. Plaintiff's Title VII Claims Against All Individually Named Defendants Must Be Dismissed In Their Entirety As A Matter Of Law.**

Title VII authorizes suits against employers, not employees. *Nischan v. Stratosphere Quality, LLC,* 865 F.3d 922, 930 (7th Cir. 2017); *U.S. EEOC v. AIC Sec. Investigations, Ltd*., 55 F.3d 1276, 1281 (7th Cir. 1995). Moreover, the Court of Appeals for the Seventh Circuit has

4

held repeatedly that a "supervisor does not, in his individual capacity, fall within Title VII's definition of employer." *See Passananti v. Cook Cty.*, 689 F.3d 655, 677 (7th Cir. 2012); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995). Therefore, Plaintiff's Title VII claims against the individually named Defendants must be dismissed in their entirety as a matter of law.

### D. Claim One: Violation of Title VII – Hostile Work Environment Claim.

Plaintiff alleges that he was subjected to a hostile work environment based on both his race and gender. (*See* Pl. Compl. ¶'s 173-181) As noted above, Plaintiff cannot pursue Title VII claims against the individual Defendants. As such, his Title VII claims are limited to the City. *See supra,* III.C.

Title VII prohibits employers from discriminating against employees based on various protected characteristics including race and gender. 42 U.S.C. § 2000e-2(a)(1). A work environment is hostile under Title VII "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Sciafe v. VA,* 49 F.4th 1109, 1115 (7th Cir. 2022); (*citing Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). Plaintiff's Complaint fails to allege sufficient facts to state a hostile work environment claim based on either his race or gender. To do so, Plaintiff must allege that: "(1) the work environment was both subjectively and objectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Id.* at 1115-116; (*quoting Alexander v. Casino Queen, Inc.,* 739 F.3d 972, 982 (7th Cir. 2014)).

Most glaringly evident from a review of Plaintiff's Complaint, is his failure to allege sufficient facts to establish the second element of his hostile work environment claim -- that he was subjected to behavior that was overtly based on his race or gender. In his Complaint,

Plaintiff alleges that the harassment he was subjected to included "perpetuating public narratives that Plaintiff was a racist, trying to elicit public petitions to fire him, altering his job duties, making his working environment very difficult and constructively discharging him by communicating that he was suspended and suspected of misconduct." (*See* Pl. Compl. ¶ 177) Quite simply, Plaintiff fails to allege any facts that would support his assertion that the harassing conduct that Plaintiff alleges he was subjected to was related to the fact that he was white or a man. *See Gnatzig v. Medco Health Solutions, Inc.,* 2009 U.S. Dist. LEXIS 49274, * 26-27, 2009 WL 1649703 (E.D. Wis. June 11, 2009) (*citing Luckie v. Ameritech Corp.,* 389 F.3d 708, 713 (7th Cir. 2004)). In fact, it is abundantly clear from a review of the allegations in his Complaint, that the alleged harassing conduct lacks any connection to Plaintiff's race or gender. Rather, it is reasonable to infer from Plaintiff's Complaint that the alleged harassment was related to the fact that Plaintiff repeated a racial slur at a department head meeting, was involved in the resulting investigation and was allegedly subjected to harassment by various individuals purportedly due to his support of the City Administrator's handling of the incident. (*See* Pl. Compl. ¶¶'s 103, 112, 114-118, 122-126, 149-151) This fatal flaw requires dismissal of his hostile work environment claim.

Moreover, the harassing conduct alleged by Plaintiff is also insufficient to state a claim in relation to the first and third elements. The threshold for establishing a hostile work environment is high, as the "workplace that is actionable is one that is hellish." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) (*quoting Harris,* 510 U.S. at 21). Accordingly, many work environments, though uncomfortable and unprofessional, fail to meet this exceedingly high bar. *See, e.g., Silk v. City of Chicago*, 194 F.3d 788, 808 (7th Cir. 1999).

To adequately state the first element of a hostile work environment claim, a plaintiff must allege sufficient facts to support an inference that his work environment was both subjectively and objectively offensive. *See Sciafe,* 49 F. 4th at 1115; (*citing Alexander,* 739 F.3d at 982); *see also Walker v. J.H. Findorff & Sons, Inc.,* 2022 U.S. Dist. LEXIS 9223 * 7 (W.D. Wis. Jan. 19, 2022). To be an objectively offensive work environment, a reasonable person must find the environment hostile or abusive. *Id.* An objectively hostile work environment will not be found where "most of the conduct that forms the basis of [a plaintiff's] claim consists of derogatory statements made by supervisors or co-workers out of [his] hearing," and the rest is "isolated and not particularly severe." *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005); *see also Ngeunjuntr v. Metropolitan Life Ins. Co.,* 146 F.3d 464, 467 (7th Cir. 1998) (rejecting hostile work environment claim where most of the offensive comments giving rise to the claim were not directed at the plaintiff, and those that were directed at plaintiff were isolated).

To state the third element of his hostile work environment claim, Plaintiff must do more than include a conclusory allegation that the complained of conduct was severe and pervasive. (*See* Pl. Compl. ¶ 176) He must include allegations that allow the Court to infer that it was in fact severe and pervasive. "Courts consider the totality of the circumstances when determining whether conduct is severe or pervasive." *Sciafe,* 49 F. 4th at 1115; (*citing Lambert v. Peri Formworks Sys., Inc.,* 723 F.3d 863, 868 (7th Cir. 2013). This includes: "(1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it is directed at the victim." *Id.; see also Sitz v. Am. Fam. Mut. Ins. Co.,* 585 F. Supp. 3d 1187, 1192-93 (E. D. Wis. 2022).

Here, Plaintiff claims that:

- Alderpersons Salazar and Filicky-Peneski and Ms. Rendall-Araujo each stated that "white men of privilege cannot say things that women, homosexuals or persons of color can say and anything questionable said by a white man like Plaintiff is far worse than if said by someone else." (*See* Pl. Compl. ¶ 72)

- Mayor Sorenson had one discussion about starting a public petition to "get rid of Plaintiff," hired Heather Cleveland to assume some of his duties, blamed Plaintiff for Baker Tilly's inability to complete the City's strategic goals project and ordered Plaintiff to complete a $50,000 multi-month development grant proposal in two days. (*See* Pl. Compl. ¶¶'s 103, 123-125, 126)

- Mayor Sorenson and Alderperson Salazar told Tanya Des Armo and Peter Jannsen to try to find out information about Plaintiff from his family to get him fired. (*See* Pl. Compl. ¶ 118)

- While he was out on FMLA leave, unnamed City officials stated to citizens that Plaintiff was suspended, suspected of misconduct and potentially stealing money and was in a lot of trouble. (*See* Pl. Compl. ¶ 149)

Plaintiff's alleged harassment falls in the category of isolated comments made outside of his presence and all but one alleged incident makes no reference to race or gender. The harassing conduct alleged by Plaintiff was infrequent, was not physically threatening or humiliating conduct, did not unreasonably interfere with Plaintiff's work performance and would not be considered objectively offensive. As such, just like in *Sitz* and *Walker,* Plaintiff "has failed to plead facts that plausibly state a claim for a hostile work environment 'so pervaded by discrimination that his terms and conditions of employment were altered." *See Sitz,* 585 F. Supp. 3d at 1194.; *see also Walker,* 2022 U.S. Dist. LEXIS 9223 * 7 - 10. In *Sitz,* this Court granted defendants motion to dismiss finding that taken together the alleged conduct was "inappropriate and misguided but closer to mere offensive utterances than severe actionable comments under Title VII." *See Sitz,* 585 F. Supp. 3d at 1193-94. In *Walker*, the court granted defendant's motion to dismiss plaintiff's hostile work environment claim based on her race and national origin

finding that the alleged conduct was not "sufficiently pervasive, frequent or objectively offensive to state such a claim." *Walker,* 2022 U.S. Dist. LEXIS 9223 *at* * 10.

Based on the foregoing, Defendants are entitled to dismissal of Plaintiff's Title VII hostile work environment claim in its entirety as a matter of law.

### E. Claim One: Violation of Title VII – Disparate Treatment Claim.

Plaintiff alleges that Defendants violated Title VII by subjecting him to disparate treatment based on his gender. (*See* Pl. Compl. ¶¶'s 182-185) As noted above, Plaintiff cannot pursue Title VII claims against the individual Defendants. As such, his Title VII claims are limited to the City. *See supra,* III.C. Moreover, Plaintiff alleges that Ms. Rendall-Araujo is his peer and identifies her as his comparator. As such, even if Plaintiff could assert a Title VII claim against individual Defendants, Ms. Rendall-Araujo is entitled to dismissal of Plaintiff's disparate treatment claim against her because she was not a decision maker with the ability to terminate or take disciplinary action against him. (*See* Pl. Compl. ¶ 183)

Plaintiff's disparate treatment claim is one based on alleged reverse discrimination. *See Mills v. Health Care Service Corp*., 171 F.3d 450, 455 (7th Cir. 1999). In *Mills,* the Seventh Circuit concluded that it was appropriate to modify the first prong of *McDonnell-Douglas prima facie* test (which is being a member of a protected racial class) because "invidious discrimination against [men] is relatively uncommon in our society . . ." *Id.* (*citing Harding v. Gray,* 9 F.3d 150, 153 (D.C. Cir. 1993); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To avoid dismissal of his reverse discrimination claim, Plaintiff's Complaint must include sufficient allegations to indicate that: "(1) background circumstances exist to show an inference that his employer had reason or inclination to discriminate invidiously against [men] or evidence that there is something 'fishy' about the facts at hand; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he

9

was treated less favorably than similarly situated individuals who are not members of his protected class." *Id.; see also Formella v. Brennan,* 817 F.3d 503, 511 (7th Cir. 2016); *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) (citations and quotations omitted); *Good v. Univ. of Chi. Med. Ctr.,* 673 F.3d 670, 678 (7th Cir. 2012); (*citing Phelan v. City of Chicago*, 347 F.3d 679, 684-85 (7th Cir. 2003); *Peele v. Country Mut. Ins. Co*., 288 F.3d 319, 329 (7th Cir. 2002).

In support of his reverse discrimination disparate treatment claim, Plaintiff alleges that:

- Plaintiff was performing his reasonable job expectations and received good performance evaluations and reviews each year. (*See* Pl. Compl. ¶ 182)

- Ms. Rendall-Araujo is similarly situated to Plaintiff in all respects. (*See* Pl. Compl. ¶ 183)

- He was subjected to an adverse employment action when he was constructively discharged by the City. (*See* Pl. Compl. ¶ 184)

- The City did not take adverse employment action against similarly situated females, including Ms. Rendall-Araujo, who also repeated the "slur" and expressed concerns about harassment. (*See* Pl. Compl. ¶ 185)

### 1. Plaintiff Has Failed To Allege Sufficient Facts To Establish The First Prong Of A Reverse Discrimination Claim.

To avoid dismissal on the first prong of a reverse discrimination claim, Plaintiff must allege sufficient facts to indicate that the Defendants had a reason or inclination to discriminate invidiously against males or evidence that there is something "fishy" about the facts at hand. He fails to do so, which entitles Defendants to dismissal as a matter of law. A search of Plaintiff's Complaint confirms that he included only a handful of allegations that relate to his claim that he was subjected to disparate treatment because he is a male. (*See* Pl. Compl. ¶¶'s 43, 143, 157 and 173) These allegations do not create an inference or something "fishy" suggesting that

Defendants were motivated by gender to discriminate against males. *See Formella,* 817 F.3d at 512.

Plaintiff's allegation that a less qualified female replaced him is insufficient to support his claim of reverse discrimination. (*See* Pl. Compl. ¶ 157) A boiler plate legal conclusion, without more, will not suffice to meet his pleading obligations under Federal Rule 12(b)(6). *See Iqbal*, 556. U.S. at 663-64 (Holding that allegations that state legal conclusions or "[t]hreadbare recitals of a cause of action's elements . . . are not entitled to the assumption of truth.") "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* at 678 (*quoting Twombly,* 550 U.S. at 557) (internal brackets omitted). Here, Plaintiff's Complaint is devoid of any allegations that gender played a role in the decision regarding the person hired to replace Plaintiff after he resigned. *See Mills,* 171 F.3d at 454; *see also Gnatzig,* 2009 U.S. DIST. LEXIS 49274 * 12-13. The crux of any inquiry regarding the hiring decision relative to Plaintiff's replacement is not whether the candidate selected for the position was less qualified than Plaintiff, but rather whether she was the most qualified candidate in comparison to the others in the candidate pool.

