# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

CHAD PELISHEK,

      Plaintiff,

  v.           Case No. 23-CV-1048

CITY OF SHEBOYGAN, et al.,

      Defendants.

# DECISION AND ORDER

## 1. Background

 Chad Pelishek, a heterosexual white male (ECF No. 13, ¶ 2), was the City Director of Planning and Development for the City of Sheboygan. (ECF No. 13, ¶ 1.) In August 2022 he "tried to raise concerns about an incident involving a racial slur in a citizen meeting." (ECF No. 13, ¶ 2.) When he repeated the citizen's slur in response to a co-worker's request that he state exactly what was said at the meeting, he set off a chain of events that eventually led to the firing of City Manager Todd Wolf[1] and Pelishek's resignation.

---

[1] Wolf has his own lawsuit pending in this court. *See Wolf v. City of Sheboygan*, No. 23-CV-149, 2023 U.S. Dist. LEXIS 156172 (E.D. Wis. Sep. 5, 2023).

According to Pelishek, city officials and their allies, with their own interests in mind—boosting Diversity, Equity, Inclusion, and Belonging programs, covering up their own misconduct, or removing heterosexual white males from positions of power—conspired to falsely report (or at least imply) that Pelishek had uttered the slur unsolicited. Officials and their allies then relied on that false narrative to call for Pelishek's removal. They limited his duties and set him up to fail. Officials publicly released an investigative report that again falsely suggested that Pelishek had used the slur himself rather than merely repeated what a citizen had said. Upset over being branded a racist and believing that he would be fired, Pelishek resigned.

Pelishek's amended complaint presents five causes of action: discrimination under Title VII; equal protection under the Fourteenth Amendment; retaliation for speech protected by the First Amendment; and two separate claims regarding alleged prior restraints on speech under the First Amendment. He names as defendants the City of Sheboygan (ECF No. 13, ¶ 8), Sheboygan mayor Ryan Sorenson (ECF No. 13, ¶ 9), Sheboygan Common Council members Barbara Felde (ECF No. 13, ¶ 10), Roberta Filicky-Peneski (ECF No. 13, ¶ 11), and Amanda Salazar (ECF No. 13, ¶ 12), Sheboygan's Director of Senior Services Emily Rendall-Araujo (ECF No. 13, ¶ 13), and Sheboygan City Attorney Charles Adams (ECF No. 13, ¶ 14).

The defendants have moved to dismiss Pelishek's amended complaint. (ECF No. 23.) All parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 5,

17), and the motion to dismiss is ready for resolution. The court has subject matter jurisdiction under 28 U.S.C. § 1331.

## 2. Rule 8(a)

The defendants argue that the court must dismiss Pelishek's amended complaint because it is not the "short and plain statement of the claim showing that the pleader is entitled to relief" required under Fed. R. Civ. P. 8(a)(2). (ECF No. 24 at 9.) But, substantively, the defendants' arguments are more in the nature of a motion for a more definite statement under Fed. R. Civ. P. 12(e). They argue that the complaint is difficult to understand and that Pelishek often "does not specify what action or inaction he attributes to each individually named Defendant." (ECF No. 24 at 10.)

The court agrees that the amended complaint both says far more than it needs to and is frequently unclear. But courts make poor legal writing instructors, and the Federal Rules of Civil Procedure are a poor tool for enforcing best practices for drafting pleadings. Having said that, Pelishek's lack of clarity in drafting his complaint has forced the defendants to move to dismiss claims that Pelishek, in response, says he never intended to allege.

Nonetheless, the defendants have not shown that dismissal under Rule 8(a) is appropriate. Courts and defendants are generally expected to "bypass the dross and get on with the case." *United States v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

Pelishek's imprecision in pleading can be addressed through narrower means than dismissal of the entire amended complaint.

### 3. Motion to Dismiss Standard

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2). But courts have struggled to define just how short and plain that statement may be. On the one hand, it does not require "detailed factual allegations." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). On the other hand, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Although the Supreme Court has said "[s]pecific facts are not necessary," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), it would go too far to say that *no* facts are required. There must be enough in a complaint to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Whitaker v. Milwaukee Cty.*, 772 F.3d 802, 808 (7th Cir. 2014) ("it is factual allegations, not legal theories, that must be pleaded in a complaint"). "[F]ederal

pleading standards do not 'demand that complaints contain all legal elements (or factors) plus facts corresponding to each.'" *Zimmerman v. Bornick*, 25 F.4th 491, 493 (7th Cir. 2022).

The court accepts as true all the factual allegations in the complaint. *Twombly*, 550 U.S. at 555-56. The court does not, however, accept as true legal conclusions. For example, in *Twombly* the plaintiffs' allegation that that the defendants had entered into an agreement to restrain trade—the heart of the antitrust claim—was a legal conclusion that was not entitled to be accepted as true. *Iqbal*, 556 U.S. at 680 (discussing *Twombly*).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Whether a claim is plausible depends on the context, the type of case, *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008), and requires the "court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679. A complex case may require more detailed allegations. A straightforward case may be pled with few details. *See, e.g.*, *Erickson*, 551 U.S. at 94; *Tamayo*, 526 F.3d at 1084.

