UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

CHAD PELISHEK,

                  Plaintiff

  v.                                                                                  Case No. 2:23-CV-1048

CITY OF SHEBOYGAN, et al.,

                  Defendants.

_____

**PLAINTIFF CHAD PELISHEK'S PROPOSED FINDINGS OF MATERIAL FACT IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

_____

Plaintiff Chad Pelishek through his undersigned counsel, hereby submits the following Proposed Findings of Fact in Support of Plaitniff's Motion for Partial Summary Judgment:

.

    1.    The City of Sheboygan is a municipality organized under the laws of the State of Wisconsin. Wolf v. City of Sheboygan, et. al., No. 2:23-cv-00149 (E. D. Wis. Feb. 6, 2023) ("Wolf"[1]), Defs. Answer to Amend. Compl., No. 65, Answer to ¶ 6 (Sept. 19, 2023).

    2.    The City of Sheboygan's Director of Human Resources and Labor Relates ("HR Director") has the following duties and powers pursuant to the City's Municipal Ordinances:

- The director shall be the official upon or with whom all personnel-related notices, requests for hearings, complaints, or other official documents shall be served or filed, except those complaints, notices or other official documents which are prescribed by law to be served upon other city officials;

- The director shall have access to all necessary records and papers, the examination of

---

[1] Citations referencing filings, admissions, or statements in the related case before this Court, *Wolf v. City of Sheboygan, et. al.,* are addressed with the introductory "*Wolf*" prior to a description of the filings or citation described.

- which will aid in the disposition of the complaints and notices and in the discharge of the director's duties.

- The director shall be responsible for such other policies, rules and regulations not inconsistent with this chapter and other personnel-related ordinances as the director deems necessary for its enforcement and administration.

- The director shall be the administrative officer of the civil service system. The director shall render such additional services in connection with the civil service system or may be requested by the city administrator and common council.

- The director shall have charge of recruitment, applications for employment, and the examination of applicants for positions, and shall be the custodian of the personnel records.

City of Sheb. Mun. Code, Chapter 2 (Administration), Article (2)(IV)(6) "Human resources", Sec 2-550 Director of Human Resources and Labor Relations, *available at* https://sheboygan.municipalcodeonline.com/book?type=ordinances#name=Sec_2-550_Director_Of_Human_Resources_And_Labor_Relations.

3. The City of Sheboygan has a Policy that threatens employees and citizens with discipline or potentially jail time for making false statements about political corruption, bribery regarding any city appointments. Sheb. Mun. Code, Sec. 18-3 – 18-6, *available at* https://sheboygan.municipalcodeonline.com/book?type=ordinances#name=CHAPTER_18_CITY_PERSONNEL.

4. During a department head meeting on August 22, 2022, Chad Pelishek raised a concern about a racial slur incident that occurred at a neighborhood meeting. *See* Defs. Answer to Am. Compl., ECF No. 39, at pp. 18-19.

5. At the August 22, 2022, meeting, Emily Rendall-Araujo instructed Pelishek to repeat the slur verbatim, and he complied. *See* Decl. Pelishek ¶2; *see* Decl. DeMaster, Ex. 5, Valdez Dep. Pages.

6. Immediately after the August 22, 2022 meeting, Rendall-Araujo told several citizens, Council member Amanda Salazar, and Veronica Valdez that Pelishek used a racial slur. *see* Decl.

DeMaster, Ex. 5.

7. Rendall-Araujo met with a reporter Maya Hilty from the Sheboygan Press in person at City Hall. *See* Decl. DeMaster, Ex. 6. Duellman Dep. pages.

8. On September 19, 2022, the reporter, Maya Hilty, reached out to Pelishek for comment before publishing an article about him using a racial slur at the August 22 meeting. *See* Decl. Pelishek, Ex. 1.

9. On September 20, 2022, City Attorney Adams denied Pelishek the opportunity to make comments and respond to the reporter about the racial slur incident, so Pelishek directed the reporter to Mayor Sorenson and Administrator Todd Wolf rather than commenting to her. *Id.*

10. During a lunch break on October 5, 2022, Pelishek and Wolf met with a local DEI group affiliated with Rendall-Araujo and Mayor Sorenson to discuss ways to address racism incidents at neighborhood meetings. *See* Decl. Pelishek ¶¶ 5-6.

