UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHAD PELISHEK,

    Plaintiff

v.                                                            Case No. 2:23-CV-1048

CITY OF SHEBOYGAN, et al.,

    Defendants.

---

**PLAINTIFF CHAD PELISHEK'S ADDITIONAL PROPOSED FINDINGS OF FACT OPPOSING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Pursuant to Federal Rule of Civil Procedure 56 and Civil Local Rule 56(b)(2)(B)(ii), Plaintiff Chad Pelishek respectfully submits the following additional material facts which require denial of the Defendants' Motion for Summary Judgment:

1. In addition to the February 7 and March 8 email directives, Chad Pelishek was given verbal directives by Defendants Sorenson, Adams, and Westbrook not to speak with anyone, including the media, about racism allegations or whether the Hall Report findings were false. (Decl. Pelishek ¶¶ 15, 16, 18, and 19, 28-33; Pelishek Dep. 421:20-25 to 422:1-17).

2. Pelishek testified that he is not a lawyer and does not, nor did he, understand questions about "evidence" or what "evidence" he might need to satisfy legal standards in this case. (Decl. DeMaster, Ex. 27, Pelishek Dep. 441:19 – 443:13.)

3. On August 9, 2023, HR Director Adam Westbrook sent an email to over 400 City employees labeling Pelishek's legal clams false. (Decl. DeMaster, Ex. 6)

4. Janet Duellman worked for the City of Sheboygan for 12 years. On July 11, 2024, Janet Duellman testified in Pelishek's favor. (Decl. DeMaster, Ex. 41).

5. Janet Duellman no longer works for City (Decl. DeMaster, Ex. 18).

6. Chad Pelishek was forced to resign because the working environment was intolerable and had severe effects on his health and family. (Decl. Pelishek ¶20.)

7. Chad Pelishek was a key witness to the DEI Group's bribery threat and a witness to the false representations of his side of the story in the Hall Report. (Decl. DeMaster, Ex. 27 – Pelishek Dep. at 346:10-347:9).

8. Chad Pelishek followed the March 8 email directive and did not try to correct the accusations against him or speak to his attorney. He also did not confide in my wife. (Decl. Pelishek ¶28-29.)

9. Westbrook told Pelishek that he could not file a harassment complaint against Emily Rendall-Araujo and told him that he was not being treated differently because of a protected status. (Decl. Pelishek, Ex. A - Westbrook Recording at minute 15:00 to 16:21; see also, Decl. DeMaster, Ex. 27 - Pelishek Depo. 340:17-25.)

10. With Sorenson's tacit approval, Emily Rendall-Araujo was the self-appointed enforcer of DEI policies and practices at City Hall. (Decl. Arenz ¶¶7, 29; Decl. Wolf ¶¶12, 13, 15, 17).

11. Emily Rendall-Araujo admitted to the Mayor's assistant in person that Rendall-Araujo knew she had asked Pelishek to repeat the exact racial slur.

> Q What did Emily tell you?
>
> A She told me she looked visibly upset, emotional, and basically just said somebody dropped an N bomb in the management meeting. I'm like "Who"? She's on her phone and stuff, and that's when she said it was Chad, and she's like so I had to pull him aside after the meeting and say hey, man, I know I asked what was said, but you didn't have to say the N word. You didn't have to say it. You could have said the N word.

Decl. DeMaster, Ex. 35 - Valdez Dep. 117:12-25.)

12. In his interview for inclusion in the Hall Report, Chad Pelishek reported that Emily Rendall-Araujo had asked him to specifically state the racial slur and that the DEI Group threatened Todd Wolf to pay them money or they would oppose him publicly. (Decl. Pelishek, Ex. C – Recorded Hall Interview at minute 33:05-37:11 (Rendall-Araujo) and 91:16:00 to 01:16:38 (threat)).

13. The amount of money demand by the DEI Group in exchange for not opposing Todd Wolf was $70,000. (See Decl. DeMaster, Ex. 19 – Abby Block to Pelishek Email and Decl. DeMaster, Ex. - 4, Wolf's Letter to Common Council.)

14. City Attorney Charles Adams edited the final version of the Hall Report. (Decl. Arenz 32-33; and Decl. DeMaster Ex. 27 - Pelishek Dep. 257:15-25 to 258:1-4.)

