# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

CHAD PELISHEK,

    Plaintiff

 v.             Case No. 2:23-CV-1048

CITY OF SHEBOYGAN, et al.,

    Defendants.

## DECLARATION OF CHRISTOPHER KACHOUROFF

I, Christopher Kachouroff, hereby declare the following:

1. I did not mislead this Court. I also do not believe that Mrs. DeMaster intended to mislead the Court in any way whatsoever but I do provide an explanation below for what the Court is rightfully concerned about.

2. I am not the author of the summary judgment briefs at issue here nor was I responsible for verification of fact citations and legal citations in those briefs. While I did "gloss" over the briefs and made high level suggestions, I told Mrs. DeMaster that I could not take the time to cite check the law or the facts and that she would bear ultimately responsibility. She will not dispute my responsibility. Technically, my name should not have appeared on the briefs but Mrs. DeMaster did that because she believed that all attorneys of record should appear in that block. I have seen this practice conducted both ways.

3. The Court's order seemed to imply that I had been in this case from the very beginning. I have not. The context of my entry into this case in late February of 2025 may be helpful to the Court. Mrs. DeMaster told me that she needed help in responding to a motion for

attorney fees because of a failed sanctions motion. I examined her original motion and explained to Mrs. DeMaster that it was not properly structured the way that I would have written it, that it was hard to follow, and that a court would not be favorably disposed to granting it. I next examined the Court's order denying the motion, allowing fees, and then the Defendants' response. I told Mrs. DeMaster that the Court would be disposed to grant some or all of Defendants' fee petition.

4.     I told Mrs. DeMaster that I would enter my appearance and then draft and write *my own* response to Defendants' motion for fees. I took full ownership of that document with input from Mrs. DeMaster. Withal, the Court's order was fair and just given the facts and circumstances with which it was presented. I also agreed to assist Mrs. DeMaster with any trial in *Pelishek*.

5.     Up to that point, my experience with Mrs. DeMaster concerned her assistance and edits to a summary judgment motion that I made in another, unrelated federal case and assisting with the *Coomer* case. I found her work ethic, edits, and legal acumen to be extremely helpful. She worked very well with a team of lawyers.

6.     It should be noted that I have never been sanctioned throughout 24 years of private practice in various state and federal courts until *Coomer v. Lindell*. In that case, there was a mistaken filing of an earlier draft of a response to a motion *in limine*. I was unaware that there was any issue with the filed version, did not have that version with me, and received no advanced notice that there was any issue with a document filed 55 days earlier or that the court intended to conduct a formal motion hearing during a pretrial conference. I was caught completely off guard. During the conference, I told the court that I believed the filing was a draft. It is not my practice to rely on cases for *in limine* motions because those motions are driven by the Federal Rules of Evidence. Had the court allowed a brief recess to call and confer with Mrs. DeMaster, I would have immediately been able to send that court what should have been the final draft that did not contain

the rampant citation errors. I believe that if I had the opportunity to send the *Coomer* court the proper document immediately, the court would not have found my explanation wanting.

7.      It should be noted that the only reason Mrs. DeMaster entered her appearance in *Coomer* was as a personal favor to me because I was unaware that my bar dues' notice went into my spam box and my filing privileges were not immediately available until those dues had been paid. Had I been able to file the brief on my own, there would have been no issues. And so, the ECF filing was ultimately a mistake by Mrs. DeMaster because she inadvertently filed the wrong draft. The court did not see evidence of drafts and Mrs. DeMaster's communication with me because at that time, I was using the signal app where messages automatically expire and disappear after a period of time. I was unable to prove other than my own word, that I had received what should have been the final version. I still do not understand why the court found this incredible. I also do not save multiple copies of drafts when drafting documents because it causes unnecessary confusion. I, in fact, delete drafts to avoid confusion. Nevertheless, as I indicated in my declaration, I shared responsibility for that filing. However, I do not believe the order fair or the sanction condign.

8.      What happened in this case is far different in that it did not involve an inadvertent filing.

9.      After the mistaken filing in *Coomer*, I was concerned that Mrs. DeMaster was far too overloaded with her cases. We had a lengthy discussion concerning her experience. I was surprised that she only had essentially only one active federal case—Pelishek, two state cases and the two cases she was assisting me with. After speaking with her I realized that she was not overloaded *per se* but overwhelmed on the complexity of case organization and what is expected in federal court. During that discussion, we talked about the importance of managing her workload

based on her level of experience. My impression was that she lacked training and practical guidance. I told her that a solo practitioner with little legal, let alone federal experience, no back-office staff, and scant resources *should not* undertake any federal case without understanding how to organize and manage a case from intake to trial.

10.     Mrs. DeMaster is organized but not in a practical way that can handle the load of a state or federal case from start to finish. Her main experience was that she was thrown into handling a federal jury trial two weeks before its commencement during a five-month stint with the City of Milwaukee. She won the case and I believe that she obtained from that victory, a false sense of *experience.* She also obtained a settlement in *Wolf* after difficulty with her filings, including her complaints, which this Court noted in its order on the Defendants' motions to dismiss the Amended Complaint in *Wolf.* As such, an attorney with relatively little experience and a lack of knowledge for how a case should be organized can easily fall into great difficulty thinking they are progressing.

