| JUDGE ORDER (ECF 176) | FROM SJ BRIEFS | NOTES |
|---|---|---|
| Wolf defended Pelishek arguing that Pelishek/Plaintiff had done nothing wrong (ORDER, ECF 176 at 11-12) | From Dkt 143/163 (Pl Br Opp): When City Administrator Todd Wolf defended Pelishek, he was put on leave, publicly accused of misconduct, and then fired. (PEL Fact ¶ 49) | Cite to (PEL Fact) ECF 145 at para 49. This support the fact that Wolf was being disciplined for trying to defend Pelishek. Cites to Ex. 48 (police notes City directs police to Wolf home) and Decl. Wolf at paras 25-27 (confirming him being put on leave, police, and Pelishek at his home, in fear). Does not speak of Wolf's firing in conjunction with his leave and investigation after he sent the November 7 letter to Council--though this fact is not in dispute in this or the related case, Wolf v. City of Sheboygan, et. al., 23-cv-149. *Mistake to exclude references to: PPMF (ECF 126) at paras. 19-30 which was previously filed.* |
| | From Dkt 143/163 (Pl Br Opp): Todd Wolf was fired for defending Pelishek and requesting discipline against Rendall-Araujo. (PEL Fact ¶ 36-42) | From ECF 145 (PEL Fact) - these paragraphs and citations support this, but do not refer to Wolf's firing, which is cited in other proposed facts (e.g. PPMF, ECF 126 at paras 19-30). It does refer to decisions beginning to encourage Wolf to take action against Pelishek weeks before Wolf was placed on leave after the letter he sent to Common Council defending Pelishek and seeking discipline of Rendall-Araujo on November 7. The fact that Wolf was fired follwing his leave, the directives by police service and investigation is not in dispute. |
| | From Dkt 125/175 (Pl Br Supp PMSJ): Shortly thereafter, City Administrator Todd Wolf defended Pelishek, arguing that he had done nothing wrong. PPMF ¶ 16-17, 19, 30. | Sentence as worded is imprecise and does not reflect intent that Wolf felt Pelishek had done nothing wrong to elicit treatment Pelishek was being subjected to. *Wolf's November 7 letter defending Pelishek was filed by Defs and referenced in PPMF (ECF 126) at para 19*. This refers to Wolf defending Pelishek (at p. 4) with a reference to *Wolf v. City of Sheboygan et al*, 23-cv-149, Decl. Buliox in Supp. of Defs. Mot. Dismiss Compl., Ex. 1, ECF No. 30-1 (March 29, 2023). This was also filed as ECF 152-4.<br><br>*Mistake to not include references to these documents that were filed later on the record with Summary Judgment filings: Wolf Decl. (Dkt 147, ¶17, 18, 22):* "I tried to initially stop some of the publications and harassment of Chad Pelishek... by talking to Emily Rendall-Araujo... But Emily Rendall-Araujo told me... Chad Pelishek was a white man of privilege...". "In October 2022, the Council held two closed session meetings... regarding potential discipline arising from Chad Pelishek responding to Emily with the slur... Several Council members told me that it was my job to fire Chad Pelishek... To my knowledge, the October 24 meeting focused on me because I refused to fire Chad Pelishek." - Wolf Decl. "On or around November 6, I told Chad Pelishek that I was going to write to the Common Council members to explain what was going on...". Mistake to exclude filing Wolf's November 8, 2022 press release that specifically notes Rendall-Araujo told Pelishek to repeat the slur which he was also, in part, terminated for. |
| | From Dkt 171 (Pl Reply Br Supp Pl MSJ): When Wolf defended Pelishek, Sorenson backed the City's retaliatory firing of Wolf, including public declarations of misconduct and the late-night dispatch of police to Wolf's residence. DPF ¶ 51, 151, 155, 159, 162 | Pl's Responsive Facts to Defs' PFOF (ECF No. 144) at Responsive paragraphs cited does support this fact regarding Sorenson's treatment and City's firing and retaliation of Wolf. Only information not in these paragraphs from Pl is evidence of police sent to Wolf's home (which Defs did not dispute). This was contained and cited elsewhere on the record: e.g. ECF 126 (PPMF) at para 21. |

