| Description of Mistake/Misrepresentation | JEN NOTES OR MISTAKES |
|---|---|
| Represented Gomez v. City of Chicago, 2022 WL 3211422 (N.D. Ill. Aug. 9, 2022) as holding liability imposed on city attorney who facilitated retaliatory and discriminatory acts. Case does not exist (From ORDER 176 at 7) citing ECF 143, deleted in 163 | Corrected and deleted with Errata. I have no idea where this came from and cannot begin to recall or guess. I did run my briefs with Gomez and descriptions through Westlaw Brief Check (Quick Check) tool and it did not say that Gomez was bad nor that Gomez as cited was not in their database or system. I do not know how this happened. |
| Represented Howell v. Wexford Health Sources, Inc., 987 F.3d 647, 653 (7th Cir. 2021). Court stated Quoted language not in Howell; and I made material modifications from actual holding. (From 176 at 9 & 10, citing ECF 175 at 15) | Jen Mistake: I should not have had quotations.<br><br>Jen Brief: To establish municipal liability under 42 U.S.C. § 1983, Pelishek must show that the constitutional violation resulted from: "(1) an express municipal policy; (2) a widespread practice constituting custom or usage; or (3) a constitutional injury caused or ratified by a person with final policymaking authority." Howell v. Wexford Health Sources, Inc., 987 F.3d 647, 653 (7th Cir. 2021). (ECF 175 at 15 )<br><br>Actual case: At the same time, Monell rejected the common-law theory of respondeat superior liability for an employee's actions. Instead, the Court crafted a new, more restrictive standard to determine when a municipal government itself has caused a deprivation of constitutional rights. A plaintiff must show that the violation was caused by (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. Howell v. Wexford Health Sources, Inc., 987 F.3d 647, 653 (7th Cir. 2021);At the same time, Monell rejected the common-law theory of respondeat superior liability for an employee's actions. Instead, the Court crafted a new, more restrictive standard to determine when a municipal government itself has caused a deprivation of constitutional rights. A plaintiff must show that the violation was caused by (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. Howell v. Wexford Health Sources, Inc., 987 F.3d 647, 653 (7th Cir. 2021) (citations and quotation omitted) |
| Represented *AFGE v. United States* , 634 F. Supp. 336, 340 (D.D.C. 1984) as holding chilling of protected speech constitutes actionable harm. . Court states case involved sequestration of federal retirees' adjustments; nothing to do with First Amendment. (ECF 176 at 17, citing 163 at 7) | Jen mistake: AFGE wrong. Court is correct. Reyes noted the principle of harm being chilling speech, but found no injury ultimately in that case where plaintiff wasn't prosecuted under statute. Also did not involve public employment, though purpose of citation was injury from chilled speech. However, Plaintiff's Reply Brief (ECF 171) provided correct citations for proposition of injury being chilled speech or or loss of First Amendment freedoms. ("Even brief losses of First Amendment freedoms constitute irreparable injury. Elrod v. Burns, 427 U.S. 347, 373 (1976)." (ECF 171 at 13)). |

| | |
|---|---|
| Represented Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 788 (7th Cir. 2007) as holding ostracism and workload manipulation support hostile work environment claims. Judge says says nothing to do with ostracism/workload. (ECF 176 at 18, citing 143 at 21-22) | Jen Brief: He was stripped of responsibilities, excluded from meetings, and denied collaborative support necessary to fulfill core duties. See Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 788 (7th Cir. 2007) (ostracism and workload manipulation support hostile work environment claims).<br><br>Case synopsis: I disagree with the court. Synopsis - Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781 (7th Cir. 2007). Reversed Defs MSJ granting in favor of Pl. 7th Circuit overturned grnating of Defs MSJ in Pl's favor based on non sexual, but sexist anti-female statements. To Pelishek, this facilitated the conduct he was subjected to - City's anti-male animus. I should have explained or made this more clear. But this case explains how there can be hostile work environment/harassment that is not "sexual" but sexist. It also discusses that the anti-female animus from the employer resulted in, in part, plaintiff not getting a raise and being paid less than similar male employees. The case references and cites to a treatise and 1st Circuit case for the proposition that anti-[gender] animus in a work environment can contribute hostile work environment. ("For example, a woman, entering a work environment that previously has been all-male might encounter severe, sustained hostile treatment by her male supervisors and/or co-workers." Boumehdi at 788, citing3 LEX K. LARSON, EMPLOYMENT DISCRIMINATION § 46.01[3] (2d ed.2000).) I believed that this discussion necessarily regarded ostratization. Dictionary.com defines "ostracization" as "the act of excluding someone from society, friendship, conversation, privileges, etc., typically by general and often tacit consent." The plaintiff felt ostracized by her employer due to anti-female statements and the fact that she was denied opportunities (pay, raise) that her male colleagues were given while still have to engage in equal work as higher paid counterparts. While the Brief language about Pelishek's work-related effects are not directly exact to the plaintiff here, both were not given opportunities (her - pay or advancement and Pelishek - support, inclusion, stripping) based on, according to them, anti-gender hostility. Additionally, the Court's order in Boumehdi has a label "Boumehdi's working conditions" that describes anti-female comments, that women do not belong there, that women should work in flower shops, that she had to take out the trash even if she was a woman, had shorted paychecks, Pl there said she was being discriminated against and then later criticized. These facts are very similar in different ways to the conduct Pelishek has shown. See Decl. Arenz, ECF 146. |
