# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CHAD PELISHEK,**

Plaintiff,

v.  Case No.: 2:23-CV-1048

**CITY OF SHEBOYGAN**

Defendant.

## DEFENDANT'S RESPONSE TO JENNIFER DEMASTER AND CHRISTOPHER KACHOUROFF'S RESPONSE TO SHOW CAUSE ORDER

**NOW COMES** Defendant City of Sheboygan ("Defendant"), by and through the undersigned attorneys, hereby responds to Jennifer DeMaster and Christopher Kachouroff's Response to Show Cause Order (ECF No. 177).

### A. Introduction

On July 23, 2025, this Court issued its decision and order on the Parties' respective summary judgment motions. (ECF No. 176.) As part of that decision, the Court ordered Plaintiff's counsel, Attorneys Christopher Kachouroff and Jennifer DeMaster, to "show cause as to why sanctions, including dismissal of this action in its entirety, should not be imposed for the repeated false representations of law and fact contained in their summary judgment submissions." (ECF No. 176 at p. 52.) The Court invited Defendant to submit a response to Plaintiff's counsel's submission, and to also address any additional material misrepresentation or egregious behaviors by counsel associated with summary judgment as well as any applicable law or argument regarding appropriate sanctions.

As detailed below—and as the Court has already observed—Plaintiff's summary judgment submissions were replete with fabricated case citations, quotations or references that appear nowhere

in the decisions cited, and factual assertions that are misrepresented, unsupported, or internally contradictory. Federal courts nationwide have consistently held that such conduct warrants sanctions, regardless of whether it stems from the misuse of AI tools or the claimed inexperience of counsel. The range of sanctions imposed in these circumstances includes dismissal of claims, entry of default judgment and monetary penalties, among others.

### B. MISREPRESENTED OR UNSUPPORTED FACTS OR LAW IN PLAINTIFF'S BRIEFINGS

Defendants have been forced to devote extraordinary time, expense and effort to rebutting Plaintiff's ever-shifting factual narratives and untenable legal positions, not only at the summary judgment stage but throughout much of discovery. This has been no isolated misstep; it reflects, in defense counsel's view, a persistent pattern of advancing misrepresentations, half-truths, and legally unsupportable assertions that have needlessly multiplied these proceedings.

For example, 11 of the proposed facts offered by Plaintiff in support of his Motion for Partial Summary Judgment are contradicted by his own deposition testimony. (See ECF No. 141 at ¶¶ 5, 11, 12, 16, 29, 33, 34, 36, 48, 49 and 50.) Plaintiff through counsel also takes the liberty of seemingly fabricating and/or expanding the contents of a written document – the March 8 email. In his Brief in Support of Partial Summary Judgment (ECF No. 125 at p. 4-5), he places quotation marks around italicized sentences when discussing the contents of the March 8 email, but much of the quoted language is nowhere near the actual language in the email or is non-existent. For instance, as Defendants' summarized in their opposition to Plaintiff's Motion for Partial Summary Judgment:

| **Plaintiff's Brief** | **Language Actually in March 8 email** |
|---|---|
| *"Employees are not permitted to discuss the investigation or any related matters unless expressly authorized by the City."* | "Because the City is a party to a federal lawsuit, no employee is allowed to speak about matters related to former Administrator Wolf or business of the City of Sheboygan involving former Administrator Wolf to anyone **without our Attorneys being present.**" (Emphasis added). |

2

| | |
|---|---|
| *"All requests for information regarding this matter must be referred to Mayor Sorenson, City Attorney Adams or HR Director."* | "If you are asked by staff members/employees about what is happening, this report is a public record and I would **encourage you** to encourage them to read the documents themselves. Beyond that, I would **recommend** saying something to the effect of, 'I would really like to be able to discuss this with you, but I am just not the best person to answer that.' You **can** direct them to the Mayor, the City Attorney, or myself depending on the nature of the question." (Emphasis added). |
| *"Any discussion of the investigation, including speculation, personal opinions or unauthorized disclosures, is strictly prohibited and may result in disciplinary action."* | No such language exists in the March 8 email. |
| *"Failure to comply with this directive may result in disciplinary action, up to and including termination."* | No such language exists in the March 8 email. |
| *"Employees must not share personal views, interpretations, or opinions regarding the investigation, either internally with colleagues or externally with the public."* | "I would also like to give you all some responses and reminders if you get questions by staff, citizens, or the media.<br>1. Because the City is a party to a federal lawsuit, no employee is allowed to speak about matters related to former Administrator Wolf or business of the City of Sheboygan involving former Administrator Wolf to anyone **without our Attorneys being present**.<br>2. If you are asked by staff members / employees about what is happening, this report is a public record and I would **encourage you** to encourage them to read the documents themselves. Beyond that, I would **recommend** saying something to the effect of, 'I would really like to be able to discuss this with you, but I am just not the best person to answer that.' You **can** direct them to the Mayor, the City Attorney, or myself depending on the nature of the question." (Emphasis added). |
| *"Any employee who believes they have relevant information regarding this matter should report it directly to the City's legal representatives and refrain from independent discussions."* | No such language exists in the March 8 email. |