Moreover, the allegations that Ms. Rendall-Araujo said that one of her "hobbies is dismantling the patriarchy;" that the City forced a white male to take a demeaning job working for [Ms.] Rendall[-Araujo] at a far less pay rate while offering promotions and opportunities to non-white employees; and that the City's policies are permeated with discriminatory and anti-white heterosexual male animus including that they do not belong to any protected status do not create an inference or something "fishy" suggesting that Defendants were motivated by gender to discriminate against males. *See Formella,* 817 F.3d at 512. It is completely irrelevant to his disparate treatment claim that his claimed comparator allegedly makes a hobby out of

11

dismantling the patriarchy. (*See* Pl. Compl. ¶ 43) A single example of another unnamed white male employee being demoted while offering other non-white employees promotions and opportunities is an allegation of potential race discrimination, not gender discrimination. (*See* Pl. Compl. ¶ 143) Even if it were an allegation of gender discrimination, a single incident would be insufficient to meet Plaintiff's burden to support an inference that the City was inclined to invidiously discriminate against males. Finally, a boilerplate allegation that the City's policies are permeated with discriminatory animus is insufficient to support an inference that the City was inclined to invidiously discriminate against males. (*See* Pl. Compl. ¶ 173); *see also Iqbal*, 556. U.S. at 663-64, 678; *Twombly,* 550 U.S. at 557. Plaintiff's Complaint fails to include any allegations that the City had reason to discriminate invidiously against men or that there was something "fishy" about the facts in this case and therefore fails to allege sufficient facts to state a claim in relation to the first prong of a reverse discrimination claim.

### 2. Plaintiff Has Failed To Allege Sufficient Facts That He Suffered An Adverse Employment Action.

Plaintiff has also failed to allege an adverse employment action sufficient to meet the third prong of a reverse discrimination claim. Plaintiff does not allege that he was terminated from his employment. Rather, Plaintiff claims that he was "constructively discharged by the City." (*See* Pl. Compl. ¶ 184) Specifically, Plaintiff alleges that "being subject to eight months of hostility as a racist, refusals to correct false information about him, gag orders from the City, and communications that he would be fired for misconduct when he returned from work form the basis for his assertion that he was constructively discharged." *Id.* Plaintiff's allegation fails before it can even get off the ground because glaringly missing is any allegation that the complained of conduct was initiated against him because he was a man. Even without that fatal

flaw, Plaintiff's Complaint does not include sufficient allegations to allow for an inference that he was constructively discharged.

The Seventh Circuit recognizes two different forms of constructive discharge. In the first form, "an employee resigns due to alleged discriminatory harassment." *Chapin v. Fort-Rohr Motors, Inc.* 621 F.3d 673, 679 (7th Cir. 2010). "Such cases require a plaintiff to show working conditions even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress, thereby allowing an employer to address a situation before it causes the employee to quit." *Id.* (first *citing Roby v. CWI, Inc*., 579 F.3d 779, 785 (7th Cir. 2009), then *citing Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789-90 (7th Cir. 2007). "The second form of constructive discharge [the Seventh Circuit has] recognized occurs when an employer acts in a manner so as to have communicated to a reasonable employee that [he] will be terminated . . ." *Id.; (citing EEOC v. Univ. of Chi. Hosps*., 276 F.3d 326, 332 (7th Cir. 2002)). "In this situation, if the plaintiff employee resigns, the employer's conduct may amount to constructive discharge." *Id*. "This form of constructive discharge, however, does not eliminate the need for the plaintiff to show that his working conditions had become intolerable." *Id.; (citing Cigan v. Chippewa Falls Sch. Dist*., 388 F.3d 331, 333 (7th Cir. 2004). "And a working condition does not become intolerable or unbearable merely because a prospect of discharge lurks in the background." *Id.*

Plaintiff has failed to include sufficient factual allegations in his Complaint to allege constructive discharge under either of the two forms referenced above. First his Complaint does not include sufficient allegations to demonstrate that his working conditions were more egregious than that required to state a hostile work environment claim. *See supra,* III.D. For instance, he does not allege that there was a threat to his personal safety. *See, e.g. Porter v. Erie*

*Foods, Int'l, Inc.,* 576 F.3d 629, 640 (7th Cir. 2009). Moreover, the statements Plaintiff attributes to Alderpersons Salazar and Filicky-Peneski and Ms. Rendall-Araujo that "white men of privilege cannot say things that women, homosexuals or persons of color can say and anything said by a white man like Plaintiff is far worse than if said by someone else" do not infer that the City has reason or inclination to discriminate against men nor would they rise to the level of a hostile work environment sufficient to establish constructive discharge. (*See* Pl. Compl. ¶ 72); *see also Tutman v. WBBM-TV, Inc./CBS, Inc.* 209 F.3d 1044, 1050 (7th Cir. 2000).

Finally, Plaintiff's Complaint fails to include sufficient allegations to support an inference that "a reasonable employee standing in [his] shoes would believe that had he not resigned, he would have been immediately fired." *Chapin,* 621 F.3d at 680. Notably, Plaintiff's *belief* that he would be fired for misconduct arose while he was out on FMLA leave. (*See* Pl. Compl. ¶¶'s 149-150) Moreover, Plaintiff admits that he resigned without ever returning from FMLA leave. (*See* Pl. Compl. ¶ 151) Plaintiff does not allege that his firing was an imminent and inevitable event. Rather, he alleges only that he "believed" that Council was going to fire him. (*See* Pl. Compl. ¶ 150) He does not allege that he returned to work or otherwise made any effort to communicate with anyone at the City regarding his "belief" to find out if in fact he was going to be fired following Alderperson Salazar being elected to a Council Leadership position in April 2023. Without an adverse employment action, Plaintiff's reverse discrimination disparate treatment claim fails as a matter of law.

### 3. Plaintiff Has Failed To Allege Sufficient Facts That He Was Treated Less Favorably Than Similarly Situated Individuals Not In His Protected Class.

Plaintiff's Complaint does not include sufficient allegations to adequately allege the fourth prong of a reverse discrimination claim. He alleges that Ms. Rendall-Araujo is similarly situated to him in all respects. (*See* Pl. Compl. ¶ 183) He fails to include any allegations to

14

explain how they are similarly situated. To be considered similarly situated "employees must be directly comparable to the plaintiff in all material respects." *Formella,* 817 F.3d at 512; (*citing, Good,* 673 F.3d at 675 (citations and quotations omitted). "The goal of the comparison analysis is to eliminate other possible explanatory variables, 'such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable -- discriminatory animus.'" *Id.* (*quoting Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir. 2007), aff'd, 553 U.S. 442 (2008)). Ms. Rendall-Araujo is not similarly situated to Plaintiff. While they were both employed as directors, that is where the similarity ends. They worked in different departments and had different job duties and responsibilities.

Even assuming that Ms. Rendall-Araujo is similarly situated to Plaintiff in all respects, Plaintiff fails to include sufficient factual allegations to support an inference that he was treated differently. *See Gnatzig,* 2009 U.S. DIST. LEXIS 49274 *16. In fact, Plaintiff included only a single allegation in support of his effort to plead the fourth prong of his *prima facie* case -- that the City did not take adverse employment action against similarly situated females, including Ms. Rendall-Araujo, who also repeated the 'slur' and expressed concerns about harassment. (*See* Pl. Compl. ¶ 185) Plaintiff's boilerplate allegation that the City subjected him to disparate discipline in comparison to Ms. Rendall-Araujo is contradicted and refuted by other factual allegations included in his Complaint. In fact, Plaintiff alleges that he was never disciplined for any reason during his employment, that the Council did not discipline Ms. Rendall-Araujo, and he was not disciplined by the Council. (*See* Pl. Compl. ¶¶'s 140, 153, 183) Based on the foregoing, Defendants are entitled to dismissal of Plaintiff's Title VII disparate treatment in its entirety as a matter of law.

**F. Claim Two: 42 U.S.C. § 1983 - Violation Of Fourteenth Amendment Right To Equal Protection Of The Law.**

As noted above, Plaintiff's claims against the individually named Defendants in their official capacities must be dismissed as a matter of law as duplicative of the claims he asserts against the City. *See supra,* III.B. 42 U.S.C. § 1983 is a procedural vehicle for the enforcements of federally protected rights, rather than a substantive grants of rights. *See Albright v. Oliver,* 510 U.S. 266, 271 (1994) (citation omitted). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitutions and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *See L.P.* v. *Marian Catholic High Sch.,* 852 F.3d 690, 696 (7th Cir. 2017) (*citing and quoting West v. Atkins,* 487 U.S. 42, 48 (1988)); *see also Donald v. Polk County,* 836 F.2d 376, 379 (7th Cir. 1988).

The Fourteenth Amendment to the Constitution provides in pertinent part ". . . nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. "The equal protection clause prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'" *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010) (first *citing Enquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008); and then *citing Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Wading through the repetitious and overlapping allegations contained in Claim Two of Plaintiff's Complaint to decipher the basis for Plaintiff's equal protection claim is difficult. However, Plaintiff appears to be asserting an equal protection violation under both theories.

### 1. Membership In A Class.

16

When asserting an equal protection claim based on membership in a class, a plaintiff must allege that "a defendant 'acted with a nefarious discriminatory purpose' and discriminated against him based on his membership in a definable class." *Doe v. Galster,* 768 F.3d 611, 622 (7th Cir. 2014) (*quoting Nabozny v. Podlesny,* 92 F.3d 446, 453-54 (7th Cir. 1996)). Here, to support his membership in a class equal protection claim, Plaintiff alleges that "[b]y denying the Plaintiff (male) the rights and privileges of employment that females are granted, and replacing Plaintiff with a less qualified female, the Defendants are violating and have violated Plaintiff's equal protection rights." (Pl. Compl. ¶ 204) This equates to an assertion that he was denied equal protection under Title VII based on disparate treatment and this claim fails for the same reasons his underlying disparate treatment claim fails. *See supra,* III.D.

Further, Plaintiff's allegation falls far short of what is required to pass muster. Plaintiff must plead facts sufficient to outline the elements of this cause of action and may not rest on bare conclusory allegations. *See Sutliff, Inc. v. Donovan Cos., Inc*., 727 F.2d 648, 654 (7th Cir. 1984). Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Allegations that state legal conclusions or "[t]hreadbare recitals of a cause of action's elements . . . are not entitled to the assumption of truth." *Iqbal*, 556. U.S. at 663-64. This allegation is nothing more than a legal conclusion. Plaintiff has failed to include any factual allegations to support his membership in a class equal protection claim and it should be denied on this basis alone. In fact, Plaintiff's Complaint is devoid of any allegations delineating what rights and privileges of employment he claims females are granted that males are not granted. Moreover, the fact that the City hired a female, whom Plaintiff claims was less qualified, to fill the position that Plaintiff resigned from, in and

of itself, is insufficient to state an equal protection violation claim based on membership in a class. *See supra,* III.E.1.

In relation to the City's ordinances, Plaintiff alleges that "the Common Council has never disciplined or threatened to discipline Ms. Rendall-Araujo under either of these ordinances for allegedly disclosing that Plaintiff was a racist who made frequent unsolicited racial slurs to incite public outcry." (*See* Pl. Compl. ¶ 140) However, the City Administrator, not the Common Council, is responsible for supervising department heads and handling personnel matters. (*See* Pl. Compl. ¶ 15) Even if the Common Council was responsible for issuing discipline to department heads, Plaintiff acknowledges that Common Council has never given Plaintiff any written or official reprimand or performance-related concern related to misconduct. (*See* Pl. Compl. ¶ 153) By not disciplining either Plaintiff or Ms. Rendall-Araujo, the Common Council's treatment of each has been the same.