### 3.1. The Defendants' Misstatements of the Law

Throughout their brief in support of their motion to dismiss the defendants repeatedly misstate what the plaintiff must allege at the pleading stage and conflate the pleading and proof standards. The defendants frequently misrepresent legal authority

by stating that it reflects a motion to dismiss standard when, in fact, it reflects the standard a plaintiff must satisfy to survive a summary judgment motion or to succeed at trial. (*See, e.g.*, ECF No. 6 at 12 (quoting *Sciafe v. VA,* 49 F.4th 1109, 1115-16 (7th Cir. 2022), and misrepresenting *Sciafe* as specifying what a plaintiff must "allege" when, in fact, it states what a plaintiff must "prove"); 16 (quoting *Formella v. Brennan,* 817 F.3d 503, 511 (7th Cir. 2016), and misrepresenting *Formella* as articulating what a plaintiff must allege "[t]o avoid dismissal of his reverse discrimination claim" when the court explicitly stated it was articulating what a plaintiff must establish "[t]o survive summary judgment"); 25-26 (quoting *Doe v. Galster,* 768 F.3d 611, 622 (7th Cir. 2014), and representing that *Doe* articulated what a plaintiff "must allege" when the court explicitly stated it was articulating the standard a plaintiff must satisfy "to survive summary judgment").)

Granted, there is a relationship between the sufficiency of a pleading and what a plaintiff must establish at summary judgment or prove at trial. A plaintiff (*see, e.g.*, ECF No. 32 at 17 (quoting *McPhaul v. Bd. of Comm'rs,* 226 F.3d 558, 564 (7th Cir. 2000)) or the court may refer to the summary judgment standard to explain why a complaint states a claim. After all, if a plaintiff's allegations, if true, would satisfy the summary judgment standard, he certainly offers enough to satisfy the pleading standard. But that relationship must not be confused with an articulation of what a plaintiff must plead to state a claim.

Case 2:23-cv-01048-WED   Filed 03/11/24   Page 6 of 33   Document 38

For present purposes the court will presume that these misrepresentations were mere errors of the sort that no attorney nor lawyer is above. But counsel should be diligent to make sure that these types of mistakes do not recur.

**3.2. Pleading a "Legal Theory"**

In response to the motion to dismiss Pelishek frequently argues that dismissal is inappropriate because he is not required to plead any specific theory. He is correct that "a complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011); *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam) ("Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim."); *see also Zimmerman*, 25 F.4th at 493; *Koger v. Dart*, 950 F.3d 971, 974 (7th Cir. 2020) ("Complaints plead *grievances*, not legal theories …." (emphasis in original)).

Nonetheless, a lengthy, convoluted complaint devoid of articulated claims or theories is unlikely to provide a defendant with adequate notice of the nature of the plaintiff's claim or claims. Thus, plaintiffs traditionally articulate both specific claims and theories in their complaints.

Claims and theories are not synonymous, but courts have struggled to consistently distinguish between the two. "A 'claim is the aggregate of operative facts

which give rise to a right enforceable in the courts.'" *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (internal quotation mark omitted) (quoting *Florek v. Village of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011)). One claim may be supported by multiple theories. *Id.* ("One claim supported by multiple theories does not somehow become multiple claims."). Thus, a plaintiff who alleged that officials violated the Fourth Amendment by depriving him of medicine and by not calling an ambulance presented two theories for a single claim. *Florek*, 649 F.3d at 599; *see also Sojka*, 686 F.3d at 399 ("Sojka's complaint contains one count and one claim, construction negligence, committed in a variety of ways."); *but see Hess v. Garcia*, 72 F.4th 753, 756 (7th Cir. 2023) (referring to the Fourth Amendment, due process, and equal protection as different theories to support a claim of sexual assault against a police officer).

The court may not dismiss theories under Rule 12(b)(6), *KFC Corp. v. Iron Horse of Metairie Rd., LLC*, No. 18 C 5294, 2020 U.S. Dist. LEXIS 121400, at *13 (N.D. Ill. July 10, 2020), and a plaintiff may shift theories without needing to amend his complaint, *see Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018), provided those theories rely on the same facts alleged in the complaint, *Schroeder v. City of Muskego*, 586 F. Supp. 3d 884, 889 (E.D. Wis. 2022).

The court must be mindful of these principles when analyzing the defendants' motion. What is clear is that, to defeat a motion to dismiss a claim that is not plausible

on its face, a plaintiff must do more than simply resort to the principle that he need not plead theories.

### 4. Official Capacity Claims

Pelishek's "official capacity" claims against numerous Sheboygan officials are redundant to the constitutional claims he alleges against the City of Sheboygan. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Wolf agrees to dismiss those claims. (ECF No. 32 at 10.) Accordingly, the official capacity claims against Ryan Sorenson, Barbara Felde, Roberta Filicky-Peneski, Amanda Salazar, Emily Rendall-Araujo, and Charles Adams will be dismissed.