11. At the October 5, 2022 meeting, Chad Pelishek claims to have witnessed a female DEI member, Ale Guevara, threaten to publicly oppose Wolf when he said the City would not pay their group for consulting on DEI or racism issues. *See Id.*, Ex. 2 (Investigation Interview 11.29.2022).

12. Regardless of its truth or falsity, Chad Pelishek's opinion was that one of the DEI members threatened Wolf for money after they asked for $70,000 in consulting fees from the City. *See id.*

13. On October 10, 2022, reporter Maya Hilty published an article online and in the newspaper entitled "City leaders uses racial slur" with a large photograph of Chad Pelishek in the newspaper version. Decl. DeMaster, Ex. 7 (October 10 and October 26 articles in pdf); *see also* Defs. Answer to Amend. Compl. ECF No. 39, Answer to Pl. Ex. 3 (ECF. No. 13-3).

14. On October 26, 2022, another article entitled "Sheboygan n-word racial slur incident

3

prompts call for change at city" was published. *See* Decl. DeMaster, Ex. 7.

15. After publication on October 26, 2022, the article's title was changed to "People Are Angry." It implied that Wolf was failing to address racism at the City and potentially retaliating against a female employee who published concerns about racism. *Id.*

16. The October 10 and 26 articles implied that Pelishek had made an unsolicited racial slur rather than reporting an incident and that Todd Wolf was covering up for racism at the City by retaliating against the female employee (Rendall-Araujo) who published the racism incident and Pelishek's repetition of the slur. *Id.*

17. In addition to the October articles, several other articles were published about discrimination and retaliation at the City, the investigation to Todd Wolf, and Todd Wolf's lawsuit prior to Pelishek's resignation in May 2023. *See* Decl. DeMaster, Ex. 8.

18. On November 1, 2022, the DEI member that Pelishek believed threatened Todd Wolf for payment, Guevara, met with Mayor Sorenson in his office, as well as Heather Cleveland, who also helped run the DEI group. *Wolf,* Defs. Answer to Amend. Compl., No. 65, Answer to ¶ 129 (Sept. 19, 2023).

19. On November 7, 2022, Todd Wolf sent a confidential letter to the Common Council expressing concerns about the DEI threat for money and influence seeking consulting positions from the DEI group with City officials like Sorenson and Rendall-Araujo, as well as false targeting of white men by DEI-affiliated employees including Rendall-Araujo. *Wolf,* Decl. Buliox in Supp. of Defs. Mot. Dismiss Compl., Ex. 1, ECF No. 30-1 (March 29, 2023).

20. On November 7, 2022, the Common Council publicly announced that Todd Wolf was being placed on involuntary leave to investigate his conduct stemming from his November 7 letter to the common council members. *Wolf,* 23-cv-149, Defs. Answer to Wolf Compl., ECF No. 31, Answer to ¶ 1; *Wolf,* Defs. Answer to Wolf Amend. Compl., ECF No. 65, Answer to ¶ 138; *See* Decl. DeMaster, Ex. 10.

21. Around 11:30 PM on November 7, 2022, Sheboygan police delivered a letter to Wolf prohibiting him from speaking to City employees or anyone doing business with the City while on leave. *Wolf,* Defs. Answer to Wolf Amend. Compl., ECF No. 65, at p. 142, Answer to ¶ 447; *see* Decl. DeMaster, City Response to Requests for Admission No. 1, Ex. 10 (admitting authenticity of Wolf Amend. Compl. Ex. 9 at ECF No. 36-9).

22. City Attorney Adams, with Mayor Ryan Sorenson, drafted the directives on Wolf and ordered the police to deliver them to Wolf's home around 11:00 PM. *See* Decl. DeMaster, Ex. 11.

23. The City imposed the directives as a condition of Wolf's administrative leave to ensure (1) the integrity of the investigation, and (2) prevent disruption and protect workplace harmony while the City investigated Wolf's conduct and the allegations from Rendall-Araujo and the DEI group that he lied about them or retaliated. *Wolf*, Defs. MTD Amend. Compl., ECF No. 47, at pp. 11-13.

24. The City stated the directives on Wolf were "standard administrative measures' to ensure "accurate messaging" about the public Wolf investigation and only involved "City business" despite the fact that the directives on Wolf do not narrow his speech to "city business" on their face. *Id.*

25. Chad Pelishek was at Todd Wolf's home when the police arrived and read the November 7 directives. *See* Decl. Pelishek ¶¶8-9.