15. The final version of the Hall Report did not contain Pelishek's true account and contained intentional omissions such as that Rendall-Araujo told him to say the exact racial slur and that he denied that the DEI Group had threatened Todd Wolf with Extortion. (See Decl. DeMaster, Ex. 27 – Pelishek Dep. 353:6 to 354:8 and Decl. Pelishek, Ex. C, Hall recording at min. 01:16:00 – 01:16:38 "Did they say they would publicly oppose Wolf unless he paid them?" "Yes that was said.")

16. Pelishek requested that Adams correct the report and redact Pelishek's name but Adams refused. (Decl. DeMaster, Ex. 27 – Pelishek Dep. 271:2-5, 274:6 to 275:9, and 352-1 to 353:5).

17. Emily Rendall-Araujo was not prevented from repeating her false account of the racial slur to her DEI group, online (Decl. Demaster, Ex. 27 - Pelishek Dep. 324:19-25 to 325:1-3) and to the news reporter Maya Hilty who was also a member of the DEI group. (Buliox Decl. at ¶ 8, Ex. G -- Pelishek Dep. 328:19-25 to 329:1-9). Rendall-Araujo touted her false narrative to others claiming she was standing up toP racism. See Ex. 9 (Maya text) and 10 (Salazar Rendall-Araujo) texts and Decl. Arenz at ¶¶8, 21.

3

18. While Pelishek was on FMLA, Roberta Filicky-Penski's recording was released where she stated that Rendall-Araujo had been embellishing her story against Chad Pelishek. Apparently Rendall-Araujo had been changing her story on the racial slur and was including other things that Pelishek never said, like "colored people." See also Decl. DeMaster, Ex. 40 - Filicky-Peneski 19:4-22 (Rendall Araujo embellished) and Decl DeMaster Ex. 42..

19. When Vice President of the Common Council Roberta Filicky-Peneski's recording was released, Defendants Sorenson, Westbrook, and Adams convened all department heads together and told the Department heads that Filicky-Penski was forced to issue an apology, that Common Council was going to censure her, and that everyone needed to protect Emily Rendall-Araujo. (Decl. DeMaster, Ex. 45 – Pelishek Texts at 8 (redacted text messages between Pelishek and straight white male City Director while on FMLA). Thus, Emily Rendall-Araujo, a white female, received institutional support that was denied to white men like Pelishek and Wolf.

20. Pelishek was afraid to speak with anyone because of the November directive or he would get fired. (Decl. DeMaster 27 – Pelishek Dep. 412:20-422:17 and Decl. DeMaster, Ex. 17 – Sorenson's November directives).

21. Alderman Amanda Salazar used the phrase "colored people" which that had been attributed to Pelishek, but Salazar faced no consequences because she is a woman. (Decl. Demaster, Ex. 40 - Filicky-Peneski 227:13 to 228:19.)

22. Veronica Valdez testified that the anger and outcry against Chad Pelishek being permitted by the City was because he was a "white man of privilege." (Decl. DeMaster, Ex. 35 - Valdez Dep. 126:10-17).

23. Defendant Rendall-Araujo told Wolf that he was a "white man of privilege" should be silent and that both Rendall Araujo and Filicky-Peneski discussed that "white men of privilege" could not make offensive remarks that females or non-white persons could make. (Decl. Wolf ¶ 13)

24. Rendall-Araujo was a self-appointed DEI enforcer who instructed white men of privilege on how to talk, including Todd Wolf and Chad Pelishek. (Decl. Arenz ¶¶7, 48).

25. DEI trainings and internal communications reinforced the narrative that white male perspectives were invalid or harmful. (Decl. Demaster, Ex. 40 - Filicky-Peneski 31:4-33:18 and Decl. Arenz ¶¶7, 8, 21, 48 49 59, 73, 74 and ¶¶ Decl. Wolf 13-17).

26. City employee Carrie Arenz complained to Director Karen Kreuger about Westbrook's offensive innuendo to a young high school male intern. See Decl. Arenz ¶¶67-69 (Adams never interviewed her about Westbrook's sexual innuendos.)