11.     I also discussed the fact that because she was relatively new to the practice of law, especially in federal cases, I believed that both *Wolf* and *Pelishek* were cases that require more experience and more attorneys. I also conveyed that most of my trial cases require a special form of organization that while second nature to me is completely foreign to those with no experience. The practical side of trial practice is simply not taught in law school.

12.     My understanding is that Mrs. DeMaster wanted to help Mr. Pelishek after hearing his story. Mr. Pelishek had been to several attorneys who turned down taking his case for "political" reasons. Mr. Pelishek understood she had little experience in employment matters. For her part, Mrs. DeMaster did tell me that she sought guidance from several law firms to assist her in representing Pelishek but no one responded.

13.     I first learned about the problems with the *Pelishek* filing because Defense counsel in *Pelishek* alerted me to a case they could not find in the summary judgment brief. After the *Coomer* filing and after discovery of the problems with the *Pelishek* filing, I agreed to *continue* working with Mrs. DeMaster solely because of my experience working with her in a team environment provide that she agreed to several conditions: a) that she accept rigid supervision and my mentorship; b) that she not file anything without my consent and written approval; and c) that she not undertake any other cases except those that we discussed. She agreed and told me that she would obey my instructions, accept mentoring, and that she wanted to be trained the right way so that she could establish herself as a trial lawyer.

14.     Consistent with my obligation to begin assisting Mrs. DeMaster, I began to read the *Pelishek* filings. Based on a review of information Mrs. DeMaster had given me and which I double checked, I also alerted defense counsel to two of their own case citations in their brief and requested consent to file the *errata*. The defense agreed and I told them that I would not make an issue of their errors. Since that time, I have familiarized myself with the Pelishek filings. I note that in past orders, this Court has several times pointed out wrong legal standards and other things made by both parties in their pleadings. (*See e.g.* ECF 38 at 5-7, "The Defendants Misstatements of the Law"; "For present purposes the court will presume that these misrepresentations were mere errors of the sort that no attorney nor lawyer is above.")

15.     This is not to minimize the Court's concerns one iota. I am pointing out the history of what I reviewed. Contrary to the *Coomer* court's insinuation that I "quietly" filed the *errata* in this case, I undertook a duty of my own accord to examine the *Pelishek* filings because of the conversation and mentoring agreement I had with Mrs. DeMaster. From a brief gloss, I found several citations errors. I contemplated filing a motion for leave to withdraw the briefs entirely and

refile them. However, I explained to Mrs. DeMaster that I could not conduct the in-depth review that would be needed to rectify the briefs and would not be able to refile them within at least 60 days because of the upcoming trial. I did not believe the Court would grant such a request. I decided to at least file *errata* sheets because I believed ethically, Mrs. DeMaster was duty bound to bring to the Court's attention that there were mistakes, and they needed to be pointed out before the Court ruled. I did not examine any factual citations because I simply could not devote the time necessary at that time to act on such short notice. My sole purpose was to ensure that the case citations existed. Under these constraints, I used my best effort to remedy some of the errors found in the legal citations only. I asked and Mrs. DeMaster confirmed that she had not used anything but Westlaw to conduct legal research *and verification* for these filings. I advised her that I was not confident that the errata were sufficient but that a court would at least take that into consideration.

16.     The Court also noted that there were two filings of the same corrected brief. Respectfully, the only reason that two versions of the same brief were filed is at the instruction of the Clerk of Court who stated I needed to refile with a cover letter. Otherwise, there should be no difference in the filings.

17.     In terms of this Court's order, I respectfully disagree with the Court's conclusion of intentional misrepresentation. First, given that Mrs. DeMaster's fact statements are supported by correct source citations, it weighs against concluding intentional misrepresentation. The error in my opinion is best explained by Mrs. DeMaster being overwhelmed and not having practical experience in case organization and management. Second, with respect to the legal citations, Mrs. DeMaster had added a special feature in Westlaw that checks citations and case quotes. She was told that federal courts and judges use this tool and that she could rely on it. Recently, Westlaw

updated its cautions to include a warning that it uses regenerative AI, something known to cause phantom citations.

18.     I asked Mrs. DeMaster to run the reports on the original Pelishek filings. The reports do not indicate at all the sorts of problems raised by this Court. I told Mrs. DeMaster to run these reports again and to also run Defendants' briefs through them. The results for Mrs. DeMaster's briefs were just as she described them to me when she said she initially ran them. The reports showed few errors. We have saved copies of those reports and should the Court desire, will forward a download link to the Court. I told Mrs. DeMaster to remove these tools from Westlaw and not rely on it. I told her that all cases must be manually cite checked to guarantee precision.

19.     Mrs. DeMaster does shoulder the blame here but the significant mitigating factors I have pointed out in our Response should be considered by the Court. First, her legal experience and practical experience is so limited that she could not recognize that her system of organization was insufficient. Second, she placed an undue reliance on Westlaw's new tools, both the AI case search and Brief checking "Quick Check" tool—one of which Westlaw touted to her as AI integrated with their legal research database and searches.