| JUDGE ORDER (ECF 176) | FROM SJ BRIEFS | NOTES |
|---|---|---|
| City attorney Adams denied Pelishek from talking or commenting to the media (Order, ECF 176 at 12) | From Dkt 143/163 (Pl Br Opp): Rendall-Araujo received institutional support, while Pelishek was barred from speaking-even to legal counsel-about retaliation, racial claims, or inaccuracies in the report. (PEL Fact ¶ 19, 20). | ECF 145 at para. 19 (cited here as PEL Fact) supports the information here. |
| | From Dkt 125/175 (Pl Br Supp PMSJ): Prior to the first publication, Pelishek asked City Attorney Adams, who was acting as the City's Human resources director for complex human resources matters, whether he could respond and provide comment to the reporter. PPMF ¶ 8. | Mistake to not also include Pelishek Decl. para. 3 that introduces Ex. 1 to Pel. Declaration: this refers to the email Pelishek sent after speaking with Mr. Adams providing the exact comment he was to give when he said Pelishek could not comment to media. In his Declaration at para. 3, introducing Ex. 1 to Pelishek's declaration (ECF Nos. 127 & 127-1), Pelishek states: " 3. Attached as Exhibit 1 is a true and accurate copy of the email I received from Sheboygan Press reporter Maya Hilty about the racial slur and **_my response that City Attorney Adams directed me to give her_** ." (emphasis added)<br><br>*Note - further supporting evidence was filed and referenced in Plaintiff's responsive facts to DPF paras. 3, 47 (Decl Arenz, Ex. A), & Pl Resp to para 56 bullet point citing to Decl. Arenz at para 18 (ECF No. 146). Further mistake not to include a more precise statement in Pelishek's Supporting Declaration (ECF 127) that was provided clearly in his Opposition Declaration (ECF 153 at para 18):* Pelishek Decl. Opp to Defs MSJ (Dkt 153, ¶18): "Adams gave me a verbal instruction before November 7, 2022 not to speak with anyone about the racial slur incident because it would be investigated." |

| JUDGE ORDER (ECF 176) | FROM SJ BRIEFS | NOTES |
|---|---|---|
| Plaintiff/Pelishek refrained from speaking until after he resigned following his FMLA leave (Order, ECF 176 at 12-13/14-15) | From Dkt 143/163 (Pl Br Opp): Pelishek complied, refraining from speaking to legal counsel, City colleagues, and the press until after resigning after my FMLA leave. (PEL Fact 1). | PEL Fact 1 refers to PPFOF 2 Add'l Facts Opp Defs MSJ ("PEL Fact 1") citations (ECF 145) which were: (Decl. Pelishek ¶¶ 15, 16, 18, and 19, 28-33; Pelishek Dep. 421:20-25 to 422:1-17). While the language disucsses directives, the declaration paragraphs address Pelishek refraining from speaking or activities under after his resignation. (ECF 145 - Pl Add'l Facts). ***_JEN MISTAKE - excluding para 35 from ECF 153 Pel Decl Opp Defs MSJ. Other paragraphs support restrictions and compliance including with legal counsel as well as paragraphs in PPMF (ECF 126) paras 48-50._ |
| | From Dkt 143/163 (Pl Br Opp): He refrained from consulting counsel, feared retaliation, and avoided potential claims-all while under official restriction. (PEL Fact ¶ 1) | PEL Fact 1 refers to ECF 145, Add'l Facts Opp Defs MSJ ("PEL Fact 1") citations which were: (Decl. Pelishek (Opp to Defs MSJ) ¶¶ 15, 16, 18, and 19, 28-33; Pelishek Dep. 421:20-25 to 422:1-17). While the language in Add'l PFOF (145) disucsses directives themselves, the declaration paragraphs address Pelishek refraining from speaking or activities under after his resignation. (ECF 145 - Pl Add'l Facts). ***_JEN MISTAKE - excluding para 35 from Add'l PFOF 1 (ECF 153 Pel Decl Opp Defs MSJ). Other paragraphs support restrictions and compliance including with legal counsel as well as paragraphs in PPMF (ECF 126) paras 48-50._ |