| Represented Stutler v. Ill. Dep't of Corr., 263 F.3d 698, 704 (7th Cir. 2001) as holding retaliatory gagging contributes to hostile environment. Actual: Not a hostile work environment case; no mention of retaliatory gagging. (ECF 176 at 18, citing 163 at 22) | Jen Brief: Later, the City imposed gag orders after he noted wanting to talk to an attorney that prohibited him specifically from discussing the incident even with his attorney, under threat of termination—restrictions never imposed when Rendall-Araujo made "embellished" complaints about his "racism." See Stutler v. Ill. Dep't of Corr., 263 F.3d 698, 704 (7th Cir. 2001) (retaliatory gagging contributes to hostile environment)<br><br>Case Synopsis and notes: public employee brought action for retaliation, race, and age discrimination. summary judgment in favor of employer, Plaintiff only appealed retaliation claim. affirmed by Seventh Circuit. among incidents plaintiff complained of, a colleague said plaintiff was "too fucking old to run" to answer the phone, should think about quitting because of plaintiff's dissatisfaction, noted resentment against plaintiff for raising concerns, telling others to be careful of plaintiff because plaintiff was out to get them making a comment that "you have to be careful around these white women" and transfers to different jobs with work plaintiff didn't like. The summary judgment for retaliation was affirmed in that conduct (specifically a lateral transfer) was not an adverse employment action for retaliation purposes. The parenthetical was incorrect, and in general, it was unncessary to provide the cite. I am unsure where I got this other than my search of cases regarding this type of language from my Westlaw tools or inadvertently using a case I'd saved earlier in an incorrect spot. I accept responsibility for this. The point I was make was generally differing treatment between Pelishek and Rendall-Araujo so a case was unnecessary, and still, this case would not have applied. |

| | |
|---|---|
| Represented Woods v. City of Berwyn, 803 F.3d 865 (7th Cir. 2015) as recognizing false accusations create hostile work environment. Judge says "Not only did the court say nothing of the sort,<br>Woods had nothing to do with allegations of racism or even a hostile work environment.<br>It dealt with claims of age, disability, and FLMA discrimination under a cat's paw theory." (From ECF 176 at 18-19, citing ECF 163 at 22) | Jen Brief: In Woods v. City of Berwyn, 803 F.3d 865 (7th Cir. 2015), the court recognized that false accusations of racism, especially when widely publicized and reinforced by employer silence or complicity, can create a hostile work environment.<br><br>Notes: This description is inaccurate as to the case holding here. The court is correct that the claims in Woods were relating to FMLA retaliation, age, disbability. However, reading the case in detail, without a careful review of that claims at issue in the appeal specifically there (at pp 868-869) would cause confusion when reviewing the Case holding at the top in Westlaw and the facts of the case. The case holding in the Westlaw case at the top states "Background: Terminated employee at city fire department brought action against employer, alleging discrimination and unlawful retaliation. The United States District Court for the Northern District of Illinois, Matthew F. Kennelly, J., 2013 WL 5968592, granted summary judgment for city. Employee appealed. Holding: The Court of Appeals, Williams, Circuit Judge, held that hearing held by city board of fire and police commissioners broke chain of causation between chief's statement of charges and employee's termination, precluding city's liability under cat's paw theory. Woods v. City of Berwyn, 803 F.3d 865 (7th Cir. 2015). Reading through the case, the Seventh Circuit said "Woods filed a complaint in federal court asserting discrimination and unlawful retaliation and attempted to proceed under a cat's paw theory of liability, which applies in employment discrimination cases when a biased subordinate who lacks decision-making power uses the formal decision-maker as a dupe in a deliberate scheme to trigger a discriminatory employment action. Woods v. City of Berwyn, 803 F.3d 865, 867 (7th Cir. 2015). In Woods, the court addresses that Woods noted he was being harassed by chief (O'Halloran) and not given opportunities to succeed and he wanted harassment to stop and that Woods said he was falsely accused of making threats.The holding here does not go into any specifics about a disability.While true Woods was not about racism, which I erred in, the facts in Woods, include the chief recommending charges against him for conduct unbecoming an officer, fighting/verbal abuse, violation of Illinois's disorderly conduct law, and false statements made during an investigation--which Woods said were false and retaliatory seemed plausible. See Woods v. City of Berwyn, 803 F.3d 865, 868 (7th Cir. 2015). The case proceeds to discuss caustion for cats paw liability, Wood's complaints of harassment, and what he alleged were false accusations. I was mistaken to not read the case far more carefully, which I have now done. |