3

(ECF No. 140 at pp. 13-14.; also see ECF No. 13-6.) As with other positions taken in the case, Plaintiff's counsel's response to this is alarming, to say the least. In the Reply Brief in Support of Plaintiff Chad Pelishek's Motion for Partial Summary Judgment, his counsel argues:

> The City's Opposition attempts to cast Pelishek's brief (ECF No. 125) as quoting directly from the directives. This is not the true or intended meaning of the italicized language as shown by the context of the subsequent paragraphs showing what Pelishek perceived the written *and verbal* restrictions to require. His motion refers not only to the March 8, 2023, written directive but also to oral directives given between September 2022 and March 2023. See infra Part II(a). (PPMF ¶¶ 21, 22, 24, 47, 37, 43, 44, 51; PPMF 2 ¶¶1, 8, 20, 35, 49). The written directives' language is undisputed, and Pelishek's understanding of their impact and that of the verbal directives on his speech is relevant.

(ECF No. 171 at p. 6.) (Emphasis original.) However, in the brief itself, counsel wrote that "[t]he directives stated in part . . . . " when quoting the passages noted above, and as support for this specifically cited to PPMF ¶ 43. (ECF No. 125 at p. 4-5.) Nothing other than PPMF ¶ 43 is cited to in support of the quoted language here. (*Id.*) The problem is that PPMF ¶ 43 concerns the written directive (the March 8 email) and makes no reference whatsoever, direct or otherwise, to any alleged verbal directives or restrictions. (ECF No. 126 at ¶ 43.)

While Defendant sincerely appreciates the Court's invitation to submit additional examples of misconduct, the existing record already speaks volumes. The state of the law, as detailed herein, the multiple misrepresentations of fact and law recognized by the Court (ECF No. 176 at pp. 6-22), the misrepresentations of fact outlined in Defendants' opposition to Plaintiff's Motion for Partial Summary Judgment (*see* ECF No. 140 at pp.13-14), the repeated contradictions and/or factual inaccuracies and unsupported statements catalogued in Defendants' responses to Plaintiff's proposed statement of facts (*see e.g.* ECF No. 141 at ¶¶ 5, 11, 12, 16, 29, 33, 34, 36, 48, 49 and 50 and ECF No. 169 at ¶¶ 1, 6, 8, 10, 12, 13, 15, 20 and 31) and the misrepresentations of case law summarized in Defendants' Reply Brief in Support of Summary Judgment (*see e.g.* ECF No. 168 at pp. 10-12, fn. 2 in connection with several cases cited by Plaintiff and pp. 14-15 in connection with Plaintiff's cite to

4

*Woods v. City of Berwyn*, 803 F.3d 865 (7th Cir. 2015) together provide more than sufficient grounds for sanctions. In defense counsel's view, the cumulative effect of opposing counsel's conduct warrants the most serious remedy available, including dismissal of the remaining claim, should the Court, in its discretion, determine that such a sanction is appropriate.

### C. SCOPE AND PROPRIETY OF SANCTIONS

While counsel for Plaintiff attempts to deflect (discussed below), downplay or dispute the issues with their conduct identified by this Court, the Court has detailed and found repeated instances of misconduct. (ECF No. 176 at pp. 6-22.) Courts within the Seventh Circuit and elsewhere have long sanctioned both parties and their lawyers for misconduct, which as discussed below has ranged from monetary sanctions to dismissal of claims.