### 2. Class-Of-One.

In equal protection class-of-one claims, the plaintiff is not suing as a member of a protected, identifiable group (race or gender, for example). *See Del Marcelle v. Brown County Corp.,* 680 F.3d 887, 895 (7th Cir. 2012). Instead, the plaintiff sues as an individual on the basis that a government official or entity treated him unfairly without a good reason. *See id*. at 889; *see also Fares Pawn, LLC. v. Indiana Dept. of Financial Institutions*, 755 F.3d 839, 845 (7th Cir. 2014) ("It is clear that a class-of-one plaintiff must show: (1) that he has been intentionally treated differently from others similarly situated; and (2) that there is no rational basis for the difference in treatment.") Moreover, "even if a plaintiff [pleads] facts that cast the official's action as one taken out of animosity, if a rational basis for the action can be found, that will be the end of the matter -- animus or not." *Haze v. Kucibek,* 2016 U.S. Dist. LEXIS 50283 * 4-5

(E.D. Wis. April 14, 2016) (*citing Fares Pawn*, *LLC.,* 755 F.3d at 845) (internal quotations and citations omitted). "The rational-basis requirement sets the legal bar low and simply requires a 'rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *Id.* at * 5-6 (*citing D.B. ex rel. Kurtis B. v. Kopp*, 725 F3d 681, 686 (7th Cir. 2013)) (*quoting Srail v. Vill. of Lisle*, 588 F.3d 940, 946 (7th Cir. 2009)) (internal quotation marks omitted).

In support of his class-of-one equal protection claim, Plaintiff alleges that "Defendants allowed similarly situated employees and officials like Liz Majerus, [Ms.] Rendall[-Araujo], Abby Block and others to associate with the DEI group (who also filed suit against the City via Guevara and Haack) while denying Plaintiff from associating with Mr. Wolf, a private citizen." (Pl. Compl. ¶ 194) At the outset, Plaintiff's class-of one claim fails because it does not include any allegation that there was no rational basis for the alleged difference in treatment. (*See* Pl. Compl. ¶¶'s 189-209) Even without this fatal flaw, the two situations are not comparable. As Plaintiff himself notes, unlike former City Administrator Wolf, Ms. Guevara and Ms. Haack, did not sue the City. Rather, they sent a cease-and-desist letter to the City in relation to the false statements they claimed Mr. Wolf had made about them. (Pl. Compl. ¶ 101) Moreover, Plaintiff was asked to refrain from communicating with Mr. Wolf during the pendency of the City's investigation by Attorney Hall. (Pl. Compl., Ex. 6) He has failed to allege that Ms. Majerus, Ms. Rendall-Araujo and Ms. Block, or other similarly situated City employees, were not subject to the same request. Further, all City employees were directed to have no communication with Mr. Wolf or his attorney via the email on February 7, 2023. (Pl. Compl., Ex. 8) Finally, all department heads received the March 8, 2023, email from Ms. Majerus. (Pl. Compl., Ex. 10) As such, Plaintiff has failed to allege and cannot demonstrate that he was treated differently than

other similarly situated employees in relation to these directives. Based on the foregoing, Defendants are entitled to dismissal of Plaintiff's 42 U.S. C. § 1983 claim asserting a Fourteenth Amendment violation of his right to equal protection of the law claim in its entirety as a matter of law.

### G. Claim Three: First Amendment Retaliation Claim.

As noted above, Plaintiff's claims against the individually named Defendants in their official capacities must be dismissed as a matter of law as duplicative. *See supra,* III.B. To state a First Amendment retaliation claim in an employment context, Plaintiff must sufficiently plead three specific elements: "(1) he engaged in constitutionally protected speech; (2) he suffered a deprivation that would likely deter free speech; and (3) his speech was 'at least a motivating factor' in the employer's decision to take the retaliatory action." *Harnishfeger v. United States,* 943 F.3d 1105, 1112-13 (7th Cir. 2019); *George v. Walker*, 535 F.3d 535, 538 (7th Cir. 2008). The Supreme Court recently addressed this issue and advised that the "threshold inquiry" focuses on "the nature of the speech at issue." *Kennedy v. Bremerton Sch. Dis*t., 142 S.Ct. 2407, 2423 (2022). "If a public employee speaks pursuant to his 'official duties,' the First Amendment generally will not shield the individual from an employer's control and discipline because that kind of speech is—for constitutional purposes at least—the government's own speech." *Id.* (*citing Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006)). "On the other hand, if the government employee speaks as a private citizen on a matter of public concern, the Free Speech inquiry is more complex and requires courts to go the added step of engag[ing] in a delicate balancing of the competing interests surrounding the speech and its consequences." *Garcetti* 547 U.S. at 423 (internal quotations omitted); *see also Connick v. Myers*, 461 U.S. 138, 147 (1983); *Pickering v. Board of Education*, 391 U.S. 563 (1968).

**1. Plaintiff Did Not Engage In Constitutionally Protected Speech.**

Here, Plaintiff alleges that his repetition of a racial slur at the August 22 department head meeting was protected speech. (*See* Pl. Compl. ¶ 217) He also alleges that his alleged statements expressing concerns about the "DEI group's war on white Christian men" and the "City's fraudulent public investigation report" were protected speech. (*See* Pl. Compl. ¶ 223) In analyzing whether Plaintiff's alleged statements were First Amendment protected speech, the Court must look at the "content, form and context of the contested statement, as revealed by the whole record." *See Kingman v. Frederickson,* 40 F.4th 597, 602 (7th Cir. 2022) (*citing Spiegla v. Hull,* 371 F.3d 928, 935 (7th Cir. 2004)).

**a. August 22 Department Head Meeting.**

It is clear from a review of Plaintiff's Complaint, that he repeated the racial slur that a citizen had made at a neighborhood meeting as part of his official duties as a public employee during a City department head meeting and not as a private citizen. Plaintiff was employed as the Director of Planning and Development for the City and was responsible for overseeing roughly a dozen City employees. (*See* Pl. Compl. ¶¶'s 34, 36) Plaintiff appointed a City employee within his department to act as a contact person for the citizen neighborhood leaders. (*See* Pl. Compl. ¶ 44) That City employee reported the racial slur incident to Plaintiff. (*See* Pl. Compl. ¶ 45) Plaintiff brought the incident up at the August 22 department head meeting to see if anyone had information he could provide to the neighborhood groups to help address racism in the neighborhood meetings. (*See* Pl. Compl. ¶ 46)

**b. Plaintiff's Alleged Statements Expressing Concerns About The DEI Group's War On White Christian Men And The City's Fraudulent Public Investigation Report.**

In support of his claim that he engaged in protected speech, Plaintiff alleges that he reported to Alderperson Filicky-Peneski on at least three occasions that he was being harassed, set up, targeted as a "white man of privilege" by the DEI group and expressed his concerns about the investigation report being released to the public with false statements. (*See* Pl. Compl. ¶¶'s 128, 138) Plaintiff also claims that on February 6, 2022, he told Mr. Westbrook that the report contained false statements and should not be released to the public. (*See* Pl. Compl. ¶¶'s 135-136) These alleged statements would have occurred prior to the commencement of Plaintiff's leave of absence on March 27, 2023. Based on the foregoing, it is clear that the alleged statements Plaintiff claims to have made privately to Alderperson Filicky-Peneski and Mr. Westbrook were made as part of his official duties as a public employee. *See Kingman,* 40 F.4th at 602 (holding that an employee choosing to air his concerns publicly, during the public session of the City Council meeting, rather than privately with individual councilmembers suggested that he intended to speak as a private citizen on a matter of public concern, rather than as a public employee about a personal matter.)

### 2. Plaintiff Does Not Adequately Allege That He Suffered An Adverse Action That Would Likely Deter Free Speech.

The only adverse actions that Plaintiff claims he was subjected to in support of his First Amendment retaliation claim include:

- Ms. Rendall-Araujo, Alderperson Salazar and Mayor Sorenson telling the DEI group and the local news media that Plaintiff was a racist, frequently made racial slurs and told their DEI group friends to send outraged emails to demand Council fire Plaintiff. (*See* Pl. Compl. ¶ 221)

- Defendants coordinated multiple public petitions to fire Plaintiff, forced him to turn over job duties to DEI Group (Heather Cleveland), threatened Plaintiff with strikes against him and communicated that Plaintiff was suspended, suspected of serious misconduct, in a lot of trouble and would be fired when he returned from leave. (*See* Pl. Compl. ¶ 227)

22

To state a claim, in relation to the second element of a First Amendment retaliation case, the conduct or action being complained of by Plaintiff must have been "sufficiently adverse to deter the exercise of [First Amendment] rights." *See Power v. Summers,* 226 F.3d 815, 821 (7th Cir. 2000). The conduct identified in the bullets above would not deter an ordinary person from expressing concerns about racism, the DEI group's war on white men or the City's fraudulent public investigation -- the First Amendment activity that Plaintiff claims to have engaged in. Moreover, it did not deter Plaintiff from engaging in such activity. It is illogical to assert that being called out as a racist would deter that person from reporting racism.

Plaintiff's allegations in support of his alleged adverse employment actions are based merely on "information and belief" without a scintilla of supporting evidence. (*See* Pl. Compl. ¶¶'s 54, 57, 103, 152) The Seventh Circuit has long held that this type of pleading is "a clearly improper locution" under the federal rules, which require "a duty of reasonable pre complaint inquiry not satisfied by rumor or hunch." *See supra,* II. As such, this Court should disregard these allegations. Even if the Court considers the allegations based on information and belief, the timing of Plaintiff's allegations does not support his claims. Ms. Rendall-Araujo, Alderperson Salazar and Mayor Sorenson could not have told the DEI group and the local news media that Plaintiff was a racist, frequently made racial slurs and told their DEI group friends to send outraged emails to demand Council fire Plaintiff until after Plaintiff repeated the racial slur at the department head meeting on August 22, 2023. (*See* Pl. Compl. ¶ 221) Therefore, the adverse actions of which Plaintiff complains could not have deterred the "speech" he claims was protected since the protected speech had already been made.

In addition, it is clear that none of the complained of adverse actions actually deterred the speech he claims is protected in relation to expressing concerns about the "DEI group's war on

23

white Christian men" and the "City's fraudulent public investigation report." He made those alleged statements to Mr. Westbrook on February 6, 2023 and to Alderperson Filicky-Peneski at some point after the public release of the investigation report in February 2023 and his FMLA leave on March 27, 2023. (*See* Pl. Compl. ¶¶'s 135-136, 138, 145, 151) However, the complained of adverse actions all took place *before* he spoke to Alderperson Filicky-Peneski or Mr. Westbrook. (*See* Pl. Compl. ¶¶'s 123-128, 133-135, 138) As such, the alleged adverse actions did not actually deter the speech considering that Plaintiff chose to make such statements anyway. Consequently, based on the allegations in Plaintiff's Complaint, clearly the alleged adverse action was not "sufficiently adverse to deter the exercise of" Plaintiff's allegedly protected speech. *See Power,* 226 F.3d at 821.

The only alleged adverse action that Plaintiff claims occurred after the statements he claims to have made to Alderperson Filicky-Peneski and Mr. Westbrook involves his claim that City officials told citizens that Plaintiff was suspended, suspected of misconduct, was potentially stealing money and was in a lot of trouble allegedly occurred while he was out on FMLA leave. (*See* Pl. Compl. ¶ 149) Logically, this alleged adverse action could not have deterred the "speech" he claims was protected because his statements had already been made.

### 3. Plaintiff Does Not Allege That Plaintiff's Speech Was 'At Least A Motivating Factor' In the Alleged Adverse Action.

The third element of his First Amendment retaliation claim is known as the "causation element." To state a claim, Plaintiff must allege that his protected speech was at least a motivating factor in causing the adverse action that he claims he was subjected to. Plaintiff's Complaint is devoid of any such allegation. (*See* Pl. Compl. Claim Three, ¶¶'s 217-235) Furthermore, for the reasons stated *supra at* III.G.1.a-b, Plaintiff cannot establish this element of his *prima facie* claim. Based on the foregoing, Defendants are entitled to dismissal of Plaintiff's

24

42 U.S.C. § 1983 claim asserting a First Amendment retaliation claim in its entirety as a matter of law.

**H. Claim Four: First Amendment Prior Restraint Claim.**

Plaintiff alleges that the City's Confidential Information and False Statements ordinances, the November 21, 2022, letter issued to him, and February 7 and March 8, 2023, emails issued to employees constituted prior restraints on his First Amendment rights. Plaintiff asserts this claim against the City as well as the individually named Defendants in both their official and individual capacities. As noted above, Plaintiff's claims against the individually named Defendants in their official capacities must be dismissed as a matter of law as duplicative. *See supra,* III.B.

The first step in evaluating Plaintiff's prior restraint claims is to determine whether the ordinances or directives at issue involve restrictions that apply to speech that is protected by the First Amendment. *See Samuelson v. Laporte Cmty. Sch. Corp.*, 526 F.3d 1046, 1051 (7th Cir. 2008) (*citing United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 465-66 (1995)) ("*NTEU*"); *Crue v. Aiken*, 370 F.3d 668, 678 (7th Cir. 2005)). "For the restriction to qualify as a prior restraint, the employee must have an interest in the speech as a citizen commenting upon a matter of public concern." *Id.* at 1052; *NTEU*, 513 U.S. at 465-66; *Crue*, 370 F.3d at 678. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Id.* (*citing Garcetti,* 547 U.S. at 421.