### 5. Title VII Claim Against Individuals

In alleging his Title VII claim, Pelishek frequently refers to the defendants collectively. (ECF No. 13, ¶ 166 ("Plaintiff's race and gender were motivating and/or determinative factors in the Defendants [sic] discriminatory treatment and hostility against Plaintiff"), ¶ 168 ("The actions and in-actions of Defendants occurred consistently and purposely resulting in a hostile and abusive work environment for the Plaintiff and other similarly situated white males"), ¶ 178 ("Plaintiff suffered irreparable injury and monetary damages because of Defendants' discriminatory and abusive conduct and inactions unless and until this Court grants the relief requested herein").) Because Title VII permits a suit only against an employer, *Gastineau v. Fleet*

*Mortg. Corp.*, 137 F.3d 490, 493 (7th Cir. 1998), (which here is the City of Sheboygan), the individual defendants moved to dismiss the Title VII claim against them.

Notwithstanding the multiple references to the defendants collectively in conjunction with his Title VII claim, in response to the motion to dismiss Pelishek states that he did not plead a Title VII claim against any individual. (ECF No. 32 at 10.) Insofar as the amended complaint can be read as alleging a Title VII claim against any defendant other than the City of Sheboygan, the defendants' motion to dismiss will be granted.

## 6. Title VII Claim Against the City of Sheboygan

### 6.1. Hostile Work Environment

"To state a Title VII hostile work environment claim, a plaintiff must allege (1) []he was subject to … harassment; (2) the harassment was based on … [a] reason forbidden by Title VII; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833-34 (7th Cir. 2015) (citing *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004)). "To rise to the level of a hostile work environment, conduct must be sufficiently severe or persuasive [sic] to alter the conditions of employment such that it creates an *abusive* relationship." *Id.* at 834 (emphasis in original) (quoting *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014)). Of

course, a plaintiff cannot simply recite these elements, *Iqbal*, 556 U.S. at 678; he must point to facts which suggest that, if allowed to proceed, it is plausible he will uncover evidence sufficient to prove his allegations. *See Huri*, 804 F.3d at 834.

Pelishek's amended complaint and response to the defendants' motion to dismiss are far from models of clarity and precision, and many of his arguments do not plausibly support a hostile work environment claim. Such lack of clarity will be significantly more consequential and detrimental at the summary judgment stage. But at the motion to dismiss stage the court's review is much more forgiving. Distilled to the basics, Pelishek alleges that he was repeatedly falsely accused of having used a racial slur in a manner that suggested racist sentiment.

To be repeatedly falsely labeled a racist is plausibly harassing, and Pelishek alleges that he was subject to this harassment because of his race and gender. The false accusations were allegedly so severe and pervasive that Pelishek could no longer perform the full scope of his job responsibilities, and he suffered severe distress. Pelishek's supervisor, Mayor Sorenson, not only allegedly contributed to this false narrative but allowed it to be repeated and to proliferate throughout city government and the community.

These allegations are sufficient to state a plausible hostile work environment claim. Therefore, the defendants' motion to dismiss that claim will be denied.

### 6.2. Disparate Treatment

Employment discrimination claims are relatively easy to plead. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022); *Tamayo*, 526 F.3d at 1084. A plaintiff states a claim for employment discrimination under Title VII if he alleges an employer took some specific adverse employment action against him because of his race, color, religion, sex, or national origin. *See Tamayo*, 526 F.3d at 1084.

Pelishek alleges he was constructively discharged for repeating a citizen's racial slur while a female peer, Rendall, experienced no adverse consequences from likewise repeating the slur. (ECF No. 13, ¶¶ 173-75.) His allegation that he resigned because he believed he was about to be fired (ECF No. 13, ¶¶ 143-44) is sufficient to plead a claim of constructive discharge. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 409 (7th Cir. 2008). Whether Pelishek will be able to muster evidence to prove that his belief was reasonable is a hurdle he must clear at the summary judgment stage. But for purposes of Rule 12(b)(6) he has adequately stated a claim. The defendants' motion to dismiss that claim will be denied.

### 7. Equal Protection

Pelishek alleges equal protection claims that parallel his Title VII claims. (ECF No. 32 at 14-29); *cf. Bless v. Cook Cty. Sheriff's Office*, 9 F.4th 565, 574 (7th Cir. 2021) ("Discrimination cases brought under § 1983 are governed by the same legal standards as those brought under Title VII."). The same minimal pleading standard applicable to a

Case 2:23-cv-01048-WED   Filed 03/11/24   Page 12 of 33   Document 38

claim under Title VII applies to the substance of a discrimination claim under the equal protection clause. *Freeman v. Metro. Water Reclamation Dist.*, 927 F.3d 961, 965 (7th Cir. 2019). But a plaintiff does not adequately plead a § 1983 claim simply by tacking a reference to equal protection on to a Title VII claim.