26. On November 8, 2022, Wolf made a public statement on a local radio station about the DEI threat and suggested that his suspension was in retaliation and follow through from the DEI group with City leadership's consent. *Wolf,* Defs. Answer to Wolf Amend. Compl., ECF No. 65, Answer to ¶ 123 (Sept.19, 2023).

27. On November 9, 2022, Mayor Sorenson publicly stated that Wolf's allegations were untrue. Decl. DeMaster, Ex. 8 (November 9, 2022 article).

28. In November, as part of the investigation into Wolf, Pelishek was interviewed by the

5

Case 2:23-cv-01048-WED   Filed 03/03/25   Page 5 of 10   Document 126

attorney conducting the Wolf investigation interviews. *See* Decl. Pelishek, ¶¶ 12-13, Ex. 2.

29. During Pelishek's interview for the investigation, Pelishek told the investigator that the DEI group threatened Todd Wolf for $70,000 on October 5 and that Rendall-Araujo asked him to repeat "exactly" the racial slur at the August 22 meeting. *Id.*

30. On January 9-10, 2023, the Common Council publicly fired Wolf based on the investigation findings and conclusions that Wolf made false statements about the DEI threat and implying that Wolf retaliated against Rendall-Araujo and his presence was not safe for her. *Wolf* 23-cv-149, Defs. Answer to Wolf Compl., ECF No. 31, Answers to ¶¶ 1, 118.

31. Mayor Sorenson publicly stated that Wolf was fired because of the investigation and that he made false statements about the DEI group was employees were unsafe. *Wolf,* 23-cv-149, Defs. Answer to Wolf Amend. Compl., ECF No. 65, Answers to ¶¶ 244 – 246; *see also* Ex. 8 (January 10 article).

32. The City confirmed and hired Adam Westbrook as Human Resources Director on January 16, 2023, and took over HR responsibilities. *See* Decl. DeMaster, Ex. 12 (Response to Interrogatory No. 9).

33. On January 30, 2023, Westbrook told Pelishek that the truth of all the discrimination and racism allegations would be cleared up when the investigation report was finalized. *See* Decl. Pelishek, Ex. 3.

34. On February 6, 2023, Wolf filed a lawsuit against the City and officials, alleging that the DEI group threatened him for money, that the City wanted to hire and pay them as consultants and intended to push him out so they could do that, and that Rendall-Araujo set up Pelishek to repeat a racial slur so she could broadcast racism and help get rid of City leaders that the DEI group did not like. *See Wolf v. City of Sheboygan, etl al.,* (E. D. Wis. Feb. 6, 2023), Compl., ECF No. 1; *see also* Defs. Answer to Pelishek

Amend. Compl., ECF No. 39, at p. 43, Answer to ¶ 116.

35. On February 7, 2023, HR Director Westbrook and Mayor Sorenson told Pelishek he was a key witness in Wolf's lawsuit and would have to testify. *See* Decl. Pelishek ¶ 18.

36. On February 7, 2023, when Pelishek stated that he would get an attorney, Westbrook told him he could not do so and expressed concern about his statement. *Id*.

37. On February 7, 2023, Deputy City Attorney Liz Majerus issued a directive to all City employees barring all City employees from speaking to Wolf or his attorney, Jennifer DeMaster, without exception. Defs. Answer to Pelishek's Amend. Compl., ECF No. 39, Answer to ¶ 118. 119; (City admits the February 7 directive is authentic).

38. On February 8, 2023, Adams authorized the public release of the investigation report. *Wolf,* 23-cv-149, Defs. Answer to Wolf Amend. Compl., ECF No. 65, Answer to ¶ 145.

39. On March 7, 2023, Westbrook showed Pelishek the written investigation report and Pelishek determined that it contained false information, omitting key facts and misrepresenting his testimony from his investigation interview. *See* Decl. Pelishek, Exs. 2 & 4.