27. City Attorney Charles Adams claimed to have "thoroughly" investigated the allegations including talking to the complainant who was Carrie Arenz. (Decl. DeMaster, Ex. 34 – Adams Press Release)

28. Rendall-Araujo was vindicated by the Hall report which insinuated that Wolf retaliated against her in his November 7 email to Common Council. Ex. 22 – Hall Report and Decl. Demaster, Ex. 4 – Wolf's November 7 Email to Common Council,

29. The City of Sheboygan's written DEI policy is contained on its website https://www.sheboyganwi.gov/dei/ (last visited on April 11, 2025). Decl. Demaster, Ex. 2 – Sheboygan DEI Policy.

30. Sheboygan municipal code sets forth job descriptions of the directors of the City. Municipal Code §§ 2-392 to 2-393 (Director of Senior Services (Rendall-Araujo)) § 2-550, the (Director of Human Resources (Westbrook)) §§ 101-48 to 101-50 (Director of Planning and Development

5

(Pelishek)). (*See also* Decl. DeMaster, Ex. 49 – Article on Rendall-Araujo's job duties show similar job duties to Pelishek.)

31. As part of his job duties, Pelishek was on the Board of Directors for the Business Improvement District for over 10 years as the government representative who oversaw BID funding compliance. (Decl. Pelishek ¶¶ 8, 9).

32. After the racial slur articles were published in the newspapers, along with Rendall-Araujo's DEI activities, Sorenson removed Pelishek from the Board. (Decl. Pelishek ¶¶ 10). He also removed Pelishek from his duties in writing government procurement grants and gave them to Cleveland. When Cleveland would not finish them, Sorenson ordered him at the last minute to complete monumental tasks. Pelishek would stay up all night to finish the proposals. (Decl. Pelishek ¶26 and Decl. Arenz ¶ 37).

33. Pelishek testified to events occurring *after* his work with the BID district involving Cleveland. He testified that

> A: …the mayor was pushing to have us work together on the comprehensive plan, on the *stuff related* to the BID district, and on the grant application.

(Buliox Decl. at ¶ 8, Ex. G -- Pelishek Dep. 293:5-8 (emphasis added)).

34. Cleveland, who was not even a City employee, was trying to get Pelishek fired. (Decl. Pelishek ¶26).

35. Pelishek was denied access to counsel and scared that he would be fired if he spoke with his attorney. (Decl. Pelishek ¶¶15, 18 and Decl. DeMaster, Ex. 40 - Pelishek Dep. 421:20 - 422:17).

**October 17, 2022 Common Council Meeting about racial slur, Pelishek and Article.**

36. The October 17, 2022 Common Council public meeting had one overarching purpose: publicly humiliate and scold Chad Pelishek for "offensive" behavior regarding his repeating the racial slur and to reaffirm their commitment to the DEI policies and practices, include their anti-male and anti-racism principles in front of Chad Pelihsek – without any opportunity for Pelishek to respond or provide a

statement. *See* City of Sheboygan, Fourteenth Regular Common Council Meeting, October 17, 2022, *available at* https://sheboygan-wi.municodemeetings.com/bc-commoncouncil/page/fourteenth-regular-common-council-meeting (last accessed April 8, 2025).

37. During the meeting, three persons affiliated with the DEI and Progressive Women group made statements against Pelishek using the racial slur and called on City leaders to fire Pelishek and take action against him immediately. The video of the 10/17 meeting is at the following URL: https://www.youtube.com/watch?v=3T9nkJknLCI&t=2551s. The DEI Group who spoke consisted of Heather Cleveland, Jamie Haack, and Sara Ruiz Hernandez. (Their statements can be found at the following minute markers: Cleveland at 19:08 – 24:48, Haack at 13:22 – 16:28, and Ruiz at 6:33 – 19:13)

38. During the meeting, the Common Council introduced and passed a "DEI Resolution" confirming the City of Sheboygan commitment to DEI principles in light of the Pelishek slur article and backlash. (Decl. DeMaster, Ex. 2 at 2 (Sheboygan Common Council DEI Resolution)). As the video shows, when introducing the DEI Resolution, Council Alder Grazia Perrella made the following statement publicly following the speeches demanding action against Chad Pelishek asking for two changes to the DEI Resolution stating the Council should add these two lines:

> "First, that common council understands that leaders should offer no excuses for offensive behavior; and next, that common council understands that leaders need to operate in full transparency and accountability."