20.     I have also proactively taken remedial steps to increase the quality of her work before this Court's show cause order issued. I know she desires to become a part of our firm and we are willing to entertain that proposition based on her previous work with us. However, she must demonstrate improvement in case management, synthesis of cases, and drafting of pleadings. Based on her work ethic and absorption of what I have done with her so far, I believe she has made substantial progress.

21.     Of note and because I am now in a mentoring and supervisory role, I have instituted weekly training sessions with Mrs. DeMaster. I have set out how cases should be managed from

intake, before filing the complaint, and up through trial. My trial system relies on attorneys cataloguing and entering data *once* in an electronic case management system along with a second set of attorney eyes to verify the entries. The practical effect is efficiency and less error. Mrs. DeMaster's former practice was to place evidence in a folder on her computer and attempt to revert back to that folder to search for facts through hundreds of documents. She did this multiple times for multiple documents. Not only is this inefficient when the folder has thousands of data points from emails to depositions, it carries confusion and is subject to error when under the pressures of deadlines. Being able to generate a report in a minute on facts specific to the issues makes for light work on a statement of facts.

22. Under this management system, a database links facts, people, and legal citations to elements of a cause of action. Reports can be pulled, and evidence and cases are embedded in the document itself so that it can be instantly compared to the entered fact or citation. This system must be modified when entering a case at a late stage. In that circumstance, it simply cannot be used to formulate summary judgment briefs even two months before they are due because of the pain staking, time consuming work necessary to enter data properly. At this point, the Court's order limiting this case to "prior restraint" mitigates that burden significantly.

23. In addition, I now read every single case citation that Mrs. DeMaster relies on to ensure accuracy and have instructed that, in addition to her reading the entire case, she forwards to me each case she cites in any draft document. I did not do this in the *Pelishek* summary judgment filings because at that time, I had not agreed to undertake responsibility for the briefs or to supervise Mrs. DeMaster's work.

24. In her previous filings and as the Court noted, I observed that Mrs. DeMaster tends to describe certain things more harshly than she should. I believe this is a result of her limited

practical experience. I have counseled her on the need to carefully excise hyperbole. She has followed this instruction and makes inquiry when she is uncertain.

25.     While I have never mentored or provided any level of supervision to a newer attorney, I know how difficult it is to be a solo practitioner with precious little resources and training. Mrs. DeMaster is in that position. My desire is to continue to help Mrs. DeMaster gain the experience and professional competence she so strongly desires and which this Court will appreciate.

26.     I have also reached out to my state bar for assistance in mentoring a new lawyer, examined the Wisconsin Bar's mentoring resources online, and have obtained guidance from several ABA articles on what steps I need to take professionally to ensure that I can provide adequate mentoring. I selected "peer-to-peer mentoring" for training purposes *in conjunction with* a top-down approach on critical issues. This form of mentoring is based on guiding Mrs. DeMaster to make the right decisions as opposed to telling her what to do each time but stepping in when necessary to correct error. This includes a detailed discussion of each case that she cites, fact gathering, conciseness in writing, and procedurally laying out case management that includes not simply docket control but time management. As a result, Mrs. DeMaster has become highly organized and has begun to recognize her limitations. I also periodically monitor my own case load to ensure that it does not conflict with this role.

27.     Finally, I have put rules in place to ensure that Mrs. DeMaster does not make errant mistakes without my oversight. This includes my *written* approval of *all* her filings. She has adhered to all of these rules and has not repeated mistakes. She is also prohibited from undertaking any further cases without my consent as a condition of having the opportunity to learn and potentially join my firm.

28.     In terms of the suspect *Gomez* case, I am suspicious that this was generated by Westlaw's own new regenerative AI because its cite checking function did not catch it. However, I have no affirmative proof how *Gomez* occurred. Mrs. DeMaster states that the warning for regenerative AI only recently appeared on Westlaw's tool. At my instruction, she has canceled this service as well.

29.     While her citations in this case were not intentional, as I have indicated, I have already taken steps to ensure quality control in future filings. I do not believe this will happen again and ask this Court for leniency. I believe that the drastic sanction dismissing Mr. Pelishek's case is not warranted nor do I believe that Mrs. DeMaster should be sanctioned because I believe she has taken proactive steps to mature her legal skills, is in a position where she can be properly trained, and she strongly desires to learn from her mistakes. This Court will not see the same mistakes again and any sanction would not have a deterrent effect.

30.     Mrs. DeMaster has exhibited great concern over her errors and does not want to repeat them. Any sanction will serve merely to punish and not to achieve any deterrence at this point. She has limited resources and the former payment of the attorney's fee sanction alone ordered by this Court is a significant burden for her.

31.     As I have stated, Mrs. DeMaster has great potential, and I am confident that she will be an asset this Court can rely on in future cases and the trial in this case.

32.     I am personally accepting responsibility for her development and welcome the opportunity to address the Court in person should the Court have any questions or concerns with my declaration.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on August 7, 2025.

_/s/ Christopher Kachouroff_
Christopher I. Kachouroff