| | From Dkt 125/175 (Pl Br Supp PMSJ): He believed that discussing his concerns with an attorney, the EEOC, or even his wife could result in termination. PPMF ¶ 48-50. | This supports the statement. Paras 48-50 of ECF 126 (PPMF 1) citing to Plaintiff fears, health, injuries. Mistake to include reference to EEOC which I could not find on the record upon further review other than contemporaneous notes from Pelishek as to an EEOC charge being necessarily something he felt he'd be in trouble for re violating directives. |

| JUDGE ORDER (ECF 176) | FROM SJ BRIEFS | NOTES |
|---|---|---|
| Pelishek/Plaintiff's months of silence were the natural and intended result of the city's prior restraints: (Order at 14 & 15) | From Dkt 143/163 (Pl Br Opp): Pelishek's months of silence-including his inability to consult legal counsel or correct the public narrative-were the natural and intended result of the City's prior restraint. (PEL Fact 1). | Citing any fact to this sentence was an error. This is not a statement of fact and no factual citation was needed. |
| | From Dkt 143/163 (Pl Br Opp): That chilling effect is a constitutionally recognized injury in fact... The harm was neither hypothetical nor speculative. Pelishek's months of silence-including his inability to consult legal counsel or correct the public narrative-were the natural and intended result of the City's prior restraint. (PEL Fact 1). | Citing any fact to this sentence was an error. This is not a statement of fact and no factual citation was needed. This citation supports the statement via the cited Declaration paragraphs: (Decl. Pelishek ¶¶ 15, 16, 18, and 19, 28-33; Pelishek Dep. 421:20-25 to 422:1-17) |
| | From Dkt 143/163 (Pl Br Opp): He refrained from consulting counsel, feared retaliation, and avoided potential claims-all while under official restriction. PEL Fact ¶ 3 | JEN MISTAKE: Refercing para 3 is typo that should be para 35. Missing the "5" . (para 20 also helpful). ALL FROM ECF 145 (Pl Add'l Facts Opp Defs MSJ - PEL Fact). |
| | From Dkt 125/175 (Pl Br Supp PMSJ): He believed that discussing his concerns with an attorney, the EEOC, or even his wife could result in termination. PPMF ¶ 48-50. | PPMF (ECF 126) at 48-50 support this although don't specifically state "EEOC", discusses fear of addressing with anyone, including counsel, anything pertinent to his eventual EEOC complaint/charge. |
| | From Dkt 171 (Pl Reply Br Supp Pl MSJ): These caused Pelishek's fear and silencing, not only to his own attorney, friends, and family, but also to anyone regarding discussions of the Wolf litigation, racial slurs at the City, the allegedly 'independent' Hall report, the extortion threat issue, or related issues with his attorney, the EEOC, or private citizens. (PPMF ¶ 40; DSPF ¶ 54) | This supports Pl's interest in speech/reporting/public statements:<br><br>PPMF (ECF 126) at 40: "The investigation concluded that Wolf's conduct posed risks to the City and warranted hisremoval holding factual conclusions that Wolf made false statements about the DEI threat and influence with City officials, that Pelishek did not confirm that the DEI group threatened Wolf for money at the October lunch, and that Wolf retaliated against Rendall-Araujo for reporting "racism" at the City. Wolf, 23-cv-149, Defs. Answer to Wolf Amend. Compl., ECF No. 65, at pp. 45 & 81, Answer to ¶ 250, 252 (Defendants admit that Exhibit 15 is a copy of Hall's investigation report); see also Defs. Answer to Pelishek Amend. Compl., ECF No. 39, at p. 45, Answer to ¶¶ 121, 122."<br><br>PL Resp to DSPF (172 at 22-23) 54 - In part Pl "... wanted the public to know that claims of racism were false" as well as DEI threats and financial benefit issues." cites to Pel 2nd Decl (ECF 174) at paras 6-11 (discussing his concerns and the things Pelishek wanted to speak about but was unable to, especially after seeing what was done to Wolf) |