| Represented Green v. Brennan, 578 U.S. 547, 550 (2016); Represented Whittaker v. N. Ill. Univ., 224 F.3d 640, 647 (7th Cir. 2005); Patton v. Keystone RV Co., 455 F.3d 812 (7th Cir. 2006) as holding fabricated accusations of racism, threats, and reputational harm support constructive discharge. (ECF 176 at 19, citing ECF 163 at 18). All from same paragraph. | Jen B rief: Courts have repeatedly recognized that where fabricated accusations of racism, threats of retaliation, and reputational harm intersect, constructive discharge may be established. See Green v. Brennan, 578 U.S. 547 (2016); Whittaker v. N. Ill. Univ., 424 F.3d 640, 648 (7th Cir. 2005); Patton v. Keystone RV Co., 455 F.3d 812, 818 (7th Cir. 2006).<br><br>Jen mistakes & explanation following review: improper string cite in one sentence to multiple cases and other mistakes for proposition that "Courts have repeatedly recognized that where fabricated accusations of racism, threats of retaliation, and reputational harm intersect, constructive discharge may be established." (ECF 176 at 19). Explanation: (1) Green v. Brennan: I cited to SCOTUS overturning dismissal based on SOL. Is correct case as to the facts on remand to the District Court. Case involved retaliation, alleged false allegations of criminal conduct, and forced retirement after bringing complaints of discrimination. Included investigation interview. Court found sufficient evidence of constructive discharge for retaliation claim (adverse action). Green v. Brennan, No. 10-CV-02201-LTB-KMT, 2017 WL 4029984, at *6 - 7 (D. Colo. Sept. 13, 2017). My description, though not 100%, states "In Green, as here, an employer manufactured a false narrative and then pressured the employee to resign in the face of untenable working conditions." (ECF 163 at 18). Besides which case citation from this case was accurate, the Court found sufficient evidence that they forced his "retirement" rather than his resignation. *Id.* at *7. (2) Whittaker v. N. Ill. Univ., 424 F.3d 640 (7th Cir. 2005), does address hostile work environment claim which the court dismissed because most of the "explicity, derogatory, and sexist terms" at issue occurred "outside [the plaintiff's] presence" and the court found there was "no evidence that she was aware of these defendants' remarks during her tenure with NIU." Whittaker v. N. Illinois Univ., 424 F.3d 640, 645 (7th Cir. 2005). The Court's reasoning addressed the element that the plaintiff must have evidnece that he knew of the offensive conduct during his employment. Here, some of the derogatory and offensive statements would have effected retputational interests of plaintiff, but my mistake was that those were not publicized widely nor in a way that the plaintiff there was aware of them. Later statement that "the court emphasized" is inaccurate in that the Court's holding that statements or offensive conduct unknown to plaintiff could not constitute "frequent" or "humiliating" conduct sufficient to show hostile work environment. *Id.* at 646. The Court did address constructive discharge briefly noting that it would be denied, though was not specifically raised, because the most offensive conduct wasn't known to plaintiff. This, to me, suggested that publicized or known offensive conduct about a plaintiff during employment could rise to hostile work environment. Though I acknowledge my description was inaccurate. (3) Patton v. Keystone RV Co., 455 F.3d 812 (7th Cir. 2006) - I did not provide any other description for this beyond the string cite. Though the case was not about racism, it did involve threats, hostile work environment, and constructive discharge claim. The Seventh Circuit overturn summary judgment in plaintiff's favor finding that a reasonable person could consider plaintiff's work environment hostile and the constructive discharge claim. *** I was far too improperly precise with that sentence where I was merely trying to show that similar treatment (threats, false allegations, sham investigations, knowledge of derogatory and offensive statements) could support hostile work envinronment or constructive discharge. |

| | |
|---|---|
| Milwaukee Police Ass'n v. Jones, 192 F.3d 742, 749-50 (7th Cir. 1999) ; citing NTEU - addressed what seventh circuit assess to determine whether prior restraint is unconstitutional. Inaccurate as to Jones' holding. (ECF 176 at 9, citing ECF 175 at 7) | Mistake: Court is correct that Jones does not contain this. Rather the discussion that occurs with regarding to referencing NTEU pertains to the balancing of the government's interest in the restriction. I am unaware why this was placed here or how it may have ended up here. *Indeed, in Pl's Br in Opposition (ECF 163 at 8), I did describe the discussion in *Jones* as I had remembered. "Even in the workplace, such restrictions must be narrowly tailored and justified by actual—not speculative—government interests. United States v. NTEU, 513 U.S. 454, 465 (1995); Milwaukee Police Ass'n v. Jones, 192 F.3d 742, 749–50 (7th Cir. 1999)." (ECF 163 at 8) (quotations refer only to language in the brief - not quotation marks in the brief). |