There are several avenues under which the conduct of attorneys can warrant case sanctions that are relevant here. Under Rule 11 of the Federal Rules of Civil Procedure, when submitting a paper to the court, an attorney certifies to the best of their knowledge, information and belief that the legal contentions are warranted and that the factual contentions have evidentiary support (or will likely have evidentiary support after further investigation or discovery). Fed. R. Civ. P. 11(b). If Rule 11 is violated, sanctions may be imposed on any attorney, law firm or party where appropriate. Fed. R. Civ. P. 11(c)(1). Notably, "[o]n its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). Sanctions under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and ". . . may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

Another avenue in which a court can issue sanctions is under 28 U.S.C. § 1927, which "authorizes the Court to sanction an attorney who 'so multiplies the proceedings in any case unreasonably and vexatiously.'" *Littler v. Martinez*, 2020 U.S. Dist. LEXIS 1850, *14-15 (S.D. Ind. Jan. 3, 2020); citing 28 U.S.C. § 1927. "Sanctions are warranted under § 1927 'if the attorney has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice . . . or where a claim [is] without a plausible legal or factual basis and lacking in justification.'" *Littler*, 2020 U.S. Dist. LEXIS 1850 at *14-15; citing *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 708 (7th Cir. 2014) (citation and quotation marks omitted).

Also, "[a] district court may impose sanctions under its inherent authority 'where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith.' " *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018); citing *Tucker v. Williams*, 682 F.3d 654, 661-62 (7th Cir. 2012). In doing so, the court must first make a finding of "bad faith, designed to obstruct the judicial process, or a violation of a court order." *Tucker*, 682 F.3d at 662. The court's inherent authority is broad and may include the entering of a default judgment or dismissal with prejudice. *Fuery*, 900 F.3d at 463. A court may invoke its inherent authority to sanction *sua sponte. Id.* at 468.

With this foundation, Defendant respectfully directs the Court to a summary review of how courts, both inside and outside the Seventh Circuit, have sanctioned conduct similar to what is at issue in this case.

1. **Sanctions for Misrepresentations of Fact or Law**

Misconduct that involves lies or misstatements to the court can warrant the severe sanction of dismissal of claims. No one should need to be reminded that making false statements to the court is inappropriate (*Sanders v. Melvin*, 25 F.4th 475, 481 (7th Cir. 2022)), and the Seventh Circuit has noted that repeated false statements "waste judicial resources and the time and money of honest parties." *Martin v. Redden*, 34 F.4th 564, 568-569 (7th Cir. 2022); citing *Secrease v. Western & Southern Life Ins. Co.*,

6

800 F.3d 397, 402 (7th Cir. 2015). In the Seventh Circuit, a "litigant's misconduct can justify default judgment, and perjury is among the worst kinds of misconduct." *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014) (internal citations omitted); see also *Secrease*, 800 F.3d at 401 ("Dismissal can be appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false.").

Even in scenarios in which the attorney, as opposed to the party, has engaged in the misconduct at issue, a court may enter judgment as a sanction. *Fuery v. City of Chicago*, 2016 U.S. Dist. LEXIS 135086, *44 (N.D. Ill. Sep. 29, 2016) ("A court may enter judgment as a sanction even where there is no misconduct by a party, only by her attorney"); citing *Ball v. City of Chicago*, 2 F.3d 752, 757 (7th Cir. 1993). "'The clients are principals, the attorney is an agent, and under the law of agency the principal is bound by his chosen agent's deeds.'" *Fuery*, 900 F.3d at 467; citing *United States v. 7108 W. Grand Ave.*, Chi., Ill., 15 F.3d 632, 634 (7th Cir. 1994). Of course, the conduct of a plaintiff can be considered as well, and the Seventh Circuit has noted in a case dealing with both the misconduct of plaintiffs and their counsel that: "[a]long with the consideration of the plaintiffs' conduct, the district court was also entitled to examine, as one factor in its consideration, the modus operandi of the attorney as evidenced by her prior disciplinary history." *Fuery*, 900 F.3d at 467. While counsel for Defendant is not aware of Plaintiff's counsel's disciplinary history if any, it is aware, as is the Court, of counsel being sanctioned in another case for misrepresenting case law. (ECF No. 176 at p. 8.)