If, and only if, Plaintiff can satisfy the *NTEU* threshold requirement, will it be necessary to advance to the next step and determine whether the complained of ordinances or directives constituted prior restraints on his free speech. "The term 'prior restraint' is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Samuelson,* 526 F.3d at 1051 (*citing Alexander*

*v. United States*, 509 U.S. 544, 550 (1993)) (*quoting* Melville Nimmer, Nimmer on Freedom of Speech, § 4.03, p. 4-14 (1984)). A restriction is a prior restraint if it meets four elements: "(1) the speaker must apply to the decision maker before engaging in the proposed communication; (2) the decision maker is empowered to determine whether the applicant should be granted permission on the basis of its review of the content of the communication; (3) approval of the application requires the decision maker's affirmative action; and (4) approval is not a matter of routine, but involves 'appraisal of facts, the exercise of judgment, and the formation of an opinion' by the decision maker." *Id.* at 1051-52 (*citing SE. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554 (1975); *see also Thomas v. Chicago Park Dist.*, 534 U.S. 316, 321 (2002); *Cantwell v. Connecticut*, 310 U.S. 296, 305 (1940)).

### 1. Confidential Information Ordinance.

#### a. Plaintiff Lacks Standing to Assert A First Amendment Claim.

The heading to Claim Four identifies the Claim as a "Violation of Plaintiff's First Amendment Rights - Prior Restraint." (*See* Pl. Compl. P. 38) In support of his claim that the Confidential Information ordinance is a prior restraint, Plaintiff alleges only that "it allows City officials to arbitrarily engage in content-based restrictions on employee speech under threat of discipline or termination. . ." (*See* Pl. Compl. ¶ 238) and that enforcement of the ordinance "was a moving force behind the Defendants' unconstitutional restraint on his protected speech." (*See* Pl. Compl. ¶¶'s 239-240)

Plaintiff has failed to allege a plausible as applied challenge to the ordinance. He alleges only that the Defendants enforcement of this ordinance punished and threatened to punish Plaintiff for exercising his First Amendment rights. (*See* Pl. Compl. ¶ 240) His Complaint fails to include a single allegation that identifies any specific punishment, actual or threatened, that he

was subjected to under the ordinance. As such, Plaintiff has failed to allege sufficient facts that he was injured by the ordinance. Further, as a former employee who is no longer subject to the ordinance, Plaintiff faces no present objective harm or threat of specific future harm. *See Bell v. Keating,* 697 F.3d 445, 454 (7th Cir. 2012). Therefore, he lacks standing to assert prior restraint challenge to this ordinance. *Id.*

> **b. Plaintiff Has Failed To State A Claim That The City Confidential Information Ordinance Is A Facially Unconstitutional Prior Restraint On Protected Speech.**

The City's Confidential Information ordinance provides that "[n]o city officer, employee, or agent shall, without proper legal authorization, disclose confidential information concerning the property, government or affairs of the city nor use such information to advance the financial or other private interest of the officer, employee, or agent or others." *See* Sheboygan Mun. Code § 2-251.[1]

Plaintiff's Complaint fails to state a claim because it does not include any allegations sufficient to satisfy the threshold *NTEU* requirement that Plaintiff had an interest in speech prohibited by the Confidential Information ordinance as a citizen commenting upon a matter of public concern. Moreover, Plaintiff's Complaint is devoid of any allegations that he was prevented from speaking on topics encompassed by the Confidential Information ordinance or that the ordinance restricted him from engaging in speech made outside of work, included restrictions unrelated to his work duties, and restricted his speech to general public audiences.

Post-*NTEU*, the Seventh Circuit dealt with a First Amendment prior restraint claim involving a confidentiality policy. *See Milwaukee Deputy Sheriff's Ass'n. v. Clarke*, 574 F.3d 370, 375 (7th Cir. 2009). The Seventh Circuit held that the policy was not an unlawful prior

---

[1] The Complaint refers to the Confidential Information ordinance as "§ 2-272" of the Sheboygan Municipal Code. But on June 5, 2023, the policy was adopted by the Sheboygan Common Council as § 2-251. *See* Sheboygan Mun. Code § 2-251.

27

restraint because it does not apply to speech protected by the First Amendment specifically finding that it regulated only speech "grounded in the public employee's professional duties." *Id.* (*citing Samuelson*, 526 F.3d at 1052). Here, just like *Milwaukee Deputy Sheriff's Ass'n.,* the City's Confidential Information ordinance is not an unlawful prior restraint because it does not apply to speech protected by the First Amendment. It only regulates speech grounded in the public employee's professional duties.

Even if the Court determined that the City's Confidential Information ordinance applied to speech protected by the First Amendment, Plaintiff's prior restraint claim fails, whether it is evaluated on a facial challenge or as applied challenge. In support of his claim that this policy is a prior restraint on his First Amendment rights, Plaintiff alleges only that:

- The policy does not include any definition for "city matters" and employees who are not sure whether information is "confidential" must seek "prior approval" from the Common Council—whose agenda is set and overseen by the mayor. (*See* Pl. Compl. ¶ 21)

- The ordinance allowed City officials to arbitrarily engage in content-based restrictions on employee speech under threat of discipline or termination – including speech related to conflicts of interest, bribery or corruption related to City appointments. (*See* Pl. Compl. ¶ 238)

- Defendants' enforcement of these policies and practices punished and threatened to punish Plaintiff for exercising his First Amendment rights. *(See* Pl. Compl. ¶ 239)

The City's Confidential Information ordinance is not a prior restraint on speech. As this Court previously held in its Ruling on the City Defendants' Motion to Dismiss in *Todd Wolf v. City of Sheboygan et. al.,* Plaintiff's allegations are based on a misreading of the Confidential Information ordinance, which does not contain any sort of prior approval mechanism. *See* 2:23-cv-00149, Dkt 62, p. 16-17. Nor is the Common Council vested with any authority to determine whether something is confidential or not. *Id.; see also* Sheboygan Mun. Code § 2-251.

Moreover, although "confidential" is not defined in the ordinance, "it is afforded its common and ordinary meaning." *Id.; see also Brown v. Kemp,* 506 F. Supp.3d 649, 662 (W.D. Wis. Dec. 10, 2020) (holding that a word or phrase does not require formal definition when its ordinary meaning is well understood and can be found in any dictionary.).

### 2. False Statements Ordinance.

#### a. Plaintiff Lacks Standing To Assert a First Amendment Claim.

The heading to Claim Four identifies the Claim as a "Violation of Plaintiff's First Amendment Rights - Prior Restraint." (*See* Pl. Compl. P. 38) In support of his claim that the False Statements ordinance is a prior restraint, Plaintiff alleges only that "it allows City officials to arbitrarily engage in content-based restrictions on employee speech under threat of discipline or termination. . ." (*See* Pl. Compl. ¶ 238) and that enforcement of the ordinance "was a moving force behind the Defendants' unconstitutional restraint on his protected speech." (*See* Pl. Compl. ¶¶'s 239-240) He further alleged that the Defendants enforcement of this ordinance punished and threatened to punish Plaintiff for exercising his First Amendment rights. (*See* Pl. Compl. ¶ 240) He fails to include a single allegation that identifies any specific punishment, actual or threatened, that he was subjected to under the ordinance. As such, Plaintiff has failed to allege sufficient facts that he was injured by the policy. *Id.* Therefore, he lacks standing to assert prior restraint challenge to this ordinance.

#### b. Plaintiff Has Failed To State A Claim That The City's False Statements Ordinance Is A Prior Restraint On Protected Speech.

The City's False Statements ordinance provides that "[n]o persons shall make any false statement or report with regard to any test, certification or appointment made under any provisions of this chapter or in any manner commit or attempt to commit any fraud preventing

29

the impartial execution of this chapter and policies." *See* Sheboygan Mun. Code § 18-3.[2] Preliminarily, Plaintiff's Complaint fails to state a claim because it does not include any allegations sufficient to satisfy the threshold *NTEU* requirement that Plaintiff had an interest in speech prohibited by the False Statements ordinance as a citizen commenting upon a matter of public concern. Moreover, Plaintiff's Complaint is devoid of any allegations that he was prevented from speaking on topics actually encompassed by the False Statements ordinance or that the ordinance restricted him from engaging in speech made outside of work, included restrictions unrelated to his work duties, and restricted his speech to general public audiences.

Even if the Court determined that the City's False Statements ordinance applied to speech protected by the First Amendment, Plaintiff's prior restraint claim fails, whether it is evaluated on a facial challenge or as applied challenge. In support of his claim that this ordinance is a prior restraint on his First Amendment rights, Plaintiff alleges only that:

- The ordinance "threatens employees with discipline if they make any false statements about political appointment efforts or try to commit fraud or internal investigations related to the enforcement of allegations about bribery, political corruptions, or City appointments." (*See* Pl. Compl. ¶ 23)

- Elected officials are exempt from the ordinance. (*See* Pl. Compl. ¶ 24)

- The ordinance allowed City officials to arbitrarily engage in content-based restrictions on employee speech under threat of discipline or termination – including speech related to conflicts of interest, bribery or corruption related to city appointments. (*See* Pl. Compl. ¶ 238)

- Defendants' enforcement of these policies and practices punished and threatened to punish Plaintiff for exercising his First Amendment rights. (*See* Pl. Compl. ¶ 239)

---

[2] On March 23, 2023, the City adopted a recodification of its Code. That recodification did not change the substance of §§ 82-3 but did renumber it as § 18-3. *See* Sheboygan Mun. Code § 18-3 – 18-6 (available at https://sheboygan.municipalcodeonline.com/book?type=ordinances#name=Sec_2251_Disclosure_Of_Confidential_Information). As such, Defendants refer to the new code section number throughout their Brief.

Once again, Plaintiff's prior restraint claim rests on a misreading of the ordinance. His claim that the ordinance threatens discipline of employees who make *any* false statements is simply wrong. The ordinance proscribes only false statements or reports in regard to "*any test, certification or appointment under any provision of this chapter . . .*" *See* Sheboygan Mun. Code § 18-3 (emphasis added). The ordinance does not require a speaker to obtain permission before speaking. *Milwaukee Deputy Sheriff's Ass'n.*, 574 F.3d at 383. Further, there is no internal review process for determining whether a certain communication is permitted. *Id. see also* e.g., *Conrad*, 420 U.S. at 554; *Alexander,* 509 U.S. at 550; *Green Valley Invs. v. Winnebago County*, 794 F.3d 864, 868 (7th Cir. 2015).

Plaintiff also does not allege a plausible as applied challenge to the ordinance. He alleges only that the Defendants' enforcement of this ordinance punished and threatened to punish Plaintiff for exercising his First Amendment rights. (*See* Pl. Compl. ¶ 240) He fails to include a single allegation that identifies speech that he made or wanted to make in relation to "any test, certification or appointment" that fell within the parameters of the False Statements ordinance. Further, he fails to include any allegations that identifies any specific punishment, actual or threatened, that he was subjected to under the ordinance. In fact, the majority of the allegations in Plaintiff's Complaint that relate to the False Statements ordinance focus almost entirely on his claim that the exemption of elected officials from application of the ordinance allow elected officials to make false statements and commit fraud. (*See* Pl. Compl. ¶¶'s 23, 24, 205, 214) In other words, a fair reading of Plaintiff's allegations, taken as a whole, is that Plaintiff takes issue with the ordinance, not because it is unconstitutional prior restraint on protected speech, but rather that it should also apply to the City's elected officials.

### 3. November 21, 2022 Letter.

Plaintiff's Complaint fails to state a claim because it does not include any allegations sufficient to satisfy the threshold *NTEU* requirement that Plaintiff had an interest in speech prohibited by the November 21, 2022, letter as a citizen commenting upon a matter of public concern. The November 21, 2022, letter delivered by Mayor Sorenson to Plaintiff was issued to him in his capacity as an employee of the City and he was advised that the directives contained in the letter were considered part of his essential job duties. (*See* Pl. Compl., Ex. 6) It notified him that the City had hired an outside attorney to conduct an investigation involving communications, conduct and leadership of the City Administrator and allegations of inappropriate and illegal conduct made by the City Administrator. *Id.* The letter outlined what was expected of Plaintiff in relation to the City's investigation, i.e. confidentiality, truthfulness, cooperation, no retaliation, being respectful, etc. *Id.*

It is clear from a review of the November 21, 2022, letter that it did not prohibit Plaintiff from commenting on a matter of public concern. Rather, it outlined his duties and obligations as a City employee regarding an investigation initiated by the City. As such, it does not apply to speech protected by the First Amendment because it regulated speech grounded in Plaintiff's professional duties. *See Milwaukee Deputy Sheriff's Ass'n.*, 574 F.3d at 383; (*citing Samuelson*, 526 F.3d at 1052).