Unlike a claim under Title VII, which can only be alleged against an employer, a claim under § 1983 can only be alleged against a person. A municipality may be a person under § 1983, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), but it is liable only for its own conduct and not the conduct of is employees, *id.* at 691. Thus, to state a claim under § 1983 against the City of Sheboygan, Pelishek must point to a specific policy or custom of the City that violate the equal protection clause. *See Gray v. Zaruba*, No. 16 C 4850, 2019 U.S. Dist. LEXIS 185694, at *31 (N.D. Ill. Oct. 25, 2019) (citing *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010)).

To allege a claim against a municipal employee, Pelishek must include allegations attributable to that specific individual. *See Hannon v. City of Prospect Heights*, No. 18 C 2475, 2023 U.S. Dist. LEXIS 112302, at *54 (N.D. Ill. June 29, 2023) ("To advance a § 1983 equal protection claim against a municipal *employee* in his individual capacity, a plaintiff must prove that the employee 'caused or participated' in the allegedly constitutional deprivation in some way." (emphasis in original) (quoting *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012); citing *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017)).

## 7.1. Individual Defendants

Pelishek's amended complaint and response again suffers from a lack of precision. He largely lumps the defendants together, making no effort to specify who did what. He frequently refers to "the defendants" collectively, despite context that makes it clear that each defendant could not each personally have taken the same alleged action. The lack of clarity is compounded by the fact that one defendant is a municipality, which obviously cannot act in the same way as can a natural person.

While many aspects of a complaint may be stated broadly or generally, a complaint must make clear what actions are attributable to which defendant. Liability must be individualized, and each defendant is entitled to know what he or she allegedly did wrong. Because Pelishek largely uses "the defendants" as an empty pronoun that is wholly unhelpful in assessing the claims against the individual defendants, the court must largely disregard those allegations and focus on the allegations that name specific defendants.

Pelishek argues that he has adequately pled an equal protection claim against each defendant because he alleges in his amended complaint

> that Rendall worked joint [sic] with Sorenson, Adams, Felde, Filicky, and Salazar, all of whom engaged in and condoned discrimination of Plaintiff between August 2022 and April 2023, when Plaintiff finally felt he had no choice but to resign. *See* ECF No. 13 ¶¶ 46, 49, 52, 54, 55, 64, 67-73, 77, 81, 82, 83, 85, 86, 87, 88[sic] 89, 99, 103, 107, 108, 121, 124, 125, 126, 128, 129[sic] 135, 139, 140, 141, 156, 158.

(ECF No. 32 at 14-15.)

A string citation to dozens of paragraphs in a complaint does little to aid the court or respond to a motion to dismiss. This is especially true when (as here) the citations tend not to support the proposition the plaintiff cites them for. The paragraphs cited by Pelishek have nothing to do with Rendall working with Sorenson, Adams, Felde, Filicky, and Salazar, or with any of them engaging in or condoning discrimination against him.

Pelishek's equal protection claim against Mayor Sorenson is the only claim that is straightforward. Sorenson was allegedly the decisionmaker who modified Pelishek's job responsibilities, resulting in an adverse employment action. (*See* ECF No. 13, ¶¶ 81, 109.) Consequently, the equal protection claim against Sorenson parallels his Title VII claim and is sufficient to proceed.

Felde is mentioned only a handful of times in the amended complaint. The only allegation that even remotely implicates any degree of misconduct regarding Pelishek is that she allegedly interviewed three female employees about what happened at the meeting where Pelishek used the slur but did not interview him. (ECF No. 13, ¶ 58.) In the string of paragraphs Pelishek cites as purporting to support his equal protection claim, Felde is mentioned only twice: once to say that Wolf told Felde that a diversity expert found that Pelishek did nothing wrong in using the slur (ECF No. 13, ¶ 52), and once to say that Felde, when speaking for the Common Council, stated that Wolf would

be investigated (ECF No. 13, ¶ 77). The allegations in the amended complaint do not add up to a plausible equal protection claim against Felde.

As to Rendall, Filicky, Salazar, and Adams, although Pelishek does not use the term, he appears to be pursuing a cat's paw theory of liability against them. The cat's paw theory of liability applies when an official who lacks decision-making authority acts with a discriminatory motive in an attempt to dupe a decisionmaker to take an adverse action against the plaintiff. *See Woods v. City of Berwyn*, 803 F.3d 865, 867 (7th Cir. 2015); *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014). Here there were two alleged decision-makers. Mayor Sorenson allegedly had some control over Pelishek's work (ECF No. 13, ¶¶ 81, 109), and the Common Council could fire Pelishek (ECF No. 13, ¶¶ 17, 38). Although Filicky and Salazar were members of the Common Council, they are not alleged to have possessed the authority to direct a decision of the ten-member body (ECF No. 13, ¶ 15).

Pelishek alleges: "Rendall, Filicky, and Salazar have stated, and expressed during this time, that 'white men of privilege' are not allowed to speak about racism or discrimination and should remain quiet about community or social matters." (ECF No. 13, ¶ 68.) That allegation could support an inference of impermissible animus towards Pelishek, who allegedly spoke about racism and discrimination when he asked how to address the citizen's racism at a community meeting. But Pelishek must also plausibly allege that these individuals acted on their animus. Again, because liability must be

individualized, the court looks to the allegations against each specific defendant in the amended complaint.