40. The investigation concluded that Wolf's conduct posed risks to the City and warranted his removal holding factual conclusions that Wolf made false statements about the DEI threat and influence with City officials, that Pelishek did not confirm that the DEI group threatened Wolf for money at the October lunch, and that Wolf retaliated against Rendall-Araujo for reporting "racism" at the City. *Wolf,* 23-cv-149, Defs. Answer to Wolf Amend. Compl., ECF No. 65, at pp. 45 & 81, Answer to ¶ 250, 252 (Defendants admit that Exhibit 15 is a copy of Hall's investigation report); *see also* Defs. Answer to Pelishek Amend. Compl., ECF No. 39, at p. 45, Answer to ¶¶ 121, 122.

41. On March 8, 2023, Adams ordered the City Clerk to release the Hall investigation report

to the public. *See* Decl. DeMaster, Ex. 10 Response to Requests to Admit No. 1 (12.13.23).

42. March 8, 2023 - The HR Director shared a copy of the Hall investigation report with all department heads. Defs. Answer to Pelishek Amend. Compl., ECF No. 39, at p. 45, Answer to ¶ 121.

43. On March 8, 2023, HR Director Adam Westbrook sent a directive to Pelishek and all City department heads prohibiting employees from discussing the investigation or Wolf's lawsuit without his or City Attorney Adams' approval and threatening discipline if the City's legal counsel was not consulted for any conversations about the investigation, report, or Wolf's lawsuit. ECF No. 13-6, Ex. 6 to Pelishek Amend. Compl.; *see also* Defs. Answer to Amend. Compl., ECF No. 39, Answer to ¶ 125 (Defendants admit that Exhibit 6 to plaintiff's Amended Complaint is a true and accurate copy of the March 8 email.")

44. The March 8 directives required that any communications employees wanted to have about the investigation or Wolf lawsuit, including their opinions, needed to occur with the City's legal counsel present. *Id.*

45. The City's sole reasons for imposing the March 8 directives were that they were (1) was a standard administrative measure to ensure accurate messaging and prevent workplace discord, (2) aimed to prevent employees from contradicting official findings internally; and (3) sought to restrict Pelishek's communications about the City Administrator as a "legal precaution" during "active litigation." *Wolf,* 23-cv-149, Defs. Br. Supp. Mot. to Dismiss Wolf Amend. Compl., ECF No. 47, at pp. 12 – 13; *see also* Pelishek, ECF No. 24, Defs. Mot. to Dismiss Pelishek Amend. Compl., at p. 33.

46. The March 8, 2023, directive regarding the Hall report was discussed during a regular department head meeting. Defs. Answer to Am. Compl,, ECF No. 39, Answer to ¶127.

47. The City of Sheboygan never formally relieved or narrowed any directive restricting employee speech regarding the DEI threat, appointments, or discrimination complaints by Rendall Araujo while Pelishek was employed nor at any point to date. *See* Decl. Pelishek ¶ 32.

48. Between January and May 2023, Pelishek refrained from speaking to attorneys or private citizens about the investigation subjects and DEI threats due to fear of retaliation. *See* Decl. Pelishek ¶¶ 22-33.

49. A few weeks after the March 8 directives, Pelishek went on unpaid leave under the Family Medical Leave Act (FMLA) based, in part, on the March 8 directives where he feared providing any opinions, disputes, or statements even to his friends or family about the investigation report or Todd Wolf's lawsuit allegations. *See id.*

50. Pelishek ultimately resigned, believing, in part, that the City would take adverse action against him if he spoke to even his family, friends, or private legal counsel about his opinions or information regarding the investigation, investigation report, or Todd Wolf's lawsuit as long as he was employed. *Id.*

51. Two days after Pelishek filed his lawsuit in the above-captioned case, the City, through its legal counsel, sent all City employees an email stating that Chad Pelishek's lawsuit allegations were false. *See* Decl. DeMaster, Ex. 9, CITY-PEL 3496-3501.

Respectfully submitted this March 3, 2025.

*/s/ Jennifer T. DeMaster*
Jennifer DeMaster
Wis. Bar No. 1124201
attorney@jenniferdemaster.com
DEMASTER LAW LLC
361 Falls Rd # 610
Grafton, WI 53024
Phone: (414) 235-7488
Fax: (262) 536-0515

Christopher I. Kachouroff
VA Bar No. 44216*

McSweeney, Cynkar & Kachouroff, PLLC
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
Telephone: (703) 621-3300
chris@mck-lawyers.com

*Attorneys for Plaintiff Chad Pelishek*