(*Id.* at minute **39:55 – 40:22**). During the meeting, Betty Ackley stated:

> this issue [i.e., the racial slur] is one that I believe needs to be addressed immediately. Not everyone knows that I'm biracial because it shouldn't be a talking point . . . I do understand the impact of words on a profoundly personal level. As a child and even as an adult I received inappropriate comments about my ethnic background . . . words can and do cause injury no matter the intent of the person speaking them… what was the goal and the purposes of an inappropriate language . . . it was lousy delivery and a poor choice to not find other words to get the point across and deliver the message . . . from the calls, emails, and in person conversations with residents that I've had recently about this issue, people are angry.

I do not believe that the communication was becoming of someone who is representative of the city's public face and leadership . . . all of us should be holding ourselves to a higher standard. We must be mindful of our words when quoting others . . . [this is] a public relations nightmare . . . [and] it is now time to implement actionable change. It is not time to provide lip service. An apology is the first step but it will not erase what has already been communicated . . . this entire situation reflects poorly on all levels of the city. I do not believe this is who we are, but unfortunately this is who we are in this moment. We have an opportunity to make real changes to ensure equity and inclusion . . . This is an opportunity for the City Administrator to . . . implement policies to make sure this type of situation never happens again. Now is the time for a change. *It's been this way for years but enough is enough. The time is now*."

*(Id. at* min. 41:58 – 44:48)(emphasis added).

39. During the meeting, the Common Council publicly stated that City Administrator Todd Wolf was directed to take action regarding the slur incident and this was his opportunity.

At the October 17, 2022 meeting, Sorenson stated in part:

it's no secret while we're here tonight. We have a lot of challenges we need to fix . . . over the last several days, [stating he and Council had heard from many constituents] . . . I want to reassure folks in Sheboygan that I hear you and I hope other folks hear you as well. . . . equity work needs to be a fundamental component of government operations and it needs to be woven into the work we do every single day with the 450 + employees that provide essential City services.

*Id.* at min. 34:31.

Sorenson made these comments, including others about no place for racism in the City directly in front of Pelishek during the meeting without giving Pelishek a chance to respond. Below is a true and correct copy of a screenshot from the October 17 meeting with Pelishek sitting behind Sorenson. *Id.*



40. At no time up to the October 17 meeting or Defendant Sorenson's statement had anyone from the Council, mayor's office, or City Attorney (Adams) interviewed Pelishek about what happened.

(Decl. Demaster, Ex. 45 (Pelishek Texts with Employees). In the video, Defendant Sorenson never stated that the allegations against Plaintiff had not been investigate or were unfounded.

41. Soon after Sorenson's statement, the Council went into closed session where Alder Salazar demanded that Plaintiff be fired while she actually repeated the racial slur without consequence. (Decl. DeMaster, Ex. 40 - Filicky-Peneski 226-228:1-13 (Salazar double standard applied).

42. No statement was made by the Mayor or Council nor anyone that Chad Pelishek was not a racist and was trying to report racism. Instead, the Common Council introduced, and subsequently passed, a DEI resolution.

*Forged Document*

43. Pelishek believed that officials at the City who were against me created and forged my signature to get me in trouble. One such document was a $10,000 loan to a DEI group that bore his signature as shown below:

```
BORROWER:        Heather Cleveland
                 Green Bicycle Co.
                 1117 N 8th Street, Sheboygan WI 53081

BY:  [signature]                    (Seal)    10/27/22
     Signature                                Date
     Heather Cleveland, President & Owner
     Print Name and Title

CITY OF SHEBOYGAN, WI:

By:  [signature]
     Kaitlyn Krueger, Finance Director

Attest: [signature]
     Chad Pelishek, Planning & Development Director
```

9

(Decl. Demaster Ex. 44) The font used under my name is different than the document font and it appears to have been cut and pasted from another document. Pelishek denies signing this document. (Decl. Pelishek ¶ 28)

***Pelishek's Job Conditions***

44. Pelishek asked to correct the false narrative because the public was refusing to "work or associate with him. (Decl. Arenz ¶19, 45; see also Decl. Pelishek ¶ 27)

45. The City partners who refused to work with Pelishek and members of the public never heard Pelishek's side of the public story because Sorenson, Adams, and Westbrook would not allow it even after Pelishek begged them multiple times. (Decl. Pelishek, Ex. A (Westbrook recording showing narratives are false racist he says), Valdez Dep. 87:1 – 21, Decl. Arenz ¶¶18, 19).