| JUDGE ORDER (ECF 176) | FROM SJ BRIEFS | NOTES |
|---|---|---|
| Emily Rendall-Araujo told Pelishek to repeat exactly what was said at August 22 meeting (Order, ECF 176 at 11) | From Dkt 143/163 (Pl Br Opp): Director Rendall-Araujo instructed Pelishek to repeat a slur during a meeting, she falsely accused him of initiating it when she knew her question elicited exactly what was said. (PEL Fact ¶ 11). | ECF 145 "PEL Fact" at 11 supports this via Valdez. Doesn't use term "exactly" but support ERA admitting to asking Chad what was said. See below for other support and references. Mistake to exclude reference to Plaintiff's Resp to DPF 30 (144, Pl Resp to para 30) or "PEL Fact (ECF 145) at para 52". Both cite to Declarations of Wolf and Arenz who stated Rendall-Araujo directed Pelishek to repeat the exact words during the August 22 meeting. See note below regarding ECF 171 (Reply Br in Supp. Pl MSJ). This includes Hall interview filed as ECF 127-2 and 153-3 (at min 33:05). (See Below) |
| | From Dkt 125/175 (Pl Br Supp PMSJ): In response, Emily Rendall-Araujo, a city official, instructed him to repeat the slur verbatim, stating that she wanted to hear 'exactly' what had been said. PPMF ¶ 5. | This supports this via Pelishek's declaration and specifically Pelishek Supportive Declaration (127) Exhibit 2 (127-2), which is the Hall recording. It was Jen's mistake not to also reference 127-2, Ex. 2 to Pelishek's declaration (Hall recording at min. 33:05) where Pelishek tells investigator that he believed Rendall-Araujo told him to repeat exactly what was said. (Also cited at ECF 145 para 12 & ECF 144, Pl Resp to para 30) confirmed she told him to repeat "exactly" what was said. Further, this was verified by Declarations of Wolf (147) and specifically Arenz (146). See citations below from Pl. Reply Brief (ECF 171, citing to PEL Fact para 52). **See also note below. |
| | From Dkt 171 (Pl Reply Br Supp Pl MSJ): All top-ranking City officials knew Rendall-Araujo told Pelishek to repeat the slur at the August 22 meeting, and every single one facilitated, invited, and encouraged public humiliation... (PEL. Fact ¶ 52) | ***This cites to (entire) declarations of Arenz and Wolf (both of whom were at meeting w/ Emily asked Pl to repeat slur). While it doesn't cite to specific paragraphs, their declarations support it. (ECF 145 at para 52, citing to Wolf and Arenz Decls confirming Rendall-Araujo's version of telling Pelishek to repeat slur was that she instructed him). Further, Pl. resp to DPF (ECF 144, resp to para 30) contains relevant paragraphs from Wolf & Arenz Decls. *RELEVANT PORTIONS:*<br><br>WOLF DECL (ECF 147 at paras 14 & 15): (cited as para 15, but should have included 14, in Pl resp to PFOF, ECF 144, para 30) "In response to this, Emily Rendall-Araujo told Chad to tell her what exactly what being said, and Chad replied to her using the full n-word in telling Emily that this is what was said." "... it was my perception that, at the August 22 meeting, she was ordering Chad to repeat the slur..."<br><br>ARENZ DECL (ECF 146): (Dkt 146, Page 4, ¶11-12): "During the meeting, Chad raised a concern... In response, Rendall-Araujo asked Chad to state what the racist slur was that he was reporting. My memory was that her question clearly sought the exact words of the racial slur...."<br><br>Hall Interview Recording with Pelishek (ECF 153-3 at min. 33:05): "I believe she said 'what are they exactly saying'...", cited in Pl. Resp to Defs. PFOF para. 30. |