The Court has cited several instances of false, less than accurate, misleading or unsupported factual assertions by Plaintiff's counsel throughout their summary judgment submissions (ECF No. 176 at pp. 6-22) and, while counsel attempts to explain away or dispute a number of these issues, he concedes that "a fair number of factual citations and case citations are not accurate," although he claims these inaccuracies were not intentional (ECF No. 177 at p. 3). In addition, Plaintiff's summary judgment submissions contained a fake case along with cites to language or holdings in other cases

7

that were not found anywhere in the cases cited. (ECF No. 176 at pp. 6-7; also see ECF No. 168 at pp. 10-12, fn. 2; and pp. 14-15 in connection with Plaintiff's cite to *Woods*, 803 F.3d 865.) Although counsel argues that the matters at issue were not intentional misconduct or intentional misrepresentations, the Seventh Circuit instructed in a bankruptcy case that:

> "Bad faith" sounds like a subjective inquiry, and this is probably why Judge Hertz looked for evidence of "malice" on White's part. Despite its sound, however, "bad faith" has an objective meaning as well as a subjective one. See *Knorr*, supra, 738 F.2d at 226-27 (summarizing and reconciling this circuit's cases on § 1927). A lawyer has a duty, which the recent amendment to Rule 11 emphasizes, to limit litigation to contentions "well grounded in fact and . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed. R. Civ. P. 11. ***If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious.*** To put this a little differently, a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law. Our court has long treated reckless and intentional conduct as similar, see *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1040 (7th Cir.) cert. denied, 434 U.S. 875, 98 S. Ct. 224, 54 L. Ed. 2d 155 (1977). See also *Optyl Eyewear Fashion International Corp. v. Style Cos.*, 760 F.2d 1045, 1048 (9th Cir. 1985) (§ 1927 allows a remedy in the event of bad "intent, recklessness, or bad faith"). A lawyer's reckless indifference to the law may impose substantial costs on the adverse party. Section 1927 permits a court to insist that the attorney bear the costs of his own lack of care.

*In re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985) (emphasis added); see also *Smith v. CB Commer. Real Estate Group*, 947 F. Supp. 1282, 1285-1286 (S.D. Ind. 1996) (a Title VII and Section 1981 case citing to and applying the standards of bad faith articulated in *In re TCI*).

The inaccuracies in Plaintiff's submissions did not just involve misunderstandings or incorrect interpretation of law, or merely technically incorrect case citations; they involved references to a fake case, references to language in cases that do not exist and incorrect or unsupported factual assertions. This presents as unreasonable and in bad faith and is compounded, or perhaps confirmed, by the fact that (as this Court noted) another court has held that Plaintiff's counsel have used non-existent case law or case references in another case. (ECF No. 176 at p. 8.) While counsel argues that the conduct at issue was not intentional misconduct, the sheer number of issues and the egregious nature of the

8

conduct combined with counsels' modus operandi (as gleaned from the actions the district court in Colorado noted in issuing sanctions against them) can support an inference of bad faith. See *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 979 (E.D. Cal. 2005) ("When an attorney repeatedly and vexatiously presents 'facts' and 'law' to the Court that are plainly wrong or misleading, which needlessly prolong and multiply the summary judgment proceedings and materially increase the burden on the Court, bad faith can be inferred.")

The Parties had ample time for summary judgment submissions and Plaintiff's submissions should not have been completed in a hurried or negligent manner, but rather in a reasonable matter. The issues found throughout Plaintiff's summary judgment submissions cannot be said to have been done with any degree of reasonableness, and Defendant respectfully submits that the numerous misrepresentations of fact and law contained therein amount to the type of unreasonable and vexatious conduct that can support a dismissal of Plaintiff's remaining claim under the law in this circuit, especially when viewed in light of counsel's recent conduct before the district court in Colorado.

**2. Sanctions for Improper Use of AI or Hallucinated Cases**

Even if the misrepresentation of fact identified by the Court and Defendants and counsels' history of being recently sanctioned in another district court are taken out of the calculus, sanctions are available to address counsel's other conduct. As noted by the Court, Plaintiff's summary judgment submissions contained references to a case that does not exist and other case citations that included materially false representations, including non-existent quoted language from a case. (ECF No. 176 at pp. 6-7.) Plaintiff's counsel claims that none of this was intentional misrepresentations and appears to blame some of the issues on faulty AI tools, at least with respect to the tool(s) ability to accurately and reliably check citations and case references. (ECF No. 177 at p. 12.) As of the filing of their Response to the Show Cause Order, Plaintiff's counsel still has no explanation for where the non-existent *Gomez* case cited to in their briefing comes from. (ECF No. 177 at p. 14.)