Even if the Court determined that the November 21, 2022, letter applied to speech protected by the First Amendment, Plaintiff's prior restraint claim fails. In support of his claim that this letter is a prior restraint on his First Amendment rights, Plaintiff alleges that:

- On November 21, Sorenson delivered Plaintiff a letter with directives for the investigation. The "investigation directives" stated only that a private attorney (Jill Hall) was working with Sorenson and would conduct the investigation into certain allegations and the communications, conduct and leadership of Mr. Wolf. (*See* Pl. Compl. ¶ 90)

- In the investigation directives, Plaintiff was ordered to not speak to Mr. Wolf, to fully cooperate with the investigation and directives, and that he was not to disclose anything about the investigation or situation to any person until Sorenson formally and expressly relieved this directive, unless he had a legal right to have a representative present. (*See* Pl. Compl. ¶ 91)

- Sorenson's investigation directives remain in full force and effect against Plaintiff, and Council or Sorenson have never formally or expressly relieved Plaintiff of them. (*See* Pl. Compl. ¶ 94)

Notably, Plaintiff resigned his employment May 12, 2023. As a former employee he would no longer be subject to the directives in the November 21, 2022, letter and would face no present objective harm or threat of specific future harm. (*See* Pl. Compl. ¶ 151)

Plaintiff attached a copy of the November 21, 2022, letter as Exhibit 6 to his Complaint. As such, to the extent the allegations contained in his Complaint are contradicted by the letter or are otherwise not supported, the letter should control. (*See* Pl. Compl., Ex. 6) A review of Plaintiff's allegations and Exhibit 6 demonstrate that the November 21, 2022, letter was not a prior restraint on first amendment protected speech. It did not require Plaintiff to obtain permission before speaking. *See Milwaukee Deputy Sheriff's Ass'n.*, 574 F.3d at 383. Moreover, there is no internal review process for determining whether a certain communication is permitted. *Id. see also* e.g., *Conrad*, 420 U.S. at 554; *Alexander*, 509 U.S. at 550; *Green Valley Invs.*, 794 F.3d at 868. In fact, the letter provided Plaintiff with an example of circumstances in which he could disclose information and the notice that would be required to do so. (*See* Pl. Compl., Ex. 6, p. 1)

Finally, even if the Court determined that the November 7, 2022, letter was a prior restraint on speech protected by the First Amendment, Plaintiff's interest in being able to talk about the City's investigation did not outweigh the City's interests which were expressly set

forth in the letter which states that the City's interests and purpose for the confidentiality directive were as follows:

> The confidentiality instruction is to safeguard the welfare and privacy of all individuals involved . . . and will also fulfill the following necessary aspects of the investigation. Compliance with City policy, Preservation of any privileges necessary for the City to protect its interests pursuant to this inquiry, Protection of individuals involved and participating in this matter from retaliatory, intimidating or harassing conduct, Preservation of the integrity and effectiveness of the inquiry, [Plaintiff's] protection as a participant in this inquiry and to protect the City and the City Administrator.

*Id.* at 2.

### 4. February 7, 2023 Email.

Plaintiff's Complaint fails to state a claim because it does not include any allegations sufficient to satisfy the threshold *NTEU* requirement that Plaintiff had an interest in speech prohibited by the February 7, 2023, email as a citizen commenting upon a matter of public concern. The February 7, 2023, email from Assistant City Attorney ("ACA") Majerus was issued to him in his capacity as an employee of the City. (*See* Pl. Compl., Ex. 8) It notified employees that City Administrator Wolf had filed a lawsuit against the City, the Mayor, City Attorney and eight Alderpersons. *Id.* The email advised employees not to speak with Mr. Wolf or his Attorney and to notify ACA Majerus if they were contacted. *Id.* The email further indicated that if employees were asked about the lawsuit, they were encouraged to say that it was a personnel matter and the topic of an active litigation so they could not discuss it. *Id.*

When evaluated in relation to its application to Plaintiff, it is clear from a review of the February 7, 2023, email that it did not prohibit Plaintiff from commenting on a matter of public concern. Rather, it outlined his duties and obligations as a management level employee of the City, whose statements and conduct could be attributed to the City. As such, it does not apply to

34

speech protected by the First Amendment because it regulated speech grounded in Plaintiff's professional duties. *See Milwaukee Deputy Sheriff's Ass'n.*, 574 F.3d at 383; (*citing Samuelson*, 526 F.3d at 1052).

Even if the Court determined that the February 7, 2023, email applied to speech protected by the First Amendment, Plaintiff's prior restraint claim fails. In support of his claim that this email is a prior restraint on his First Amendment rights, Plaintiff alleges only that ACA Majerus sent a City-wide gag order telling employees they were not allowed to speak to Mr. Wolf or his attorney because it might be used as evidence against the City. (*See* Pl. Compl. ¶ 130) Plaintiff also attached a copy of the February 7, 2023, email as an exhibit to his Complaint. As such, to the extent the allegations contained in his Complaint are contradicted by the email or are otherwise not supported, the email should control. (*See* Pl. Compl., Ex. 8)

A review of Plaintiff's allegations and Exhibit 8 demonstrate that the February 7, 2023, email was not a prior restraint on his first amendment protected speech. While the letter directed Plaintiff not to communicate with City Administrator Wolf or his attorney because the City was a named Defendant, it did not proscribe him from speaking with others about the lawsuit. Rather, it simply encouraged him to say that he couldn't discuss it because it involved a personnel matter and active litigation. (*See* Pl. Compl., Ex. 8) Finally, even if the Court determined that the February 7, 2023 email was a prior restraint on speech protected by the First Amendment, Plaintiff's interest in being able to talk to City Administrator Wolf and his attorney did not outweigh the City's interests in ensuring that Plaintiff, a management level employee, whose words and actions can bind the City, did not speak about active litigation with an opposing party or their attorney, and required notification of any such contact by Plaintiff or his attorney.

**5.   March 8, 2023 Email.**

Plaintiff's Complaint fails to state a claim because it does not include any allegations sufficient to satisfy the threshold *NTEU* requirement that Plaintiff had an interest in speech prohibited by the March 8, 2023, email as a citizen commenting upon a matter of public concern. The March 8, 2023, email from Human Resources Director Westbrook was sent to Plaintiff in his capacity as a management level employee of the City. (*See* Pl. Compl., Ex. 10) It notified the directors of all of the City departments that the City was required to release the investigation report prepared by Attorney Hall. *Id.* The email advised the recipients that if they were questioned about the report, it was a public record, and they were encouraged to direct the person inquiring to read the documents. *Id.* Since the City was a party to litigation, the email advised the management level employees that no employee was allowed to speak about matters related to former City Administrator Wolf or business of the City that involved the former Administrator to anyone without the City's attorneys being present. *Id.*

When evaluated in relation to its application to Plaintiff, it is clear from a review of the March 8, 2023, email that it did not prohibit Plaintiff from commenting on a matter of public concern. In fact, a majority of the email simply explains why the City was releasing the investigation report and the process involved. The proscription from speaking about matters related to former City Administrator Wolf or business of the City that involved the former Administrator to anyone without the City's attorneys being present does not apply to speech protected by the First Amendment because it regulated speech grounded in the recipient City department heads professional duties. *See Milwaukee Deputy Sheriff's Ass'n.*, 574 F.3d at 383; (*citing Samuelson*, 526 F.3d at 1052).

Even if the Court determined that the March 8, 2023, email applied to speech protected by the First Amendment, Plaintiff's prior restraint claim fails. In support of his claim that this

email is a prior restraint on his First Amendment rights, Plaintiff alleges only that the City (through Human Resources) sent an email to Plaintiff stating that City employes were not allowed to talk to anyone about Mr. Wolf's federal lawsuit allegations (including the investigation) without the City's lawyers present, but that the investigation report could be provided to persons who had questions. Plaintiff also attached a copy of the March 8, 2023, email as an exhibit to his Complaint. As such, to the extent the allegations contained in his Complaint are contradicted by the email or are otherwise not supported, the email should control. (*See* Pl. Compl., Ex. 10)

A review of Plaintiff's allegations and Exhibit 10 demonstrate that the March 8, 2023, email was not a prior restraint on first amendment protected speech. It did not require Plaintiff to obtain permission before speaking. *See Milwaukee Deputy Sheriff's Ass'n.*, 574 F.3d at 383. Moreover, there is no internal review process for determining whether a certain communication is permitted. *Id.*; *see also* e.g., *Conrad*, 420 U.S. at 554; *Alexander*, 509 U.S. at 550; *Green Valley Invs.*, 794 F.3d at 868. In fact, while the email stated that Plaintiff could not speak about matters related to former City Administrator Wolf or business of the City that involved the former Administrator to anyone without the City's attorneys being present, it did not proscribe him from speaking. Rather, if he wished to do so, it required him to do so in the presence of the City's attorneys. Moreover, the email encouraged him to refer people that asked him about the investigation report to the document itself and encouraged him to say that he was not the best person to discuss it with them. It did not require him to do so. (*See* Pl. Compl., Ex. 10)

Finally, even if the Court determined that the March 8, 2023 email was a prior restraint on speech protected by the First Amendment, Plaintiff's interest in being able to speak about matters related to former City Administrator Wolf or business of the City that involved the

former Administrator to anyone without the City's attorneys being present does not outweigh the City's interests in ensuring that Plaintiff, a management level employee, whose words and actions can bind the City, did not speak about matters involved in active litigation against the City outside the presence of the City's attorney.

Based on the foregoing, Defendants are entitled to dismissal of Plaintiff's 42 U.S. C. § 1983 claim asserting a First Amendment prior restraint claim as a matter of law.

I. **Director Rendall-Araujo and Alderperson Salazar Are Entitled To Dismissal Of Plaintiff's 42 U.S.C. § 1983 Claims Against Them In Their Entirety.**

1. **Factual Allegations Against Ms. Rendall-Araujo and Alderperson Salazar Are Not Entitled To A Presumption Of Truth**

Plaintiff's Complaint includes the following allegations regarding Ms. Rendall-Araujo's alleged misconduct:

- Stating that her hobbies include "dismantling the patriarchy."

- Having knowledge that the DEI group arranged for an unknown man to make a racial slur at a neighborhood meeting.

- Setting him up to repeat the racial slur by telling Plaintiff to say "exactly" the racist comment that was made at the neighborhood meeting.

- Telling multiple people in the DEI group that Plaintiff was racist and making repeated offensive racial slurs.

- Telling Ms. Hilty that Plaintiff made a racial slur.

- Stating that "white men of privilege" cannot say things that women, homosexuals or "person of color" can say and anything questionable said by a "white man" like Plaintiff is far worse than if said by someone else.

- Repeating the racial slur fully to Council members and the public in demands and statements to fire Plaintiff because of his alleged racism as a "white man of privilege."

- Telling Tanya Des Armo and Peter Jannsen to get information from Plaintiff's wife and children that could be spun in a false light to incite a public petition to fire Plaintiff.

- Telling DEI group friends to send outraged emails to Council to get him fired.

(*See* Pl. Compl. ¶¶'s 43, 45, 48, 49, 54, 72, 75, 118)

Plaintiff's Complaint includes the following allegations regarding Alderperson Salazar's alleged misconduct:

- Applauding Ms. Rendall-Araujo for standing up to Plaintiff's racism.

- Stating that "white men of privilege" cannot say things that women, homosexuals or "person of color" can say and anything questionable said by a "white man" like Plaintiff is far worse than if said by someone else.

- Leading the charge demanding Plaintiff be fired during closed sessions on October 17 and 24.

- Repeating the racial slur fully to Council members and the public in demands and statements to fire Plaintiff because of his alleged racism as a "white man of privilege.

- Telling Tanya Des Armo and Peter Jannsen to get information from Plaintiff's wife and children that could be spun in a false light to incite a public petition to fire Plaintiff.