As to Filicky, Pelishek's relevant allegations amount to assertions that, although he told her that the investigative report was false and that he was being set up, she took no action. (ECF No. 13, ¶¶ 124, 126, 135.) These allegations do not support an inference that Filicky did something impermissible in an attempt to influence a decisionmaker to take adverse action against Pelishek (nor do they support any other plausible claim). For example, there is no suggestion that Filicky alone was in the position to convey to the decisionmakers that Pelishek disputed the findings in the investigative report, and by remaining silent decisionmakers presumed that Pelishek had no dispute with it. The amended complaint does not contain a plausible equal protection claim against Filicky.

As to Salazar and Rendall, Pelishek alleges that both spoke at a Common Council meeting in support of Pelishek's discipline or termination. (ECF No. 13, ¶ 69.) These allegations, combined with allegations of their alleged animus toward white males speaking on issues of race and discrimination, are sufficient under a cat's paw theory of liability to cross the very low threshold applicable at this stage.

As for Adams, he allegedly was involved in drafting the investigative report (ECF No. 13, ¶¶ 100-01) that Pelishek contends contributed to the adverse employment actions he suffered. These allegations are likewise sufficient under a cat's paw theory of liability at this stage to state an equal protection claim against Adams.

Therefore, as to Salazar, Rendall, Adams, and Sorenson, the court must turn to the question of whether they are entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are granted qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). But because "[t]he facts essential to this defense typically emerge during discovery … the motion-to-dismiss stage is rarely 'the most suitable procedural setting to determine whether an official is qualifiedly immune.'" *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) (quoting *Hanson v. LeVan*, 967 F.3d 584, 589 (7th Cir. 2020)).

The level of generality at which qualified immunity must be assessed is always a difficult and complicated question. *See White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). At this preliminary stage, the court finds that it is sufficient to note that a reasonable person in the defendants' positions would have known that discriminating against a person based on his race or gender would

violate the Constitution. Therefore, they are not entitled to qualified immunity at this time.

**7.2. City of Sheboygan**

As to Pelishek's equal protection claim against the City of Sheboygan, it is well-established that a municipality is not liable for the constitutional torts of its employees. *See Monell*, 436 U.S. at 694. In other words, "[t]here is no *respondeat superior* liability under section 1983 …." *Ball v. City of Indianapolis*, 760 F.3d 636, 643 (7th Cir. 2014). But a municipality may be liable for its own actions. *Monell*, 436 U.S. at 694. If a plaintiff is injured as a result of a policy or custom of a municipality, the municipality may be found liable. *Id*.

In the Seventh Circuit it does not take much to adequately allege a *Monell* claim. A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the City maintained a policy, custom, or practice of intentional discrimination against a class of persons to which [the plaintiff] belonged." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted).

Pelishek alleges that, when he reached out for help, the City's Human Resources Director responded that he had no "protected status," implying he should simply deal with it. (ECF No. 13, ¶ 108.) One inference from this statement is that the City had a policy of not protecting white men like Pelishek from discrimination, or at least of not training employees regarding the bounds of equal protection. Granted, a policy of not

Case 2:23-cv-01048-WED   Filed 03/11/24   Page 19 of 33   Document 38

training employees regarding the constitutional protections regarding sex discrimination is not the same as a policy of discrimination. Nonetheless, although such theories are the "most tenuous" bases for municipal culpability, *see Connick v. Thompson*, 563 U.S. 51, 61 (2011) (discussing failure to train), they are sufficient at the motion to dismiss stage, *cf. Flores v. City of S. Bend*, 997 F.3d 725, 734 (7th Cir. 2021) (discussing failure-to-train theory at the pleading stage).

Additionally, in light of Pelishek's plausible equal protection claim against Mayor Sorenson, Pelishek has a plausible *Monell* claim against the City of Sheboygan.

### 8. Free Speech – Retaliation

Pelishek alleges that, when he raised his concern about a citizen's racist views and repeated the citizen's slur, he engaged in speech protected by the First Amendment. (ECF No. 13, ¶¶ 198-207.) He also alleges that he engaged in protected speech when he told Jill Hall, a private attorney retained by the City to investigate Wolf, that a group seeking funding for Diversity, Equity, and Inclusion efforts had "threatened Wolf … after Wolf denied their request for money." (ECF No. 13, ¶¶ 93, 208-16.)

A public employee's speech is protected under the First Amendment only if he is speaking as a private citizen and not pursuant to his official duties. *Fehlman v. Mankowski*, 74 F.4th 872, 875 (7th Cir. 2023). An employee's official duties are broader than his job description. *Id*. No matter how important the speech is to the public interest, if the speech is made pursuant to the employee's official duties, it is not

protected by the First Amendment. *Id.* at 877 (discussing *Garcetti v. Ceballos*, 547 U.S. 410 (2006)).

The allegations in the amended complaint clearly demonstrate that Pelishek's statements were made in connection with his official duties and therefore are not protected by the First Amendment. The court is not required to accept as true Pelishek's allegation that he made the statements as a private citizen. Such an allegation is both contradicted by other allegations in the amended complaint and a legal conclusion that is not entitled to a presumption of truth. *See McCauley*, 671 F.3d at 616 (citing *Iqbal*, 129 S. Ct. at 1951).