DEI Group

46. DEI Director Emily Rendall-Araujo's false narrative about Pelishek using a racial slur unsolicited was widely disseminated on social media, including in the "Progressive Women of Sheboygan" Facebook group moderated by Rendall-Araujo, and the "Sheboygan DEIB" group who sent emails demanding action against him for his "racism." (Decl DeMaster, Exs. ¶¶ 10, 23, 26, Ex. 35 - Valdez Dep. 86:12 – 87:21,)

47. On February 7, 2023, Carrie Arenz was at a meeting with Ryan Sorenson, Adam Westbrook, and the new crisis management team to discuss potential future issues. Ryan Sorenson announced that there was soon going to be another firing at the City. Arenz believed that Ryan Sorenson was referring to Chad Pelishek as the "next person to be fired" because they had been discussing the racial slur, articles, and Todd Wolf being fired after he defended Chad Pelishek. (Decl. Arenz ¶35).

48. Sometime around January 2023, a Child Protective Services employee visited Pelishek's wife at work and questioned his children. Pelishek was aware that the CPS worker had ties to the DEI

Group and heard that the worker asked his children whether "Is Dad was mad at you." Pelishek's wife warned him that she would have to leave him because his health deteriorated causing him to have panic attacks, fear, hair loss, and anxiety and she was worried about the safety of their children. (See Decl. Pelishek *generally*, and especially ¶ 36).

49. Sorenson and Adams sent police to Wolf's home at 10:20 p.m. at night to serve Wolf with a directive not to speak with anyone. Pelishek was there and knew Wolf was being disciplined for defending him. (Decl. Wolf Decl. ¶25-27; DeMaster, Ex. 48.)

50. Wolf declared in his affidavit that

> When I was first appointed City Administrator, Council Vice President Alderwoman Mary Lynne Donohue, one of the founders of the Diversity Equity Inclusion and Belonging (DEIB or DEI) collective in Sheboygan told me to focus on the City's "DEI" policies and to fire Chad Pelishek by stating "you have to get rid of that Chad guy." Chad told me that she and my predecessor Darryl Hoffland forced Chad to dress differently than other employees and gave him nearly impossible goals and expectations such as assigning him about 30 goals in annual evaluations. After I reviewed Chad's file and got to know him and his work, I did not understand why there was a push to fire him, and I chose not to fire Chad Pelishek.
>
> In addition to the pressure and efforts to run Chad out of the City and fire him in 2020 and prior to that, it is my opinion that Ryan Sorenson, Emily Rendall-Araujo, and Charles Adams were trying to run Chad Pelishek out of the City in 2022. Mayor Ryan Sorenson often said he was Mentored by Mary Lynn Donohue, and spoke daily to her, even after she stepped down from being a City Alderwoman in 2021. Sorenson also stated that he was very close with and consistently wanted to appoint Heather Cleveland to do grant proposals for the City in 2022.

(Decl. Wolf ¶¶ 4, 5).

51. Declarations from Carrie Arenz, Wolf, and another white male City employee confirm that DEI programs were enforced not as inclusionary tools but as mechanisms to punish dissent and reward ideological conformity while targeting white men. See generally Decl. Arenz, Decl. Wolf, and Decl. DeMaster, Ex. 37 – Declaration of DPW Employee.

52. Declarations from Carrie Arenz and Wolf state that Rendall-Araujo's version of the racial slur was false and that Chad Pelishek repeated the slur at her instruction. (See Decl. Arenz and Decl. Wolf.)

Respectfully submitted this April 11, 2025.

/s/ Jennifer T. DeMaster
Jennifer DeMaster
Wis. Bar No. 1124201
attorney@jenniferdemaster.com
DEMASTER LAW LLC
361 Falls Rd # 610
Grafton, WI 53024
Phone: (414) 235-7488
Fax: (262) 536-0515

Christopher I. Kachouroff
VA Bar No. 44216*
MCSWEENEY, CYNKAR & KACHOUROFF, PLLC
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
Telephone: (703) 621-3300
chris@mck-lawyers.com

*Attorneys for Plaintiff Chad Pelishek*