| JUDGE FACT (ECF 176) | FROM SJ BRIEFS | NOTES |
|---|---|---|
| Emily Rendall-Araujo said she was standing up to racism from Pelishek/Plaintiff and told media/ others/ public that Pel made numerous racial slurs or was racist. (ECF 176 at 11) | From Dkt 143/163 (Pl Br Opp): she falsely stated to the media, City officials, and colleagues that Pelishek had made racist statements, including using the phrase 'colored people,' which he never said. (PEL Fact 18). | PEL Fact (ECF 145) at para 18 support this. ("While Pelishek was on FMLA, Roberta Filicky-Penski's recording was released where she stated that Rendall-Araujo had been embellishing her story against Chad Pelishek. Apparently Rendall- Araujo had been changing her story on the racial slur and was including other things that Pelishek never said, like "colored people." See also Decl. DeMaster, Ex. 40 - Filicky-Peneski 19:4-22 (Rendall Araujo embellished) and Decl DeMaster Ex. 42 is text about Chad saying "colored people" also in addition to slur.)<br><br>**Mistake to not include reference to: Emily Report (Defs ex), Duellman depo, chad has never said n-word or colored people and never goes in break room in 12 years of close daily employment together (confirming Rendall-Araujo embellishment, which was also supported with filed Filicky-Wolf transcript that Emily has been embellishing her story about Chad, making up new information..) *Also should have cited to ECF Nos. 128-1, 152-9, 152-13, 152-32 (Valdez pages, Emily told her immediately about slur). |
| | From Dkt 143/163 (Pl Br Opp): She informed others that she was 'standing up to racism,' using that label to conceal her own discriminatory motive. (PEL. Fact ¶ 17). | PEL Fact (ECF 145) at para 17 supports this. "Emily Rendall-Araujo was not prevented from repeating her false account of the racial slur to her DEI group, online (Decl. Demaster, Ex. 27 - Pelishek Dep. 324:19-25 to 325:1-3) and to the news reporter Maya Hilty who was also a member of the DEI group. (Buliox Decl. at ¶ 8, Ex. G -- Pelishek Dep. 328:19-25 to 329:1-9). Rendall-Araujo touted her false narrative to others claiming she was standing up to Pl's racism. See Ex. 9 (Maya text) and 10 (Salazar Rendall-Araujo) texts (shows Rendall-araujo's texts "standing up to racism" in text to alderwoman salazar) and Decl. Arenz at ¶¶8, 21." Mistake to not reference Valdez dep pages in 128-1, Rendall-araujo on phone telling others, Valdez, Amanda Salazar, and report about slur incident in reference to article that Rendall said will make chad look dumb. |
| | From Dkt 143/163 (Pl Br Opp): ...Rendall-Araujo fabricated a false narrative portraying him as a racist. (Decl. DeMaster, Exs. 9, 10, 30) | Each of these cited Exhibits attached to Decl DeMaster Opp to Defs MSJ (ECF 152) at Exs 9, 10, 30 support the fact showing Rendall speaking to Alderwoman standing up to racism and talking about Maya Hilty "racial slur" article that will make Pelishek look dumb, telling community, emails from citizens knowing of Emily Rendall_Araujo reporting racial slur about Plaintiff and the corresponding demands to fire him. *See also ECF 145 at paras. 18, 36-42. Also cited at 128-1 at p. 1, with p. 5 showing rendall was not broadcasting general racism but telling people inside and outside City Hall about Pelishek repeating racial slur. |