9

Given the advent of generative AI in the legal field, there have been a number of cases within the last couple years in which parties have used, and have been sanctioned for, submitting briefings with AI generative false citations or fabricated quotations or explanatory parentheticals. For example, a few weeks ago, a district court in the Eastern District of Michigan was faced with a situation in which a party, while citing real cases, affiliated those cases with fabricated quotations or explanatory parentheticals that did not accurately reflect the holding of the case cited. *Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC*, No. 23-11310, 2025 U.S. Dist. LEXIS 143941, at *2-3 (E.D. Mich. July 28, 2025). While the court ultimately did not find that the citations were submitted in bad faith, the court noted that ". . . Rule 11 sanctions may be imposed regardless of whether an error was made in good or bad faith" and that " '. . . the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely.' " *Id.* at *5-6; citing *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (additional citations omitted.) Since harm was done as a result of plaintiff's actions in the form of defense counsel expending additional resources in responding to Plaintiff's updated briefing and the diversion of judicial resources, the Court ordered plaintiff's counsel to pay defense counsel's costs in relation to the issue at hand. *Id.* at *5-7. The court there also encouraged, but did not require, plaintiff's counsel to attend CLE courses. *Id.* at *7.

In a case a few months ago, a district court in the Southern District of Indiana imposed a $6,000 sanction on an attorney for submitting briefings that contained non-existent cases. *Mid Cent. Operating Eng'rs Health v. Hoosiervac LLC*, No. 2:24-cv-00326-JPH-MJD, 2025 U.S. Dist. LEXIS 100748, at *1-4 (S.D. Ind. May 28, 2025). And, in a 2025 case out of the district court in Wyoming, the court there held in addressing cites to non-existent case in motions in limine that "An attorney who signs a document certifies they made a reasonable inquiry into the existing law. Fed. R. Civ. P. 11(b). While technology continues to change, this requirement remains the same." *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 499 (D. Wyo. 2025). Because Respondents failed to make a reasonable

inquiry into the law contained in a document they signed, sanctions are warranted." *Id.* The attorneys there were sanctioned with monetary penalties ranging from $3,000 to $1,000. *Id.* In an Eastern District of California case, an attorney cited a fake citation in a filing and, when the opposing party made note of it, stated that it was an "inadvertent citation error" and refused to admit that he used generative AI. *United States v. Hayes*, 763 F. Supp. 3d 1054, 1070-71 (E.D. Cal. 2025). The court there imposed a $1,500 fine on counsel, and ordered that the clerk issue a copy of the order to the D.C. Bar and the California Bar. *Id.* at 1073. The Court also ordered the clerk to issue a copy of the order on all district judges and magistrate in that district. *Id.* Finally, in *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023), the district court there ordered an attorney to send copies of the court's opinion to the judges falsely identified as authors of fake opinions cited by the lawyer and to pay $5,000, to be paid jointly and severally, to the Court as a penalty. The court noted that "[m]any harms flow from the submission of fake opinions." *Id.* at 448.

### 3. Sanctions for Improper Submissions by Inexperienced Counsel

While applauding Attorney DeMaster's ability to win her first trial with minimal or no support, Attorney Kachouroff spends a considerable amount of time offering Attorney DeMaster's lack of experience as a reason to excuse and not sanction the conduct at issue. The lack of experience of an attorney can mitigate against the nature and type of sanctions ordered, but it does not absolve the lawyer of accountability and shield against sanctions.

For example, in *Chwarzynski v. Tebbens*, 2008 U.S. Dist. LEXIS 77217, *4-5 (N.D. Ill. Sept. 10, 2008), the Northern District of Illinois took into consideration among other items a lawyer's "status as a sole practitioner and his apparent inexperience in federal litigation" in assessing potential sanctions. After considering the same, the court found that ". . . an award of one quarter of the fees defense counsel reasonably expended on the suit and none of the costs [was] an appropriate sanction." *Id.* at *4-5 (citations omitted). In *Noga v. Kimco Corp.*, 1997 U.S. Dist. LEXIS 21128, *21 (N.D. Ill Dec.

11

31, 1997), the district court there held that "[t]he total award of sanctions is reasonably reduced to account for Kimco's duty to mitigate, Berkover's inability to pay, his inexperience in the practice of employment discrimination law and the absence of any history of misconduct." In that case, the court awarded one-half of reasonable attorney fees for a period of time. *Id.* At the end of the day, "[i]f a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 708 (7th Cir. 2016).