- Ordering Alderperson Filicky-Peneski to try and determine whether Plaintiff was speaking to the public about the investigation report or to Mr. Wolf.

(*See* Pl. Compl. ¶¶'s 62, 72, 74, 75, 118, 148)

The allegations contained in paragraphs 45, 54, 75, 118 and 148 against Ms. Rendall-Araujo and Alderperson Salazar are not entitled to a presumption of truth. Rather, they are "based on information and belief" which the Seventh Circuit has long held is "a clearly improper locution" under the federal rules, which require "a duty of reasonable pre complaint inquiry not satisfied by rumor or hunch." (*See* Pl. Compl. ¶¶'s 45, 54, 75, 118, 148); *see supra,* II.

Plaintiff's § 1983 claims against Ms. Rendall-Araujo and Alderperson Salazar should be dismissed because his "based on information and belief" allegations are not entitled to a

presumption of truth. They are reckless and outrageous allegations - - the type of conduct that could very well support a Rule 11 Motion for Sanctions.

### 2. Plaintiff Fails To Allege Sufficient Facts That Allow For An Inference That The Complained Of Conduct Was Engaged In Under Color Of Law.

Plaintiff included only one boilerplate allegation, in his entire 42-page Complaint, that the individually named Defendants acted under color of state law. (*See* Pl. Compl. ¶ 166) To determine whether someone is acting under color of law, courts evaluate the relationship between the defendant's alleged misconduct and the power, authority and duties conferred by the state. *See Polk v. County*, 454 U.S. 312, 321 (1981). "Action is taken under color of state law when it involves a misuse of power, 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' As a result, acts by a state officer are not made under color of state law unless they are related in some way to the performance of the duties of the state office." *Valentine v. City of Chicago*, 452 F.3d 670, 682-83 (7th Cir. 2006) (citations omitted).

#### a. Ms. Rendall-Araujo

Plaintiff only included eight paragraphs in his 42-page Complaint that even arguably include factual allegations relating to Ms. Rendall-Araujo's alleged misconduct. (*See* Pl. Compl. ¶¶'s 43, 45, 48, 49, 54, 72, 75, 118) A review of these paragraphs confirms that Plaintiff's Complaint is devoid of any allegations that would allow an inference that any of the misconduct was related in some way to the performance of Ms. Rendall-Araujo's duties as the Director of Senior Services. *Id.; see also supra,* I.1.

Each of Plaintiff's § 1983 claims against Ms. Rendall-Araujo fail because, even if accepted as true, which Ms. Rendall-Araujo fervently refutes, the allegations of misconduct asserted by Plaintiff do not demonstrate that she acted under color of state law. The mere fact

that Ms. Rendall-Araujo is a City employee does not mean every action taken by her is under color of law. Moreover, "courts have generally declined to find liability under § 1983 against a co-worker, unless the [alleged misconduct] involved an abuse of authority or position." *See Rouse v. City of Milwaukee*, 921 F.Supp. 583, 588 (E.D. Wis. 1996) (*citing Woodward v. City of Worland,* 977 F.2d 1392, 1400 (10th Cir. 1992)); *Anthony v. City of Sacramento Sheriff's Dept.,* 845 F. Supp. 1396, 1400 (E.D. Ca. 1994).

Finally, Plaintiff does not allege, nor could he, that Ms. Rendall-Araujo had any power or authority over Plaintiff. In fact, he admits they were peers, both holding positions as directors in different departments at the City. (*See* Pl. Compl. ¶¶'s 6, 12) Based on the foregoing, Ms. Rendall-Araujo is entitled to dismissal of Plaintiff's § 1983 claims because he has failed to allege sufficient facts that she violated his constitutional rights while acting under color of state law. *See Marian Catholic High Sch.,* 852 F.3d at 696; *see also Donald,* 836 F.2d at 379.

### b. Alderperson Salazar

Plaintiff only included six paragraphs in his 42-page Complaint that even arguably relates to alleged misconduct by Alderperson Salazar. (*See* Pl. Compl. ¶¶'s 62, 72, 74, 75, 118, 148) A review of these paragraphs confirms that only three of the allegations could possibly relate in any way to Alderperson Salazar's job duties, responsibilities, and authority in her position as an Alderperson on the Common Council for the City of Sheboygan. *Id.; see also supra,* I.1. Those three allegations are found in paragraphs 74, 75, and 148 which allege that Alderperson Salazar led the charge demanding Plaintiff be fired during closed sessions on October 17 and 24; repeated the racial slur to Council and the public in support of her demand to have Plaintiff fired and ordered Alderperson Filicky-Peneski to try and determine whether Plaintiff was speaking to the public about the investigation report or to Mr. Wolf. None of these allegations relate to

Plaintiff's claim that his constitutional rights under the First and Fourteenth Amendments were violated.

Moreover, Plaintiff's § 1983 claims against Alderperson Salazar fail because, even if accepted as true, which Alderperson Salazar wholeheartedly denies, the allegations do not demonstrate that she acted under color of state law. The mere fact that Alderperson Salazar is a member of the Common Council does not mean every action taken by her is under the color of law. Based on the foregoing, Alderperson Salazar is entitled to dismissal of Plaintiff's § 1983 claims because Plaintiff has failed to allege sufficient facts that she violated his constitutional rights while acting under color of state law. *See Marian Catholic High Sch.,* 852 F.3d at 696; *see also Donald,* 836 F.2d at 379.

### 3. Plaintiff Fails To Allege Sufficient Facts Demonstrating Their Personal Involvement In Relation To His § 1983 Violation Of His First and Fourteenth Amendment Rights.

"An individual cannot be held liable in a [§] 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). In other words, to state a claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676 (emphasis added); *see also Burk v. Raemisch,* 555 F.3d 592, 593-94 (7th Cir. 2009).

#### a. Ms. Rendall-Araujo

Ms. Rendall-Araujo is entitled to dismissal of Plaintiff's First Amendment prior restraint and retaliation claims against her in their entirety as a matter of law. As a preliminary matter, his Complaint is devoid of a single allegation that she directly participated in a prior restraint on his First Amendment rights. (*See* Pl. Compl. ¶¶'s 236–256) Nor could he plausibly make such an

allegation. He does not allege that she directly participated in the enforcement of the Confidential Information or False Statement ordinances or the issuance of any of the City directives that Plaintiff takes issue with. In fact, as a City employee, Ms. Rendall-Araujo was subject to the ordinances, just like Plaintiff, and a recipient of the directives at issue. (*See* Pl. Compl. ¶ 12, Ex. 8, 10)

Furthermore, in his First Amendment retaliation claim, Plaintiff alleges only that Ms. Rendall-Araujo directly participated in the violation of his First Amendment rights by "enticing" Plaintiff to repeat a racial slur, telling the media and public that Plaintiff made frequent racial slurs and said that she was standing up to Plaintiff's racism in an intentional false light. (*See* Pl. Compl. ¶ 231) Plaintiff does not report to Ms. Rendall-Araujo and she has no authority to hire, fire or discipline Plaintiff in any manner. (*See* Pl. Compl. ¶¶'s 6, 12) Rather, the City Administrator supervises department heads and personnel matters. (*See* Pl. Compl. ¶ 15) Moreover, the Director of Planning and Development, the position held by Plaintiff, is "appointed by the common council based on the recommendation of the city administrator and the mayor." *See* Sheboygan Mun. Code § 86.92. "The appointment shall be an at-will appointment, removable by the appointing authority at pleasure." *Id.* None of Plaintiff's allegations asserted against Ms. Rendall-Araujo are sufficient to demonstrate that her complained of conduct caused him to suffer a deprivation that would likely deter free speech and that his speech was 'at least a motivating factor' in the employer's decision to take the retaliatory action.

Plaintiff has also failed to adequately plead the personal involvement of Ms. Rendall-Araujo in relation to his equal protection claim. Plaintiff alleges that she directly participated in the violation of his Fourteenth Amendment right: (1) by overseeing a "plot to set up Plaintiff to repeat a racial slur, spreading to the news media and public that Plaintiff was a racist and then

enticing female DEI group supporters to demand Plaintiff's firing . . .”; and (2) “ [b]y sending Ms. Des Armo and Mr. Jannsen to find information from Plaintiff's wife and children that could be spun in a false light to incite another public petition to fire Plaintiff through media and public harassment.” (*See* Pl. Compl. ¶¶'s 198-199) Even if she had engaged in such conduct, which Ms. Rendall-Araujo denies, it is not a violation of Plaintiff's rights protected under Title VII, the Confidential Information or False Statements ordinances to engage in the complained of conduct. *See supra,* III.F-H.

### b. Alderperson Salazar

Alderperson Salazar is entitled to dismissal of Plaintiff's First Amendment prior restraint and retaliation claims against her to the extent that Plaintiff's claim against her is based on respondeat superior or other forms of vicarious liability for the same reasons that Alderpersons Felde and Filicky-Peneski cannot as fully discussed in Section J below. A review of his Complaint reveals that the basis for Plaintiff's claim that Alderperson Salazar violated his First and Fourteenth Amendment rights is his claim that she knew or should have known about the prior restraint and retaliation and failed to take action. (*See* Pl. Compl. ¶¶'s 200, 233, 251)

Further, Plaintiff failed to adequately plead the personal involvement of Alderperson Salazar in relation to his First Amendment retaliation claim. According to his Complaint, he alleges only that Alderperson Salazar directly participated in retaliation against him for exercising his First Amendment rights by “encouraging and applauding the manufactured public outrage against Plaintiff based on his protected speech, ordering Alderperson Filicky-Peneski and Ms. Des Armo to harass his family and demanding that he be fired. (*See* Pl. Compl. ¶ 232) However, it is important to look at the underlying factual allegations contained in Plaintiff's

44

Complaint not just the summary contained in paragraph 232 when evaluating whether he has failed to state a claim against Alderperson Salazar.

Notably, the actual factual allegations made by Plaintiff against Alderperson Salazar are that she applauded Ms. Rendall-Araujo for standing up to Plaintiff's racism, not that she applauded the manufactured public outrage. (*See* Pl. Compl. ¶ 62) He does not allege that Alderperson Salazar manufactured the public outrage against Plaintiff anywhere in the factual allegation section of his Complaint. (*See* Pl. Compl. ¶¶'s 31 - 169) Rather, he attributes that conduct to Mayor Sorenson. (*See* Pl. Compl. ¶ 69) Further, he alleges that Alderperson Salazar told Alderperson Filicky-Peneski to find out if he was talking to the public or Mr. Wolf about the investigative report. (*See* Pl. Compl. ¶ 148) He does not allege that she ordered Alderperson Filicky-Peneski to harass his family. As a result, after a careful review of the actual allegations contained in Plaintiff's Complaint, the only one that remains is that Alderperson demanded Plaintiff be fired during closed session for his use of a racial slur. (*See* Pl. Compl. ¶ 74) However, Plaintiff was not fired. Rather, he claims he was constructively discharged in relation to his Title VII claims of disparate treatment and hostile work environment. As such, Alderperson Salazar's alleged conduct in demanding that he be fired during a closed session is unrelated to his First Amendment retaliation claim and cannot form the basis of Alderperson Salazar's liability.

Plaintiff has also failed to adequately plead the personal involvement of Alderperson Salazar in relation to his equal protection claim. Plaintiff alleges that she directly participated in the violation of his Fourteenth Amendment right "[b]y sending Ms. Des Armo and Mr. Jannsen to find information from Plaintiff's wife and children that could be spun in a false light to incite another public petition to fire Plaintiff through media and public harassment." (*See* Pl. Compl.

¶199) This alleged misconduct has nothing to do with Plaintiff's claim that his Fourteenth Amendment right to equal protection of the laws was violated. Even if she had engaged in such conduct, which Alderperson Salazar denies, it is not a violation of his rights protected under Title VII, the Confidential Information or False Statements ordinances to engage in the complained of conduct. *See supra,* III.F-H.

Based on the foregoing, Plaintiff has failed to allege sufficient facts that are entitled to a presumption of truth that Ms. Rendall-Araujo and Alderperson Salazar acted under color of law or to demonstrate their direct involvement in a violation of his First or Fourteenth Amendment Rights. As such, Ms. Rendall-Araujo and Alderperson Salazar are entitled to dismissal of Plaintiff's § 1983 claims against each of them contained in Claims Two, Three and Four in their entirety as a matter of law.