As alleged in the amended complaint, the first incident related to a community meeting that Pelishek attended as part of his responsibilities as the City Director of Planning and Development. Following that meeting, he consulted with his colleagues for guidance in performing his duties—specifically, how to deal with racist sentiments expressed by citizens during such community meetings. It was in this context that he engaged in the allegedly protected speech. Pelishek's argument that the speech was protected because his job does not include raising concerns about racism in the community takes far too narrow of a view of the issue. *See Fehlman*, 74 F.4th at 877. Pelishek has failed to allege that his speech on this occasion was plausibly protected under the First Amendment.

The second allegedly protected speech likewise clearly was made in connection with Pelishek's official duties. The fact that Pelishek was purportedly reporting government corruption, and that doing so was not within his defined responsibilities, does not render his speech protected. "Employees' statements about 'misconduct affecting an area within [their] responsibility' are considered official-capacity speech even if those employees are not ordinarily responsible for investigating misconduct." *Fehlman*, 74 F.4th at 875 (quoting *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013)). The alleged misconduct was clearly within his areas of responsibility. It was pursuant to his job responsibilities that he attended the meeting where the misconduct allegedly occurred. And it was likewise pursuant to his official duties that he was interviewed by Hall, at which time he made the relevant statements.

The defendants' motion to dismiss Pelishek's First Amendment retaliation claim will be granted.

## 9. Free Speech – Prior Restraint

Pelishek alleges he was subjected to two directives that constituted unconstitutional prior restraints. "The term 'prior restraint' is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'" *Alexander v. United States*, 509 U.S. 544, 550 (1993) (quoting M. Nimmer, Nimmer on Freedom of Speech § 4.03, p. 4-14 (1984) (emphasis added)); *DeJong v. Pembrook*, 662 F. Supp. 3d 896, 915 (S.D. Ill.

2023) ("Prior restraints, quintessential First Amendment violations, can be described as threatened penalties for future speech." (citing *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009)).

The first directive was contained in an email that an Assistant City Attorney sent to all City employees after Wolf sued the City, "banning all City employees and officials from speaking to Wolf or Wolf's attorney because it might be used as 'evidence.'" (ECF No. 13, ¶ 118; *see also* ECF No. 13-5 ("Because the City is a defendant, all City employees are directed to have no communication with Mr. Wolf or Attorney DeMaster.").) The email also "encourage[d]" employees not to talk to "friends, neighbors and even coworkers" about Wolf's case. (ECF No. 13-5.)

The second was a directive from the City's Director of Human Resources to, among other City employees, Pelishek, stating that department heads

> were not allowed to talk to (1) anyone about "Wolf" without the City's outside attorneys being present, and (2) must direct all public or media requests only to Sorenson, Adams, or the (new) HR Director for a "complete answer" but were otherwise prohibited from commenting on Wolf's federal lawsuit allegations, including the published Report, and factual statements about threats and potential political corruption.

(ECF No. 13, ¶ 125; *see also* ECF No. 13-6 ("Because the City is a party to a federal lawsuit, no employee is allowed to speak about matters related to former Administrator Wolf or business of the City of Sheboygan involving former Administrator Wolf to anyone without our Attorneys being present.").)

### 9.1. Individual Defendants

Pelishek alleges:

> The individual Defendants personally participated, directed, facilitated, and/or knew of the February 7 Directives, and turned a blind eye to Plaintiff's constitutional injuries. (ECF No. 13, ¶ 232.)

> The individual Defendants directly participated by drafting, directing, facilitating and/or knowingly turning a blind eye to the imposition of the March 8 Directive that chilled Plaintiff's protected speech in violation of the First Amendment to the United States Constitution. (ECF No. 13, ¶ 247.)

Pelishek offers nothing to support these allegations, which amount to little more than legal conclusions. The individuals who sent the directives are not named as defendants. And it is only with respect to Adams, the City Attorney, and perhaps Mayor Sorenson, that it is even plausible to infer that a defendant was in a position to draft, direct, or supersede the directives.

While the other defendants are entitled to dismissal because Pelishek has not alleged a plausible claim against them, Adams and Sorenson are entitled to qualified immunity (as would be the other individual defendants had Pelishek alleged a plausible claim against them).

Both directives are the sorts of admonitions that organizations routinely send to their staff when sued. A reasonable person would not necessarily understand that the directives violated the Constitution. Pelishek has not pointed to any sufficiently

24

analogous authority holding that a municipality cannot bar its employees from speaking to persons and attorneys suing the city or speaking about pending litigation.

The cases to which Pelishek points are readily distinguishable. In *Milwaukee Police Ass'n v. Jones*, 192 F.3d 742 (7th Cir. 1999), the police chief issued a directive stating that, when an employee makes any internal complaint about another employee, the complainant is barred from discussing the complaint with anyone, even his lawyer or union. The matter was before the court on a motion for a preliminary injunction. Contrary to Pelishek's argument, the court never held that the directive violated the First Amendment. It held only that remand was necessary for the district court to reconsider the preliminary injunction motion.