| | From Dkt 125/175 (Pl Br Supp PMSJ): After Pelishek complied, Rendall-Araujo broadcasted Pelishek's repetition and stated she was standing up to his racism. PPMF ¶ 6-7. | ECF 126 para 6 & 7 support this. Ex. 5 (ECF 128-1) is texts between Emily Rendall-Araujo and Alderwoman Salazar where Rendall discusses standing up to the racism and mentions Maya Hilty changing her article about Pelishek saying a racial slur while saying the article will make Pelishek look dumb. Valdez deposition pages note Rendall-Araujo going to Valdez to tell her about Pelishek repeating slur (not her concerned in genral about racism) while she was saying that to people on the phone. Ex. 6 (ECF 128-2) is pages from Janet Duellman's deposition seeing Rendall-Araujo meeting in person with the reporter who wrote the slur articles around the time of their publication.<br><br>*Mistake to not reference exhibits later filed as: Decl. DeMaster Opp Defs MSJ (ECF 152), Exs. 13-15, 40, 46 (emails from public regarding Rendall-Araujo reporting slur incident, "standing up to" racism, email from Sorenson regarding "anti-racism," Alderwoman convo with Wolf regarding favorability for Rendall-Araujo and her embellished stories about Pelishek, etc.)* |

| | | |
|---|---|---|
| | From Dkt 125/175 (Pl Br Supp PMSJ): Rendall-Araujo then went to media and spoke to a reporter. PPMF ¶ 7. News articles were published that implied Pelishek used an unsolicited racial slur and omitted that he was reporting statements about an incident involving a racial slur at a public meeting. PPMF ¶ 6-7, 8. | ECF 126 para 6 & 7 support this. Ex. 5 (ECF 128-1) is texts between Emily Rendall-Araujo and Alderwoman Salazar where Rendall discusses standing up to the racism and mentions Maya Hilty changing her article about Pelishek saying a racial slur while saying the article will make Pelishek look dumb. Valdez deposition pages note Rendall-Araujo going to Valdez to tell her about Pelishek repeating slur (not her concerned in genral about racism) while she was saying that to people on the phone. Ex. 6 (ECF 128-2) is pages from Janet Duellman's deposition seeing Rendall-Araujo meeting in person with the reporter who wrote the slur articles around the time of their publication. |

| JUDGE FACT (ECF 176) | FROM SJ BRIEFS | NOTES |
|---|---|---|
| The city's directives prohibited Pelishek/Plaintiff from speaking about information without risking termination. (Order, ECF 176 at 14 & 15) | From Dkt 143/163 (Pl Br Opp): Violation of these directives carried the threat of discipline and termination. (PEL Fact 1). | THIS SUPPORTS (ECF 145 at 1) as this fact refers to *all directives* including related directives about the same subjects - Sorenson November directives to not talk to anyone about investigation (that was never rescinded) specifically related to March 8 directives continuation. Sorenson Nov 2022 directives (filed at ECF 152-17, cited Pl Resp to DPF 72, ECF 144) carried threat of punishment/discipline. Reasonable to believe similar directives had same implied threat. Mistake to not also reference publicly filed and undisputed November directives from Sorenson/Adams on Wolf (that Pelishek saw) and on Pelishek that threatened discipline up to termination (and were never rescinded). *See* Am. Compl. ECF 13, Ex. 4 (13-4) (and Defs Answer - Admitting 11/7 Directives on Wolf that Pelishek saw). ECF 152-17 (Sorenson's November directives on Pelishek threatening discipline) were previously filed at PPMF para 21 (ECF 126). **Decl. DeMaster Opp to Defs MSJ (ECF 152), Ex. 17 \*\*Cited to as Plaintiff's response to DPF (ECF 144) response to para 72 (at ECF pp. 34-35);** \*\*Previously cited at PPMF (126 at para 21). |