Submitting, for example, case law that does not exist is not the action of a reasonably careful attorney. As a district court in the Northern District of California aptly noted in issuing Rule 11 sanctions against a seven-year attorney, if the complexities of a case was truly too much for an inexperienced lawyer to handle, she should have asked for help. *Moser*, 366 F.Supp.2d at 977. Attorney DeMaster certainly had some access to Attorney Kachouroff. And, if Attorney Kachouroff was too busy with other commitments to help, he was (as he notes in the Response to Show Cause Order) part of an "established law firm." (ECF No. 177 at p. 16.) She certainly could have sought some assistance from others in the firm and, to the extent she did not, this is yet another example of her failure to act in the manner of a reasonably careful attorney.

At any rate, Attorney Kachouroff appears to be an experienced attorney and, while Attorney DeMaster e-signed many of the documents filed in this case, both his name and Attorney DeMaster's name are listed in the signature blocks of several summary judgment related filings, including the Brief in Support of Plaintiff Chad Pelishek's Motion for Partial Summary Judgment on the Issue of the City's Liability (Monell) for His First Amendment Prior Restraint Claim (ECF No. 125), Plaintiff's Responses and Objections to Defendants' Proposed Findings of Facts (ECF No. 144) and the Reply Brief in Support of Plaintiff Chad Pelishek's Motion for Partial Summary Judgment (ECF No. 171). Further, Attorney Kachouroff's e-signature was included on Plaintiff Chad Pelishek's Brief in

12

Opposition to Defendants Motion for Summary Judgment (ECF No. 143). Thus, while Attorney Kachouroff may not have been the author of any of the troubled filings, his name was attached to the same and they cannot avoid accountability by pointing to the inexperience of one of the lawyers on the case.

### D. IMMATERIAL OR IRRELEVANT CONSIDERATIONS

Much of Attorney Kachouroff's response is little more than a series of smoke-and-mirrors tactics designed to obscure, rather than confront, the conduct at issue. He deflects blame at every turn—going so far as to throw his own co-counsel under the proverbial bus by attributing the missteps in this case to her. He ventures far outside the four corners of the Court's Show Cause Order, attempting to shift the focus to Defendants' alleged practices, which are wholly irrelevant to the matter at hand. He also spends a considerable amount of time attempting to reiterate the merits of the case, which is wholly outside the purpose of the Show Cause Order. And, rather than accept responsibility for the accuracy and integrity of Plaintiff's submissions, he seeks to excuse them by invoking the use of AI tools, as if the reliance on such tools could somehow absolve counsel of the fundamental, nondelegable duty to review, verify, and ensure the propriety of filings.

As to the seemingly strategic use of Attorney DeMaster's purported inexperience to avoid sanctions, the law does not create free passes for objectively unreasonable conduct by an inexperienced attorney and as discussed above courts have sanctioned attorneys whose lack of experience may have contributed to miscues or missteps in the case. See *Chwarzynski*, 2008 U.S. Dist. LEXIS 77217; *Noga*, 1997 U.S. Dist. LEXIS 21128.

With respect to counsel's attempt to side-step and shift the focus of the inquiry to alleged deficiencies in Defendants' summary judgment submissions, the Show Cause Order is directed at Plaintiff's counsel and their submissions and Defendants' briefings are not what is at issue. Regardless, counsel's arguments miss the mark. Initially, he alleges that there were a number of citation errors in

Defendants' briefing, and in support of the same cites to and relies on the very Westlaw tool he claims is deficient and unreliable. (ECF No. 176, at pp. 12-13.) He then goes on to try to provide a few examples of alleged improper representations in Defendants' briefing, but this too falls flat. First, he claims that Defendants' citation to *Andrews v. CBOCS West, Inc.*, 743 F.3d 230 (7th Cir. 2014) in their Brief in Support of Motion for Summary Judgment (ECF No. 116) is somehow improper because it was "expressly overruled by *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (C.A. 7 2016)." (ECF No. 177 at p. 13.) This is a new misrepresentation. The overruling in *Andrews* was a procedural overruling which was only directed toward the opinion to the extent it insists on the use of the direct and indirect framework. *Ortiz*, 834 F.3d at 765-66. The portion that Defendants cited it for (regarding adverse employment actions) was not impacted by *Ortiz* and was even cited by the United States District Court for the Northern District of Illinois for the exact same reason in 2018, well after the *Ortiz* ruling. *See Foggey v. City of Chi.*, No. 16 CV 10963, 2018 U.S. Dist. LEXIS 18225, at *16 (N.D. Ill. Feb. 5, 2018).