### J. Alderpersons Felde, Filicky-Peneski and Salazar Are Entitled to Dismissal Of Plaintiff's 42 U.S.C. § 1983 Claims.

"An individual cannot be held liable under . . . § 1983 unless he or she personally caused or participated in the alleged violation." *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012) (defendant cannot be held liable under § 1983 unless he was personally involved in alleged conduct); *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (personal involvement requirement applies to §§ 1981 and 1983 claims); *Odogba v. Wisconsin Dep't of Justic*e, 22 F. Supp. 3d 895, 909 (E.D. Wis. 2014). Therefore, to state a claim against the individually named Defendants, Plaintiff must allege conduct that the individual engaged in that connects them to the § 1983 violations that he is asserting. *See id.*

A review of his Complaint reveals that the basis for Plaintiff's claim that Alderpersons Felde, Filicky-Peneski and Salazar violated his First and Fourteenth Amendment rights is that they knew or should have known about the complained of conduct to which he was allegedly

subjected to and failed to act. (*See* Pl. Compl. ¶¶'s 200-202, 233, 251) Alderpersons Felde, Filicky-Peneski and Salazar cannot be found liable for damages on the basis of respondeat superior or other forms of vicarious liability. *See Ashcroft*, 556 U.S. at 675-77; *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010); *Collegians for a Constructive Tomorrow-Madison v. Regents of Univ. of Wisconsin Sys.*, 820 F. Supp. 2d 932, 948 (W.D. Wis. 2011). "A suggestion to the effect that any public employee who knows (or should know) about a wrong must do something to fix it is not a correct statement of the law." *Allen-Noll v. Madison Area Tech. Coll.,* 2018 U.S. Dist. LEXIS 217234 at *31 (W.D. Wis. Dec. 28, 2018). "Pursuant to *Monell*, public employees are responsible for their own misdeeds but not for anyone else's." *Id.* (*citing Burk*, 555 F.3d at 596.

### K. Mayor Sorenson and Alderpersons Felde, Filicky-Peneski and Salazar Are Entitled To Absolute Legislative Immunity.

"Local legislators are entitled to absolute immunity from § 1983 liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). "[T]he time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace." *Id.* at 52. The Supreme Court has held that "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* 523 U.S. at 54; *see also Hansen v. Bennett*, 948 F.2d 397, 401 (7th Cir. 1991).

In keeping with this rule, courts have applied absolute legislative immunity even to non-legislative officials who were performing legislative functions. *See Bogan,* 523 U.S. at 55. In addition, legislative immunity protects a defendant even when he or she has performed a legislative function with an improper motive. *See Rateree v. Rockett*, 852 F.2d 946, 951 (7th Cir. 1988). Here, Plaintiff alleges in his Complaint that the fact that the ordinances were in effect

allowed elected officials to make false statements, commit fraud on internal investigations, and arbitrarily engage in content-based restrictions on employee speech. (*See* Pl. Compl. Claims Two, Three and Four, ¶'s 205, 214, 238, 239, 240) Mayor Sorenson and Alderpersons Felde, Filicky-Peneski and Salazar are entitled to absolute immunity to the extent that Plaintiff's 42 U.S.C. § 1983 claims are based on an assertion that his First Amendment and Fourteenth Amendment rights were violated as a result of the enactment, enforcement, or failure to repeal the Confidential Information or False Statements ordinances.

As a preliminary matter, Plaintiff doesn't actually allege that Mayor Sorenson or the Alderpersons enacted the complained of ordinances. The Confidential Information and False Statements ordinances were first enacted in 1961 and 1971, respectively. In any event, clearly, passing legislation, enforcing legislation or failing to act to repeal it is legislative in nature. As such, Mayor Sorenson and Alderpersons Felde, Filicky-Peneski and Salazar are entitled to absolute legislative immunity in relation to Plaintiff's claims that enforcement of the False Statements and Confidential Information ordinances form the basis for the alleged violation of his First and Fourteenth Amendment rights. (*See* Pl. Compl. ¶'s 205, 214, 239-240)

**L. The Individually Named Defendants Are Entitled To Qualified Immunity On Plaintiff's 42 U.S.C. § 1983 - Fourteenth Amendment and First Amendment Prior Restraint Claims.**

Even if Plaintiff could assert a viable claim under 42 U.S.C. § 1983, Mayor Sorenson, Ms. Rendall-Araujo and Alderpersons Felde, Filicky-Peneski and Salazar are entitled to qualified immunity which protects state officials who are sued in their individual capacities from liability for claims related to the performance of discretionary functions. *See Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (*first quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and then *citing Procunier v. Navarette*, 434 U.S. 555, 565 (1978). At the outset, the individual Defendants

cannot be held liable for damages on the basis of respondeat superior or other forms of vicarious liability. *See supra,* III.J. Further, they are absolutely immune from liability in relation to Plaintiff's allegations that his constitutional rights were violated due to enforcement of the City's Confidential Information and False Statements ordinances. *See supra,* III.K. As such, Defendants do not address these allegations in relation to their qualified immunity arguments below.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. at 818). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The doctrine translates into a two-part test: (1) whether the public official violated the plaintiff's constitutional rights; and (2) whether those rights were clearly established at the time of the alleged violation. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

### 1. Fourteenth Amendment – Equal Protection Of The Laws.

Plaintiff alleges that all of the individually named Defendants directly participated in the violation of his Fourteenth Amendment right to equal protection under Title VII, the Confidential Information and False Statements ordinances by:

- Allowing similarly situated employees like ACA Majerus, Ms. Rendall-Araujo and Ms. Block to associate with the DEI group while refusing to allow Plaintiff to associate with Mr. Wolf; (All)

- Overseeing a plot to set Plaintiff up to repeat a racial slur; (Mayor Sorenson and Ms. Rendall-Araujo)

- Telling the news media he was a racist; (Mayor Sorenson and Ms. Rendall-Araujo)

49

- Enticing female DEI group supporters to demand to the Council and the public that he be fired because he was a racist; (Mayor Sorenson and Ms. Rendall-Araujo)

- Sending Tanya Des Armo and Peter Jannsen to get information from Plaintiff's wife and children that could be spun in a false light to incite a public petition to fire Plaintiff through media and public harassment; (Mayor Sorenson, Alderperson Salazar and Ms. Rendall-Araujo)

- Failed to properly train, supervise or oversee Mayor Sorenson, Mr. Westbrook and Ms. Rendall-Araujo; (Alderpersons Felde, Filicky-Peneski and Salazar) and

- By denying Plaintiff the rights and privileges of employment that females are granted and replacing Plaintiff with a less qualified female. (All)

(*See* Pl. Compl. ¶¶'s 194, 198-199, 201, 204)

Initially, Plaintiff's first and last bulleted allegations set forth above are insufficient as a matter of law for the reasons discussed *supra* at F.1-2 and should be disregarded in evaluating whether the individual Defendants are entitled to qualified immunity. Further, Plaintiff has failed to include sufficient plausible allegations in his Complaint to state a claim that he was treated differently by the individual Defendants; let alone that the complained of conduct was based on his membership in a protected class or alternatively that he was treated differently than similarly situated employees and there was no rational basis for the different treatment. The individual Defendants are clearly able to demonstrate the first element of a qualified immunity defense -- that Plaintiff's Complaint fails to allege facts, that if assumed to be true, would constitute a violation of his right to equal protection of the law protected by the Fourteenth Amendment to the Constitution.

The individual Defendants are also able to satisfy the second element of a qualified immunity defense in relation to Plaintiff's Fourteenth Amendment equal protection claim. Plaintiff alleges only that the Defendant Alderpersons acted with deliberate indifference to his Fourteenth Amendment rights when they failed to supervise and/or train Mayor Sorenson to

supervise Plaintiff and Mr. Westbrook. (*See* Pl. Compl. ¶ 202) Nothing in the equal protection clause or case law interpreting it would have put the Defendant Alderpersons on notice that failing to properly train and or supervise the Mayor in his supervision of Plaintiff or Mr. Westbrook was a violation of Plaintiff's Fourteenth Amendment rights to equal protection of the laws.

Moreover, Plaintiff does not make a single allegation that Mayor Sorenson or Ms. Rendall-Araujo acted with deliberate indifference in relation to his Fourteenth Amendment rights. Further, even if he hadn't failed to include this required allegation, nothing in the equal protection clause or case law interpreting it would have put Mayor Sorenson or Ms. Rendall-Araujo on notice that the conduct Plaintiff claims they engaged in was in violation of his Fourteenth Amendment right to equal protection of the laws. Further, it is important to point out that Plaintiff's allegation that Mayor Sorenson and Ms. Rendall-Araujo oversaw a plot to set him up is contradicted by other allegations in his Complaint wherein he alleges that they simply "knew" that the DEI group had arranged for an unknown man to appear at a neighborhood meeting and make the racial slur. (*See* Pl. Compl. ¶¶'s 45 *cf.* 198)

Even if the individually named Defendants had engaged in the conduct Plaintiff accuses them of, which they vehemently deny, it is not a violation of Plaintiff's rights protected under Title VII, the Confidential Information or False Statements ordinances to engage in the complained of conduct. *See supra,* III.F-H. As such, the individual Defendants are entitled to qualified immunity in relation to Plaintiff's claim alleging a violation of his Fourteenth Amendment right to equal protection under the law.

## 2. First Amendment – Prior Restraint Claim

Plaintiff alleges that Mayor Sorenson and Alderpersons Felde, Filicky-Peneski and Salazar directly participated in the violation of his First Amendment rights by:

- Involvement in the November investigation directives; (Mayor Sorenson)

- Enforcing the Confidential Information and False Statements policies; (All)

- Knew or should have known about the issuance of the November, February and March directives and directed, ordered, condoned, approved or turned a blind eye to the violation of Plaintiff's First Amendment rights; (Alderpersons)

- Failing to train and supervise Mr. Westbrook and Mayor Sorenson; (All) and

- Ordering Plaintiff not to speak to legal counsel. (All)

(*See* Pl. Compl. ¶¶'s 238, 239, 240, 242, 251, 252, 253)

For the reasons fully discussed above, the November 21, 2022, letter and February 7 and March 8, 2023, emails were not prior restraints on Plaintiff's First Amendment rights. *See supra,* III.H. Further, it is not a prior restraint on Plaintiff's First Amendment rights to fail to train or supervise nor does Plaintiff's Complaint include any allegation tying the alleged failure to train to his prior restraint claim. The individual Defendants are clearly able to demonstrate the first element of a qualified immunity defense -- the Plaintiff's Complaint fails to allege facts, that if assumed to be true, would constitute a prior restraint of a constitutional right protected by the First Amendment.

The individual Defendants are also able to satisfy the second element of a qualified immunity defense in relation to Plaintiff's First Amendment prior restraint claim. Plaintiff fails to allege that any of the individual Defendants acted with deliberate indifference in relation to his First Amendment prior restraint claim. Rather, he alleges that the customs, policies and practices exhibit a deliberate indifference to his constitutional rights. (*See* Pl. Compl. ¶ 239) Further, Plaintiff alleges that it was the City's directives between November 22 and March 2023 that

were unconstitutional. (*See* Pl. Compl. ¶'s 241, 244, 246, 249) Plaintiff does not allege direct participation by the Defendant Alderpersons in relation to any of these directives. Further, even if the Court assumes Plaintiff's bare allegation that the Common Council is responsible for training the City department heads, he fails to include a single allegation in his Complaint identifying the training the Alderpersons failed to provide to Mr. Westbrook or Mayor Sorenson or how that failure was causally connected to the claimed prior restraint on his First Amendment rights. (*See* Pl. Compl. ¶'s 16, 236-256) Finally, Plaintiff's allegation that he was ordered not to speak to legal counsel by all of the Defendants is contradicted by another allegation in his Complaint wherein he alleges that Mayor Sorenson told Plaintiff that he was not allowed to obtain private counsel for himself in relation to his interview with Attorney Hall, and the City Attorney would be his lawyer in relation to the City's investigation. (*See* Pl. Compl. ¶'s 93 *cf.* 253) As such, as it relates to Plaintiff's prior restraint claim, that alleged conduct involves only Mayor Sorenson.

Nothing in the First Amendment or case law interpreting it would have: (1) put the Defendant Alderpersons on notice that failing to properly train and or supervise Mr. Westbrook or the Mayor was a prior restraint on Plaintiff's First Amendment rights; (2) put Mayor Sorenson or the Alderpersons on notice that enforcing the City's ordinances constituted a prior restraint on his First Amendment rights; or (3) put Mayor Sorenson on notice that advising Plaintiff that he could not get a private attorney and the City Attorney would represent him during the City's investigation was a prior restraint on Plaintiff's First Amendment rights. Based on the foregoing arguments, the individually named Defendants are entitled to qualified immunity in relation to Plaintiff's Fourteenth Amendment equal protection violation and his First Amendment prior restraint claims.