In *Crue v. Aiken*, 370 F.3d 668 (7th Cir. 2004), a university chancellor barred all students and staff from communicating with prospective student athletes without the approval of the athletic director. The purported reason for the directive was to avoid violating NCAA rules that strictly limited recruiting of student athletes. The plaintiffs asserted that the directive prevented them from contacting prospective athletes with their concerns about the university's treatment of Native Americans in light of its use of a mascot they considered offensive. A divided panel of the court found that the policy violated the First Amendment and that the chancellor was not entitled to qualified immunity in light of *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *United States v. National Treasury Employees Union*, 513 U.S. 454 (1995). The dissent would have found

that the directive did not violate the First Amendment. *Crue v. Aiken*, 370 F.3d 668, 689 (7th Cir. 2004) (Manion, J., dissenting).

The court's rejection of the chancellor's assertion of qualified immunity tends to support the rejection of qualified immunity here. However, subsequent decisions by the Supreme Court in the area of qualified immunity require the court to reach a different conclusion. In a series of recent decisions, the Court has clarified the law of qualified immunity, *see White*, 580 U.S. at 79 (citing *City and County of San Francisco* v. *Sheehan*, 575 U. S. 600, 611, n. 3 (2015) (collecting cases)), and stated that, although overcoming qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quotation marks and brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). A government official is not liable simply because a plaintiff can point to a "clearly established law" "at a high level of generality." *Id.* (quoting *al-Kidd*, 563 U.S. at 742). "Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (brackets, quotation marks, and ellipses omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). As the Court has emphasized, "immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotation marks omitted) (quoting *Mullenix*, 577 U.S. at 12).

The court in *Crue v. Aiken*, 370 F.3d 668 (7th Cir. 2004), assessed the clearly established right at a very high level of generality, noting only the broad principle that "public employees retain certain rights to free speech on matters of public concern." *Id.* at 680. This court must assess Pelishek's claim vis-à-vis qualified immunity much more narrowly in light the Supreme Court's subsequent decisions. *See also Wernsing v. Thompson*, 423 F.3d 732, 750 (7th Cir. 2005) (finding that district court erred by assessing too broadly a directive that agency employees not discuss agency matters with outsiders).

*Crue* is the most analogous authority Pelishek offers (or that the court has identified), but it lacks many crucial details such that it cannot be said to have placed the relevant question beyond debate. *Crue* involved a broad prohibition, banning communication on any subject to a broad class of persons. Here, the first directive was limited to employees' abilities to speak to two individuals. The second was limited to a narrow subject matter. Neither directive was radical or extraordinary; as noted, they are routine for organizations facing litigation.

Granted, state actors play by different rules and the court does not suggest that simply because a matter is routine in private employment a government official is entitled to presume that it is constitutional. Rather, the court is noting merely that context matters to qualified immunity, and here the directives were issued in the context of pending litigation. *Cf. Wernsing*, 423 F.3d at 749 (noting that the fact that the agency's

mission depends on confidentiality and security was a factor that made it reasonable for the agency head to bar employees from speaking about agency matters without prior approval).

It is only in failing to account for certain nuances and exceptions that might arise at the margins of the policies that there is even a plausible First Amendment claim. The hearts of the policies are consistent with the First Amendment, and as such the court cannot say that, even if Pelishek could show that any defendant was involved in the issuance of the directives, they were either "plainly incompetent" or "knowingly violate[d] the law." *See White*, 580 U.S. at 79; *see also Wernsing*, 423 F.3d at 750.

Accordingly, the court will grant the individual defendants' motion to dismiss Pelishek's prior restraint claims.

### 9.2. City of Sheboygan

Turning to Pelishek's prior restraint claim against the City of Sheboygan, he argues in response to the motion to dismiss that the directives constitute Sheboygan policy "because both were imposed by policymakers at the City—namely, its City Attorney (Adams) for the February Directives and its Human Resources Director (Westbrook) for the March Directives." (ECF No. 32 at 40.)

"One way in which a municipality may be liable for a section 1983 violation is if 'an individual with final policymaking authority for the municipality (on the subject in question) caused the constitutional deprivation.'" *Kristofek v. Vill. of Orland Hills*, 712

F.3d 979, 987 (7th Cir. 2013) (quoting *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009)). It is plausible that both Adams and Westbrook had final policymaking authority with respect to the subjects of the directives.

Balancing the City's interest against that of Pelishek's, *see Nat'l Treasury Emples. Union*, 513 U.S. at 465-66, would require the court to go beyond the appropriate scope of a motion to dismiss. It is sufficient at this stage that the directives plausibly implicate Pelishek's ability to speak on matters of public concern or to otherwise exercise rights protected by the First Amendment.