| | From Dkt 143/163 (Pl Br Opp): Despite informing HR the day before release that the report misrepresented his interview, the March 8 directive silenced him from correcting the record, speaking to his attorney, or even confiding in his friends or family about the false report. (PEL Fact ¶ 8) | Our language does not say March 8 directives carried threat of termination. But in conjunction with November directives (ECF 152-17) threats about same subjects, no rescinding, and what happened to Wolf for speaking about same matters, argument that such belief was reasonable. Para. 8 supports this.(Cite to ECF 145 at para 8): "Chad Pelishek followed the March 8 email directive and did not try to correct the accusations against him or speak to his attorney. He also did not confide in my[sic] wife. (Decl. Pelishek ¶28- 29.)" Decl. Pelishek 29: "29. When I learned that the Hall report contained false statements about my side of the story, I reported this to HR. Westbrook said there was nothing he could do and my name would not be redacted from the report. The next day, Westbrook's March 8 email directed me not to talk to anyone and I took this literally. I did not try to correct the record or speak with any attorneys. I also not confide in my wife and this caused a considerable strain on our marriage and family life. I did not want to lose my job or the ability to support my family." (Mistake to include para. 28 in that proposed fact as it was unnecessary). |
| | From Dkt 125/175 (Pl Br Supp PMSJ): He believed that discussing his concerns with an attorney, the EEOC, or even his wife could result in termination. PPMF ¶ 48-50. | The Citations support this. ECF 126 at 48-50, referencing ECF 127 Decl. Pelishek at paras 22-33. Mistake to reference EEOC specifically though this was impliedly covered by directives not to tell anyone. |
| | From Dkt 171 (Pl Reply Br Supp Pl MSJ): He feared that raising his concerns about the falsities in the investigative report or discussing the DEI threat could cost him his job. PPMF ¶ 48-50. | The Citations support this. ECF 126 at 48-50, referencing ECF 127 Decl. Pelishek at paras 22-33. |

| JUDGE FACT (ECF 176) | FROM SJ BRIEFS | NOTES |
|---|---|---|
| After March 8 directives, Pelishek went on FMLA leave out of fear from speaking about Hall report or other issues like Wolf suit. (Court issue that Pelishek went on FMLA based on other stuff and not the report/March 8 directives). (Order, ECF 13-15) | From Dkt 143/163 (Pl Br Opp): Pelishek complied, refraining from speaking to legal counsel, City colleagues, and the press until after resigning after my FMLA leave. (PEL Fact 1). | While the proposed fact itself listed (ECF 145 at para 1) doesn't state this exactly, the citations thereto do support the factual statement in the brief and Pelishek's compliance. Cites to Decl. Pelishek (ECF 153) paras 15, 16, 18, 19, 28-33. |
| | From Dkt 125/175 (Pl Br Supp PMSJ): Ultimately, the stress and fear generated by these directives led to Pelishek taking FMLA leave. PPMF ¶ 49. | The Citations support this. ECF 126 at 48-50, referencing ECF 127 Decl. Pelishek at paras 22-33. This says "ultimately" stress and fear from all directives (including those in September & November 2022) led to FMLA. Was not just intending to refer to March 8 though the final published "report" and final directives (continuing Sorenson's November directives at 152-17) tipped the scales to FMLA. Showing Pelishek hoped, and was told, the investigation report would make everything public and fix narratives of racism, etc. |

| JUDGE FACT (ECF 176) | FROM SJ BRIEFS | NOTES |
|---|---|---|
| Pelishek/Plaintiff ultimately resigned, believ, in part, that the city would take adverse action if he spoke about any of this. (Order, ECF 176 at 12 & 13, Judge: Cited ECF No. 127 ¶ 22, 25, 28, 30, 33 (Pelishek decl.; fear predated directives; other reasons for resignation)) | From Dkt 143/163 (Pl Br Opp): Todd Wolf was fired for wanting to discipline Rendall-Arajjo, yet Pelishek was disciplined and silenced following her accusations. PEL Fact ¶ 30 | This was a labeling mistake in the correct Proposed Findings of Fact. Citation should have been to "PPMF (ECF 126) at para 30"; *not* to PEL Fact (145) at para 30. PPMF (ECF 126) at 30 says: "On January 9-10, 2023, the Common Council publicly fired Wolf based on the investigation findings and conclusions that Wolf made false statements about the DEI threat and implying that Wolf retaliated against Rendall-Araujo and his presence was not safe for her. Wolf 23-cv-149, Defs. Answer to Wolf Compl., ECF No. 31, Answers to ¶¶ 1, 118." |