Attorney Kachouroff then goes on to criticize Defendants' purported use and alleged misuse of the ellipsis omission signal. He states that Defendants omitted verbiage from a quote they included in their Opposition to Plaintiff's Motion for Partial Summary Judgment from *Velez v. City of Chi.*, 442 F.3d 1043, 1049 (7th Cir. 2006). However, the verbiage omitted is just that, and the representation made for the legal predicate that where a deposition and an affidavit are in conflict, the affidavit is to be disregarded is in the case, as opposed to the made-up or fictional material in Plaintiff's briefing. Attorney Kachouroff then points toward Defendants' use of the ellipsis omission signal in the same brief, but for the quote included from *Aldous v. City of Galena*, 702 Fed. Appx. 439, 441-42 (7th Cir. 2017). He claims that the ellipsis somehow represent to the Court that free speech retaliation case law is controlling authority for prior restraint analysis. The reality is that the Defendants' citation to *Aldous* was mainly to shed light on First Amendment case law relative to speech that is a matter of

14

public concern which is precisely the subject matter of the Plaintiff's brief which Defendants addressed. (*See* ECF No. 125 p. 8-9.)

With respect to counsel's attempt to place failures and/or misrepresentations identified by the Court on allegedly unreliable AI tools, the potential pitfalls associated with over reliance on AI is no secret. Many courts have dealt with the issue, and many lawyers and lawyer organizations have provided commentary on the same, including the American Bar Association who issued a formal opinion on July 29, 2024 on the use of Generative Artificial Intelligence (or "GAI") tools, noting among other things that "[b]ecause GAI tools are subject to mistakes, lawyers' uncritical reliance on content created by a GAI tool can result in inaccurate legal advice to clients or misleading representations to courts and third parties." (See American Bar Association Formal Opinion 512, at p. 3 (July 29, 2024).[1] Significantly, the AI tool counsel raises issue with – Quick Check – is a GAI.[2] AI tools are not new and their limitations are, or should be, sufficiently well-known. Accordingly, a reasonably careful attorney would not completely delegate case review to AI or otherwise blindly rely on AI. Unreasonable use of AI in making false representations to courts is sanctionable. *See supra* at Section C.2.

Finally, Attorney Kachouroff argues that various factual representations the Court expressed concern with are in fact supported by previous uncited or unreferenced portions of the record and from there takes the opportunity to essentially relitigate the merits of various issues in the case. (See ECF No. 177 at pp. 5-7, 8-12.) But, the purpose of the Show Cause Order was not to relitigate the merits of the case. See *In re Davis*, 2018 U.S. App. LEXIS 14105, *5 (7th Cir. 2018) (admonishing an attorney in noting that ". . . our order to show cause was not an invitation to relitigate the merits of

---

[1] https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/ethics-opinions/aba-formal-opinion-512.pdf

[2] While counsel appears to associate Westlaw's Quick Check feature as regenerative AI (ECF No. 177 at p. 12), the website discussing the feature describes it as generative AI: https://legal.thomsonreuters.com/en/products/westlaw-precision

15

this appeal.") Defendant respectfully requests that counsel's effort to rehash decided matters through his response to the Show Cause Order be rejected

E. CONCLUSION

For all the reasons discussed here, there are grounds, under the law in this Circuit and others, to support the dismissal of Plaintiff's remaining claim and other sanctions for the conduct noted by the Court, herein and throughout this litigation.

Dated this 13th day of August, 2025

Respectfully submitted by,

**MWH Law Group LLP**
By: */s/ Warren E. Buliox*
Warren E. Buliox
Kerrie Murphy
735 N. Water Street, Suite 610
Milwaukee, WI 53202
(414) 436-0353 Phone
(414) 436-0354 Facsimile
warren.buliox@mwhlawgroup.com
kerrie.murphy@mwhlawgroup.com
julie.bittner@mwhlawgroup.com
emery.harlan@mwhlawgroup.com

**COUNSEL FOR DEFENDANT CITY OF SHEBOYGAN**