**M. Plaintiff Fails To State A Claim Against The City Based On Monell Liability For Plaintiff's 42 U.S.C. § 1983 Alleging Violations Of The First Amendment And Fourteenth Amendment.**

"To maintain a § 1983 claim against a municipal entity, Plaintiff must first identify a policy or custom attributable to governmental policymakers." *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002) (*citing Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 691, 694 (1978)). This requirement serves to "distinguish acts of the municipality from acts of [its] employees . . . and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (internal quotations and citations omitted). A governmental entity cannot be held liable under § 1983 by applying a respondeat superior theory. *Monell,* 436 U.S. at 691. "Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient." *Sivard v. Pulaski County*, 17 F.3d 185, 188 (7th Cir. 1994) (citations omitted). Rather, a plaintiff must allege sufficient facts to indicate that the complained of policy actually exists. *See Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985).

"A policy or custom may take one of three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express [governmental] policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Grieveson,* 538 F.3d at 771. (quotation omitted). Plaintiff must also allege "the policy or custom was the 'moving force' behind [his] constitutional deprivation." *Id.*

**1. Fourteenth Amendment – Equal Protection Of The Law Claim.**

Plaintiff alleges *Monell* liability based on a claim that "the City [had] customs and practices that claim white men have no protected status and thus, must deal with false accusations, harassment . . ." (*See* Pl. Compl. ¶ 192) However, a review of the Complaint confirms that Plaintiff does not allege sufficient facts to demonstrate that the complained of policy or custom actually exists. He does not include any documents to support his claim. Moreover, a search of his Complaint demonstrates that the only allegation that even touches on this alleged custom and practice is his claim that Mr. Westbrook told Plaintiff that he had no protected status. (*See* Pl. Compl. ¶ 122)

Other than this single allegation, Plaintiff's Complaint includes nothing more than boiler plate allegations regurgitating his claim that the City has a custom and practice that white men have no protected status. Even if Plaintiff's allegation is presumed true for purposes of this motion, it is not a fact that demonstrates that the City had a custom or practice that white men had no protected status. Rather, at best, it would indicate Mr. Westbrook's opinion on the protected status of white males, not an official City policy, custom or practice of the City, especially when one considers that Mr. Westbrook started his employment with the City sometime in January 2023, just a little over one month prior to the date Plaintiff alleges he made the complained of statement. (*See* Pl. Compl. ¶¶'s 111, 122) Moreover, fatal to Plaintiff's *Monell* claim is the fact that Mr. Westbrook is not a final policymaker capable of establishing municipal policy, nor has Plaintiff alleged that he is. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986); *Baxter v. Vigo County School Corporation*, 26 F.3d 728, 735 (7th Cir. 1994).

Plaintiff's *Monell* liability claim against the City is based on an allegation that the City's "false statements policy and practices allow elected officials (Sorenson, Salazar and City Attorney Adams) to make false statements and commit fraud on internal investigations regarding

harassment by white males" also fails. (*See* Pl. Compl. ¶¶'s 205-206) This nonsensical allegation is based on an illogical premise that the City must have condoned the making of fraudulent statements by elected officials simply because the False Statements ordinance does not apply to them. An outlandish allegation made by Plaintiff without a scintilla of facts to support it.

In fact, this allegation is clearly unsupported by the language of the ordinance itself. The False Statements ordinance provides in pertinent part that "[n]o persons shall make any false statement or report with regard to any test, certification or appointment made under any provisions of this chapter or in any manner commit or attempt to commit any fraud preventing the impartial execution of this chapter and policies." *See* Sheboygan Mun. Code § 18-3. Moreover, even if Plaintiff's outlandish allegation were presumed true for purposes of this Motion, it is wholly unrelated to his claim that he was denied equal protection under the law and should be disregarded for that reason. As an employee of the City, Plaintiff is not similarly situated to elected officials. Further, as noted above, Plaintiff does not allege in his Complaint that the Alderpersons treated him differently in relation to the City's False Statements ordinance. Rather, he alleges that Ms. Rendall-Araujo was not disciplined for violating the False Statements ordinance but also admits that he was not disciplined for any reason, let alone for a violation of that ordinance. (*See* Pl. Compl. ¶¶'s 140, 153)

Based on the foregoing, Plaintiff's Complaint has failed to allege the existence of an express policy of the City that caused his alleged Fourteenth Amendment constitutional deprivation upon implementation. *See Monell,* 436 U.S. at 690. He has failed to allege sufficient facts to indicate "a widespread practice that was so permanent and well settled that it constitutes a custom." *See St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988). Finally, he has failed to allege that a person with "final policymaking authority" caused the violation of his Fourteenth

56

Amendment right to equal protection under the law. As such, Plaintiff has failed to state a claim of *Monell* liability against the City and it is entitled to dismissal of Plaintiff's 42 U.S. C. § 1983 claim asserting a violation of his Fourteenth Amendment right to equal protection under the law as a matter of law.

### 2. First Amendment – Retaliation Claim.

In support of his First Amendment retaliation claim, Plaintiff once again, alleges *Monell* liability based on the City's False Statements ordinances claiming that it permits elected officials to commit fraud on internal investigations by falsifying evidence, testimonies and releasing such false information to the public to retaliate or otherwise threaten employees that engaged in protected speech. (*See* Pl. Compl. ¶ 214) His reliance on the False Statements ordinance to establish *Monell* liability fares no better here for the same reasons discussed above. The mere existence of this ordinance cannot be used to infer that the City condones fraudulent conduct by elected officials.

Even if Plaintiff's outlandish allegation were presumed true for purposes of this Motion, he has failed to allege sufficient facts to allow an inference that the City's ordinance was the moving force behind his injury. To do so, Plaintiff must allege "a direct causal link between the municipal action and the deprivation of federal rights." *Board of the County Comm'rs v. Brown,* 520 U.S. 397, 404 (1997). The boiler plate allegation he included in support of his retaliation claim is insufficient to meet this burden. (*See* Pl. Compl. ¶ 215)

Plaintiff failed to include any allegations that would allow a reasonable inference that the City's False Statements ordinance is causally linked to the First Amendment retaliation to which he claims he was subjected. In fact, a review of the allegations included in Claim Three demonstrates that other than his reference to the False Statements ordinance in paragraph 214 of

his Complaint, Plaintiff does not reference it again in relation to that claim. Rather, the remainder of the allegations in Claim Three focus on assertions that he was retaliated against for engaging in protected speech when Ms. Rendall-Araujo enticed him to repeat a racial slur; Mayor Sorenson told Ms. Hilty that Plaintiff was a racist, asked the DEI Group to engage in a public outcry to fire and harass Plaintiff and forced Plaintiff to turn over some of his job duties; Alderperson Salazar encouraged the manufactured outrage against Plaintiff and ordered others to harass his family and demanded that Plaintiff be fired; and Alderpersons Felde and Filicky-Peneski knew or should have known about the retaliatory conduct and either condoned it or turned a blind eye. (*See* Pl. Compl. ¶¶'s 230-233) None of the complained of conduct is governed by the False Statements ordinance. Based on the foregoing, Plaintiff has failed to state a of *Monell* liability against the City and it is entitled to dismissal of Plaintiff's 42 U.S. C. § 1983 First Amendment retaliation claim as a matter of law.

### 3. First Amendment – Prior Restraint Claim.

The City is entitled to dismissal of Plaintiff's prior restraint claim, to the extent that it relies on the November 21, 2022, letter he received as well as the February 7 and March 8, 2023, emails. This claim fails because, unlike an ordinance, the letter and two emails do not constitute an express policy of the City. As such, to prevail on a *Monell* liability claim, Plaintiff must allege that the communications constitute a widespread practice that, although not authorized by written law or express City policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or that they were issued by a person with final policymaking authority. *See Grieveson*, 538 F.3d at 771. Plaintiff's Complaint is devoid of such allegations and the First Amendment prior restraint claim against the City should be dismissed outright as a result of this failure. Moreover, even if Plaintiff had alleged the existence of a widespread practice, it would

be insufficient as a matter of law. The issuance of the three complained of communications are insufficient as a matter of law to constitute a widespread practice. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) ("isolated acts of misconduct will not suffice to state a widespread practice claim under *Monell*").

Finally, Plaintiff does not allege that persons with final policy making authority issued the complained of communications on November 21, 2022, February 7 and March 8, 2023, respectively. In fact, it is irrefutable that ACA Majerus and Mr. Westbrook, the individuals who sent the emails, are not decision makers with final policy making authority. Moreover, in relation to the November 21, 2022, letter Mayor Sorenson is not a policymaker for purposes of establishing how the City conducts its internal investigations and the duties and obligations of City employees involved therein. Rather, as Plaintiff alleges, he was the person that delivered the November 21, 2022, letter. (*See* Pl. Compl. ¶ 90) "The determination of whether a person has policymaking authority is a question of state law and is to be decided by the court." *Pembaur,* 475 U.S. at 481-83. "The fact that a particular official--even a policymaking official--has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481-82. "[The] inquiry is not whether an official is a policymaker on all matters for the municipality, but whether he is a policymaker in a particular area, or on a particular issue." *Id.* (*internal quotations omitted).* Based on the foregoing, Plaintiff has failed to state a claim of *Monell* liability against the City and it is entitled to dismissal of Plaintiff's 42 U.S. C. § 1983 First Amendment prior restraint claim as a matter of law.

### N. Plaintiff's Claim For Punitive Damages Against the City and the Individually Named Defendants In Their Official Capacities Must Be Dismissed.

If all of Plaintiff's claims are not dismissed as a matter of law, Plaintiff's claim for punitive damages must still be dismissed. "It is well settled that, absent statutory provisions to the contrary, municipalities and employees sued in their official capacity are 'immune from punitive damages under 42 U.S.C. § 1983.'" *Barrett v. Bd. of Educ.*, 13 F. Supp. 3d 502, 515 (E.D.N.C. 2014) (*citing* and *quoting City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247 at 271 (1981); *see also Minix v. Canarecci,* 597 F.3d 824, 830 (7th Cir. 2010) (citations omitted). Plaintiff's Complaint does not allege any statutory exception that would permit an award of punitive damages against the City or the individual Defendants, in their official capacity. As such, Plaintiff's § 1983 claims for punitive damages against the City and the individual Defendants in their official capacities are barred and must be dismissed as a matter of law.

### O. Plaintiff's Request For Declaratory Judgment and Injunctive Relief Should Be Dismissed As A Matter Of Law.

As fully explained above, Plaintiff is no longer employed by the City and does not allege an ongoing violation of Title VII, his First or Fourteenth Amendment rights. *See supra,* III. D - H. As such, there is no claim of a continuing violation of federal law. Declaratory judgment and injunctive relief are inappropriate remedies where there is no claimed continuing violation of federal law or any threat of future violation. *See Green v. Mansour,* 474 U.S. 64 (1985); *Toney v. Burris,* 829 F.2d 622 (7th Cir. 1987). Therefore, this Court should dismiss Plaintiff's request for declaratory judgment and injunctive relief as a matter of law.

## IV. CONCLUSION

For the reasons stated above, Defendants City of Sheboygan, Mayor Ryan Sorenson, Alderpersons Barbara Felde, Roberta Filicky-Peneski, Amanda Salazar, and Director Emily Rendall-Araujo, respectfully request that this Honorable Court grant their Motion to Dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated this 9th day of October, 2023

**MWH LAW GROUP LLP**

Attorneys for Defendants City of Sheboygan, Mayor Ryan Sorenson, Alderpersons Barbara Felde, Roberta Filicky-Peneski, Amanda Salazar, and Director of Uptown Social Emily Rendall-Araujo

By: _/s/ Electronically signed by Warren E. Buliox_
Warren E. Buliox        SBN 1056215
Kerrie M. Murphy      SBN 1122869
Julie T. Bittner         SBN 1128144
735 N. Water Street, Suite 610
Milwaukee, WI 53202
Telephone: (414) 436-0353
Facsimile: (414) 436-0354
_warren.buliox@mwhlawgroup.com_
_kerrie.murphy@mwhlawgroup.com_
_julie.bittner@mwhlawgroup.com_

61