The City's argument that the directives do not constitute prior restraints because they do not contain a mechanism for employees to obtain approval to speak (ECF No. 24 at 44) is misguided. Although courts have often referred to restrictions that require speakers to obtain authorization to speak as prior restraints, *see, e.g.*, *Samuelson v. Laporte Cmty. Sch. Corp.*, 526 F.3d 1046, 1051 (7th Cir. 2008), it is incorrect to suggest that this is an element of this category of First Amendment claim. It is not as if governments avoid the First Amendment simply by categorically banning speech and not providing a mechanism for redress. *See, e.g.*, *Nat'l Treasury Emples. Union*, 513 U.S. at 457 (holding that law prohibiting government employees from receiving compensation for speeches or articles violated the First Amendment).

Pelishek, therefore, has alleged plausible First Amendment claims against the City of Sheboygan regarding the identified directives, and the court will deny the motion to dismiss with respect to those claims.

## 10. Injunctive Relief

In his amended complaint, Pelishek seeks:

An injunction prohibiting the Defendants from making any disparaging comments about the Plaintiff to employees, businesses, employers, or citizens privately and/or publicly;

An injunction compelling the Defendants to remove any subsequent or negative performance or job-related information from Plaintiff's personnel file;

* * *

Granting such other and further relief as this Court may deem just, proper, and equitable, including injunctive relief for past violations and preventing future violations.

(ECF No. 13, ¶ ¶ 254-55, 259.)

The defendants moved to dismiss Pelishek's claim for injunctive relief on the basis that, because he is no longer employed by the City, there is no possibility of any continuing violation or threat of future violation. (ECF No. 24 at 73.)

Pelishek responds: "Plaintiff is additionally entitled to declaratory and injunctive relief because any 'person whose injury can be redressed by a favorable judgment has standing to litigate,' and injuries compensable in monetary damages can always be

redressed by a court judgment." (ECF No. 32 at 14 (quoting *Fed. Deposit Ins. Corp. v. Ernst Young LLP*, 374 F.3d 579, 581 (7th Cir. 2004)).

Pelishek's response fails to address the defendants' argument. Not only does his statement border on a non-sequitur, but the case cited has nothing to do with injunctive relief.

At this stage, injunctive relief is material vis-à-vis only qualified immunity. A claim for injunctive relief may proceed against an individual defendant notwithstanding qualified immunity. *See Hannemann v. S. Door Cty. Sch. Dist.*, 673 F.3d 746, 758 (7th Cir. 2012) ("the defense of qualified immunity does not protect defendants from an action for injunctive relief"). However, if the plaintiff fails to state a plausible claim for injunctive relief against that individual, then the court may dismiss a defendant entitled to qualified immunity. Thus, the court must determine if Pelishek has pled a plausible claim for injunctive relief against Felde or Filicky. Absent a plausible claim for injunctive relief against them, Felde and Filicky must be dismissed from this action.

Pelishek has not pled any claim that would plausibly give rise to an injunction prohibiting any defendant "from making any disparaging comments about the Plaintiff to employees, businesses, employers, or citizens privately and/or publicly." (ECF No. 13, ¶ 254.) He has not, for example, pled a defamation claim. He has not plausibly alleged that any individual defendant, and certainly not Felde or Filicky, would be the one to

"remove any subsequent or negative performance or job-related information from Plaintiff's personnel file." (ECF No. 13, ¶ 255.) Nor has he alleged any other plausible basis for injunctive relief against any Felde and Filicky. Therefore, the court will dismiss Felde and Filicky as defendants.

## 11. Conclusion

For the reasons set forth above, Pelishek's official capacity claims against Ryan Sorenson, Barbara Felde, Roberta Filicky-Peneski, Amanda Salazar, Emily Rendall-Araujo, and Charles Adams are redundant to his claims against the City, and therefore the defendants' motion to dismiss those claims is granted.

The motion to dismiss is also granted with respect to Pelishek's Title VII claims against Ryan Sorenson, Barbara Felde, Roberta Filicky-Peneski, Amanda Salazar, Emily Rendall-Araujo, and Charles Adams.

The defendants' motion to dismiss is denied with respect to Pelishek's Title VII hostile work environment and disparate treatment claims against the City of Sheboygan. Pelishek has adequately pled a parallel equal protection claim against Ryan Sorenson, Amanda Salazar, Emily Rendall-Araujo, Charles Adams, and the City of Sheboygan. Pelishek's equal protection claim is dismissed against Barbara Felde and Roberta Filicky-Peneski.

Pelishek's First Amendment retaliation claim is dismissed in its entirety. The allegations in the complaint demonstrate that Pelishek's statements were not protected by the First Amendment.

Pelishek's First Amendment prior restraint claims are dismissed as to all individual defendants. All the individual defendants are entitled to qualified immunity, and the allegations in the amended complaint do not add up to a plausible claim against Barbara Felde, Roberta Filicky-Peneski, Amanda Salazar, or Emily Rendall-Araujo. The motion to dismiss is denied as to Pelishek's First Amendment prior restraint claim against the City of Sheboygan.

Barbara Felde and Roberta Filicky-Peneski are dismissed as defendants in this action.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin this 11th day of March, 2024.

WILLIAM E. DUFFIN
U.S. Magistrate Judge