| | From Dkt 143/163 (Pl Br Opp): The same night that Wolf was put on leave, Pelishek visited Wolf. At 10:30 p.m., a uniformed police officer arrived to serve Pelishek a gag directive-on orders from Defendants Sorenson and Adams. (PEL Fact ¶ 49). | This supports this. (ECF 145 at para 49) Sorenson and Adams sent police to Wolf's home at 10:20 p.m. at night to serve Wolf with a directive not to speak with anyone. Pelishek was there and knew Wolf was being disciplined for defending him. (Decl. Wolf Decl. ¶25-27; DeMaster, Ex. 48.). Wolf Decl confirms. Ex 48 is police report from Sorenson's office. |
| | From Dkt 125/175 (Pl Br Supp PMSJ): The night Wolf was placed on leave, the City of Sheboygan, directed by Adams and Sorenson, ordered police officers to serve a directive they authored to Todd Wolf. PPMF ¶ 21. | ECF 126 at para 21 - THIS SUPPORTS this. "Around 11:30 PM on November 7, 2022, Sheboygan police delivered a letter to Wolf prohibiting him from speaking to City employees or anyone doing business with the City while on leave. Wolf, Defs. Answer to Wolf Amend. Compl., ECF No. 65, at p. 142, Answer to ¶ 447; see Decl. DeMaster, City Response to Requests for Admission No. 1, Ex. 10 (admitting authenticity of Wolf Amend. Compl. Ex. 9 at ECF No. 36-9). |
| | From Dkt 171 (Pl Reply Br Supp Pl MSJ): He feared that raising his concerns about the falsities in the investigative report or discussing the DEI threat could cost him his job. PPMF ¶ 48-50. | ECF 145 at paras 48-50 goes to Pel Decl. ECF 153 paras. 22-33. All support this. |
| | From Dkt 171 (Pl Reply Br Supp Pl MSJ): Pelishek was deathly afraid to file a whistleblower complaint, citing Wolf's retaliation for opposing DEI payments and his inability to speak to his own attorney (DSPF ¶ 54). | The citations referenced support this ECF 172 at Pl Resp to para 54, citing to Pel 2nd Supp Decl (ECF 174) at paras 6-11: discussing Pel's interests, concerns about what happened to Wolf/Wolf allegations. |

| JUDGE FACT (ECF 176) | FROM SJ BRIEFS | NOTES |
|---|---|---|
| Westbrook told Plaintiff/Pelishek he had no protected status or conduct as white man and that he could not consult a lawyer (Order, ECF 176 at 15 & 16) | From Dkt 143/163 (Pl Br Opp): When he attempted to file a harassment complaint, HR Director Adam Westbrook explicitly denied him from doing this... In light of Pelishek's complaint, HR Westbrook there was no discrimination because of protected class and that pelishek had not engaged in any protected conduct - a statement revealing institutional bias and a functional denial of equal workplace protection. (PEL. Fact ¶ 9). | This supports this - (ECF 145 at para 9, citing to recording (Decl pel, ex. A). Mistake to exclude refeerence to Pl's Resp to DPF para 121 (ECF No. 144 at pp 52 & 53). Mistake to not reference in Proposed Facts or citations similar treatment and other anti-white male animus including Decl DeMaster (152) Exhibits 2 (DEI policy favoring minorities), Pelishek's complaints to Filicky-Peneski in early 2023 (war on white christian men), 34 (redacted declaration Sheboygan white male similarly treated worse than non-white); Declarations of Arenz and Wolf noting "white man of privilege" derogatory comments, etc. |
| | From Dkt 143/163 (Pl Br Opp): When Pelishek attempted to file a harassment complaint, Westbrook conveyed that white men were not a protected class and that he had not engaged in protected conduct. | See Above |