2025 WL 2112705
Only the Westlaw citation is currently available.
United States Court of Appeals, Seventh Circuit.

Robert FLETCHER and Bartlow
Gallery, Ltd, Plaintiffs, Cross-Appellees,

v.

Peter DOIG, Defendant-Appellee, Cross-Appellant,

Appeal of: William Frederick Zieske.

Nos. 23-2364 & 16-3508
|
Argued May 15, 2024
|
Decided July 29, 2025

**Synopsis**
**Background:** Painting owner and art dealer brought action against artist who purportedly created painting, seeking declaration of right to attribute painting to artist with regard to owner's intended sale of painting. After bench trial which resulted in judgment in favor of artist, the United States District Court for the Northern District of Illinois, Gary Feinerman, J., 2022 WL 18027447, granted artist's post-judgment motion for sanctions against owner, dealer, and dealer's attorney on basis that action lacked objectively reasonable basis. Dealer's attorney appealed.

**Holdings:** The Court of Appeals, Lee, Circuit Judge, held that:

[1] fact that district court had previously denied artist's motion for summary judgment did not per se preclude court from awarding sanctions after conclusion of trial;

[2] district court acted within its discretion in awarding sanctions under both Rule 11 and statute providing for imposition of liability on an attorney for excessive costs based on vexatious litigation; and

[3] district court did not improperly place upon owner's attorney the burden to disprove propriety of award of attorneys' fees.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Sanctions; Motion to Alter or Amend Judgment.

West Headnotes (17)

[1] **Federal Courts** ⟶ Sanctions

Court of Appeals reviews for abuse of discretion a decision to award sanctions under either Rule 11 or statute providing for imposition of liability on an attorney for excessive costs based on vexatious litigation. 28 U.S.C.A. § 1927; Fed. R. Civ. P. 11.

[2] **Federal Courts** ⟶ Altering, amending, modifying, or vacating judgment or order; proceedings after judgment

Court of Appeals reviews for abuse of discretion the denial of a motion to alter or amend judgment. Fed. R. Civ. P. 59(e).

[3] **Federal Courts** ⟶ Sanctions

Court of Appeals reverses a district court's imposition of sanctions, following decision to impose sanctions under either Rule 11 or statute providing for imposition of liability on an attorney for excessive costs based on vexatious litigation, only if one or more of the following is true: (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary. 28 U.S.C.A. § 1927; Fed. R. Civ. P. 11.

[4] **Attorneys and Legal Services** ⟶ Multiplication of proceedings in general

**Attorneys and Legal Services** ⟶ Unwarranted, groundless, or frivolous papers or claims

**Summary Judgment** ⟶ Operation and effect

Fact that district court had denied artist's motion for summary judgment did not per se preclude court from imposing, following conclusion of bench trial which resulted in judgment for artist, frivolous-litigation sanctions against painting owner's attorney under Rule 11 and statute providing for imposition of liability on an attorney for excessive costs based on vexatious litigation, in case in which owner of a painting which artist denied having created sought declaration of owner's right to attribute painting to artist; summary judgment decision required construing facts in light most favorable to owner, while sanctions decision did not, and propriety of sanctions did not depend solely on contents of complaint but rather also on continued affirmations to court. 28 U.S.C.A. § 1927; Fed. R. Civ. P. 11, 56.

[5] **Summary Judgment** In conjunction with right to judgment as matter of law

Summary judgment is appropriate only if there are no disputed questions of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

[6] **Summary Judgment** Favoring nonmovant; disfavoring movant

In determining whether a genuine issue of material fact exists, as would preclude summary judgment, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. Fed. R. Civ. P. 56.

[7] **Federal Civil Procedure** Questions for Jury

**Summary Judgment** Weighing evidence, resolving conflicts, and determining credibility

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not functions of a judge deciding a summary judgment motion. Fed. R. Civ. P. 56.

[8] **Costs, Fees, and Sanctions** Mandatory duty or discretion

The decision to impose Rule 11 sanctions based on lack of evidentiary support for claims is a matter of the district court's discretion after considering the evidence. Fed. R. Civ. P. 11(b)(3).

[9] **Costs, Fees, and Sanctions** Objective or subjective standard

In making the decision as to whether Rule 11 sanctions should be imposed based on lack of evidentiary support for claims, the court must undertake an objective inquiry into whether the party or counsel should have known that its position was groundless. Fed. R. Civ. P. 11(b)(3).

[10] **Attorneys and Legal Services** Multiplication of proceedings in general

Under statute providing for imposition of liability on an attorney for excessive costs based on vexatious litigation, district courts are afforded broad discretion to impose sanctions. 28 U.S.C.A. § 1927.

[11] **Attorneys and Legal Services** Multiplication of proceedings in general

To find an attorney liable under statute providing for imposition of liability on an attorney for excessive costs based on vexatious litigation, subjective bad faith is not always necessary and must be shown only if the conduct under consideration had an objectively colorable basis. 28 U.S.C.A. § 1927.

[12] **Attorneys and Legal Services** Multiplication of proceedings in general

If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious, as would fall within scope of statute providing for imposition of liability on an attorney for excessive costs based on vexatious litigation. 28 U.S.C.A. § 1927.

[13] **Attorneys and Legal Services** Multiplication of proceedings in general

**Attorneys and Legal Services** Unwarranted, groundless, or frivolous papers or claims

District court acted within discretion in awarding sanctions against painting owner's attorney under both Rule 11 and statute providing for imposition of liability on an attorney for excessive costs based on vexatious litigation, after bench trial which resulted in judgment in favor of artist in case in which owner of a painting which artist denied having created sought declaration of owner's right to attribute painting to artist, based on owner's contentions that signature on painting was similar to artist's name and that the painting was made approximately 50 years earlier by a person who was incarcerated at prison where owner worked and who had facial features resembling those of artist; while artist provided owner with list of witnesses who could verify artist was not incarcerated during period at issue, owner and art dealer did nothing to seek evidence from any of those witnesses, and, by time of trial, only evidence for claims was owner's recollection, which owner admitted was "rough." 28 U.S.C.A. § 1927; Fed. R. Civ. P. 11.

[14] **Attorneys and Legal Services** Multiplication of proceedings in general

Purpose of statute providing for imposition of liability on an attorney for excessive costs based on vexatious litigation is to compensate the injured party and compel the attorney to bear the cost of his own lack of care. 28 U.S.C.A. § 1927.

[15] **Attorneys and Legal Services** Multiplication of proceedings in general

Trial court is not required to consider attorney's ability to pay when imposing sanctions under statute providing for imposition of liability on an attorney for excessive costs based on vexatious litigation. 28 U.S.C.A. § 1927.

[16] **Attorneys and Legal Services** Evidence

District court, in awarding attorneys' fees as sanctions against painting owner's attorney, did not place upon attorney the burden to disprove propriety of fee award, as would be improper, despite sanctions order's reference to whether attorney "meaningfully respond[ed]" to artist's itemized fees, in case in which court imposed sanctions under both Rule 11 and statute providing for imposition of liability on an attorney for excessive costs based on vexatious litigation after bench trial resulted in judgment in favor of artist, in case in which the owner of a painting which artist denied having created sought declaration of owner's right to attribute painting to artist; language at issue merely recounted fact that court ordered attorney to file substantive challenges to sanctions request. 28 U.S.C.A. § 1927; Fed. R. Civ. P. 11.

[17] **Costs, Fees, and Sanctions** Presumptions, inferences, and burden of proof

Applicant for attorneys' fees bears burden of establishing entitlement to award and documenting appropriate hours expended and hourly rates.

Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. No. 1:13-cv-3270 — **Mary M. Rowland**, *Judge*.

**Attorneys and Law Firms**

Robert Fletcher, Ontario, Canada, Pro Se.

Bartlow Gallery, Ltd, Chicago, IL, Pro Se.

Joseph R. Marconi, David M. Macksey, Adam John Sedia, Attorneys, Johnson & Bell, Ltd., Chicago, IL, for Appellant William Frederick Zieske.

Matthew S. Dontzin, Attorney, Dontzin Kolbe & Fleissig LLP, New York, NY, for Defendant-Appellee.

Before Brennan, Kirsch, and Lee, Circuit Judges.

**Opinion**

Lee, Circuit Judge.

**\*1** This case involves two conflicting narratives over the origin of a painting. Robert Fletcher and Bartlow Gallery, Ltd., believe that Peter Doig, a well-known artist, created a painting depicting a desert scene with a pond while Doig was incarcerated in Canada in the 1970s. According to Fletcher, he purchased the work from Doig at that time for $100. Doig flatly disputes this, saying that he was never incarcerated in Canada and the work certainly is not his. Fletcher and Bartlow sued, asking the court to declare that it was Doig who created the painting.

After three years of heated litigation, the district court held a bench trial and sided with Doig, finding that the landscape was not painted by the artist, but by another individual named Peter *Doige.* And so, the court entered judgment against Fletcher and Bartlow and in favor of Doig.

At the conclusion of the case, Doig and the other named defendants filed a motion seeking sanctions against Fletcher, Bartlow, and their counsel, William Zieske, under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 for litigating the case in bad faith. The district court granted the motion, and Zieske now appeals the award of sanctions and the district court's subsequent denial of his motion to amend that award.[1]

Central to Zieske's argument is the district court's prior ruling denying Doig's motion for summary judgment on the grounds that there were genuine disputes of material fact. But good faith to prosecute a claim at one stage of the litigation does not preclude a more fulsome record from rendering the claim frivolous later. Because the district court did not abuse its discretion in granting the motion for sanctions here, we affirm.

**I**

**A. The Painting**[2]

In the mid-1970s, Fletcher attended Lakehead University in Thunder Bay, Ontario, and he worked as a correctional officer at the Thunder Bay Correctional Center (TBCC). During that time, Fletcher purchased a painting from a prisoner incarcerated at TBCC. The painting depicted a desert landscape with a pond.

Fletcher had observed the painting's progress from its initial stages to completion over a period of some months, as the painter composed the work in TBCC art classes. After the painter was released from prison, Fletcher helped the artist find employment through the Seafarers Union in Thunder Bay, and the painter (presumably, out of gratitude) sold the painting to Fletcher for $100. The painter signed the painting, "1976 Pete Doige."

Nearly forty years later, in 2011, Fletcher's friend noticed the painting while visiting Fletcher's home and suggested that it had been created by renowned artist, Peter Doig. Hoping to sell the painting, Fletcher contacted art dealer, Peter Bartlow, who owned Bartlow Gallery. Fletcher and Bartlow agreed to split the proceeds of any sale.

**\*2** Around the same time, Fletcher contacted Sotheby's for an estimate in the event that the painting was sold at auction. He received an email response acknowledging the rarity of such an early painting by Doig and requesting more information, such as whether the work was signed, dated, or titled; the painting's size; and the history of the painting and how Fletcher came to acquire it.

Meanwhile, Bartlow sought to authenticate the painting. First, he sent an email to Doig regarding the painting and Fletcher's acquisition of it. Doig's associate responded, stating that Doig had never lived or attended school in Thunder Bay and did not believe he knew Fletcher.

Despite this, Bartlow emailed Gordon VeneKlasen, Doig's longtime gallerist. In the email, Bartlow noted Fletcher's belief that he had purchased the painting from Doig and observed that Bartlow could not find any accounts of Doig's life from 1976 to 1978. Suggesting that Doig may desire

to keep his incarceration private, Bartlow proposed that VeneKlasen ask Doig to admit authorship of the work so that "the circumstances shall remain forgotten."

In the ensuing exchange, VeneKlasen declared that the painting was not authored by Doig, and Bartlow accused Doig of falsifying records to obscure facts about his past. Bartlow resolved to "turn up the heat a notch" in the face of Doig's denial that the work was his.

**B. The Proceedings**
Fletcher and Bartlow filed this lawsuit in 2013 against Doig, VeneKlasen, Matthew Dontzin (Doig's attorney), and Dontzin Law Firm LLP. They alleged that the defendants had interfered with their prospective economic advantage and requested a declaratory judgment stating their right to attribute the painting to Doig.

In response, Dontzin and his firm served Fletcher and Bartlow's counsel, William Zieske, with a letter notifying him of their intention to seek sanctions pursuant to Rule 11(c) and demanding that he withdraw the complaint. Attached to the letter were numerous exhibits, including correspondence from Lakehead University indicating that no one by the name of Peter Doig had ever been enrolled there; search results from a police database indicating that Peter Doig did not have a criminal record; records from Doig's secondary school as well as correspondence with family members indicating that he was not incarcerated in 1975 or 1976; and internet searches for "Peter Doige" showing that there were several individuals with that name living in Canada.

When the plaintiffs refused to withdraw their complaint, the defendants provided a sworn declaration by Marilyn Doige Bovard. In it, Bovard stated that she was the sister of one Peter Edward Doige, who had attended Lakehead University in the 1970s. She also recalled that in the 1970s, her brother had been incarcerated at TBCC, where he had taken painting and music classes and created several paintings and drawings. To top it off, Bovard said that the desert scene depicted in the painting in question resembled a location in Arizona where she and her brother had lived for six months. Attached to her declaration were copies of Doige's Lakehead University student ID and his driver's license, along with a statement of his death.

At a September 2013 status hearing, the district court invited Zieske to consider staying the case to determine whether the painting had been created by Doige rather than Doig given the evidence the defendants had produced. The court reminded Zieske that, even if he had had a reasonable basis for initiating the case, he could "lose an objectively reasonable basis in the middle of the litigation." The district court commented that it was at least conceivable that such time had come. Undeterred, Zieske declared his intent to continue pursuing the case.

**\*3** Some months later, Zieske submitted an affidavit, in which he recounted a conversation with Peter Doige's (and Bovard's) mother. According to Zieske, their mother believed that Doige had never spent any time in Ontario or Thunder Bay, contradicting Bovard. But Zieske never introduced any testimony from Doige's mother to substantiate this claim, and, at a May 7, 2014 hearing, Zieske explained to the court that he would not be doing so because Doige's mother had refused to cooperate as a witness.

As discovery proceeded, the facts continued to mount in the defendants' favor. Documents from the Seafarers Union in Thunder Bay and Lakehead University confirmed Peter Edward Doige's membership in the union and attendance at the school during the period in question. The defendants also obtained a declaration from an inmate at TBCC in the late 1970s who had taken art classes, as well as one from the TBCC art teacher from 1975 to 1977. Both swore that Peter Doige had created the paining. What is more, Doig identified more than twenty witnesses who, he claimed, had knowledge that he was not in Thunder Bay during the years in question. Later, at trial, Bartlow admitted that he never attempted to contact those individuals, because he had assumed they would give false testimony to support Doig's story.

By contrast, the plaintiffs never procured any evidence to substantiate their assertion that Doig had been employed with the Thunder Bay Seafarers Union. And Lakehead told them that it had no records at all for a Peter Doig.

After discovery, Doig moved for summary judgment on December 11, 2015. By this time, the court had dismissed the claims against the other defendants. Fletcher and Bartlow opposed the motion, citing a report by Bartlow himself purporting to authenticate the painting as Doig's and a report by a third-party art appraiser, who assessed the value of the work under the assumption that Doig was the painter. They also provided a declaration by Fletcher, recounting his experience meeting Doig and purchasing the landscape. Fletcher also expressed his belief that the recent depictions of Doig in YouTube videos resembled the painter he had met in

Canada in the 1970s in mannerisms, facial features, and hand gestures.

The district court denied Doig's motion for summary judgment on April 6, 2016. Central to the court's decision was Fletcher's affidavit statements that Doig was the person he had met at Thunder Bay—statements, the court recognized, it must credit as true on summary judgment. Additionally, the court noted the gap in Doig's school records for the relevant years, 1976 and 1977; the lack of indisputable evidence that Doig was not in Thunder Bay during that time; and the art appraiser's opinion that could be inferred as evidence going to Doig's authorship (at least, at the summary judgment stage).

In August 2016, the district court held an eight-day bench trial. In the end, the court returned a verdict for Doig, finding that the evidence "conclusively demonstrate[d]" that Peter Doig "absolutely did not paint the disputed work," and "Peter Edward Doige did author the work."

**C. The Sanctions Award**

After securing a victory, the defendants filed a post-judgment motion for sanctions against Fletcher, Bartlow, and Zieske, invoking Rule 11(c), 28 U.S.C. § 1927, and the court's inherent authority. They argued that the complaint lacked an objectively reasonable basis and that the plaintiffs and their counsel had pursued the action on frivolous grounds.

**\*4** The district court granted the motion in part and denied it in part in a December 30, 2022, order. The district court concluded that sanctions were warranted against Fletcher, Bartlow, and Zieske for their continued pursuit of the action from May 7, 2014, through the entry of judgment. Although the court stopped short of finding that Fletcher and Bartlow had commenced the action in bad faith, it observed that they and Zieske should have had substantial doubt about the claims as discovery proceeded.

According to the court, by at least May 7, 2014—when Zieske reported to the court that Doige's mother would not cooperate as a witness—"it should have become indisputably clear to Plaintiffs and Zieske that their claims stood no chance of success and, in fact, that the claims were factually meritless." As the district court saw it, by that date, the three should have recognized that they lacked anyone who would undermine Bovard's account or otherwise rebut the defendants' evidence that Doige was the creator of the painting. Developments later in the litigation, the district court pointed out, only served to underscore the "total implausibility" of their claims.

As for the amount of the award, the district court reviewed the reasonableness of the defendants' fees and reduced the requested amount by twenty percent. The district court also awarded to the defendants fifty percent of their purported non-taxable costs. In all, the court imposed a sanction of $2,525,958.35, for which Fletcher, Bartlow, and Zieske were jointly and severally liable, and rejected Zieske's request to reduce the fee to reflect his inability to pay.

Zieske subsequently moved to alter or amend the sanctions order under Rule 59(e).[3] The district court denied the motion, finding that the "sanctions were unfortunately appropriate," and rejected Zieske's argument that survival of summary judgment was inconsistent with the imposition of sanctions.

## II

[1] [2] [3] Zieske now appeals both the sanctions order and the order denying his motion to amend the award of sanctions. We review the district court's decisions to award sanctions and deny the Rule 59(e) motion for abuse of discretion. *See Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 916 (7th Cir. 2015) (Rule 11 sanctions); *United States v. Rogers Cartage Co.*, 794 F.3d 854, 862 (7th Cir. 2015) (§ 1927 sanctions); *Tucker v. Williams*, 682 F.3d 654, 661 (7th Cir. 2012) (sanctions pursuant to inherent judicial power); *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (motion to reconsider under Rule 59(e)). Salient here, "[w]e reverse a district court's imposition of sanctions only if one or more of the following is true: (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Mullen v. Butler*, 91 F.4th 1243, 1250 (7th Cir. 2024) (internal quotation marks omitted).

On appeal, Zieske raises three issues: (1) whether the district court erred in imposing sanctions; (2) whether the district court erred by declining to consider Zieske's ability to pay under 28 U.S.C. § 1927; and (3) whether the district court erred by, in Zieske's words, shifting the burden to him and requiring him to disprove the reasonableness of the defendants' proposed attorneys' fees.

**A. Imposition of Sanctions**

**\*5** **[4]** Zieske's principal argument is that the district court's decision to award sanctions is legally irreconcilable with its prior denial of summary judgment. But this argument fails for two main reasons. First, a motion for summary judgment and motion for sanctions are governed by two very different standards. Second, the two motions may require the court to consider very different records.

**[5]** **[6]** A district court's decision on summary judgment under Rule 56 is governed by a different standard than the decision to impose sanctions under Rule 11 or § 1927. [4] Under Rule 56, "[s]ummary judgment is appropriate only if there are no disputed questions of material fact and the moving party is entitled to judgment as a matter of law." *Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 465 (7th Cir. 2018). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Myers v. Hasara*, 226 F.3d 821, 825 (7th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

**[7]** Particularly apropos here, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," not functions of a judge deciding a summary judgment motion. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Indeed, we have repeatedly stressed that summary judgment should be denied even when a non-movant's opposition is based upon self-serving statements, so long as they are supported by adequate foundation such as personal knowledge. *See, e.g., Durukan Am., LLC v. Rain Trading, Inc.*, 787 F.3d 1161, 1164 (7th Cir. 2015); *Navejar v. Iyiola*, 718 F.3d 692, 697–98 (7th Cir. 2013) (reversing summary judgment based on error discounting party's affidavit as "self-serving"). [5]

**[8]** **[9]** By contrast, Rule 11 requires that the factual contentions underlying claims must "have evidentiary support" or must "likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). The decision to impose sanctions is a matter of the district court's discretion after considering the evidence, *see Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025 (7th Cir. 1999), and in making the decision, the court must undertake an objective inquiry into whether the party or counsel should have known that its position was groundless, *see Cuna Mut. Ins. Soc'y v. Office & Prof'l Emps. Int'l Union, Loc. 39*, 443 F.3d 556, 560 (7th Cir. 2006).

**[10]** **[11]** **[12]** District courts are likewise afforded broad discretion to impose sanctions under § 1927, which authorizes sanctions against any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927; *see Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1082 (7th Cir. 2018). To find an attorney liable under § 1927, "[s]ubjective bad faith ... is not always necessary" and "must be shown only if the conduct under consideration had an objectively colorable basis." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006). "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Id.* (internal quotation marks omitted).

**\*6** Notably, nowhere in Rule 11 or § 1927 does it say that a denial of summary judgment always precludes an imposition of sanctions for frivolous litigation. This makes sense given Rule 56's insistence that the court view the record in the light most favorable to the non-movant, while Rule 11 and § 1927 require the court to evaluate the strength and bases of the claims as well as the conduct of the parties and their attorneys.

Furthermore, the factual record the parties present at summary judgment may be substantially different from the facts before the court when it considers a motion for sanctions. For example, it is not uncommon for the parties to discover additional evidence between summary judgment and trial that bear on the strength of their claims. Moreover, when considering a sanctions motion, the court may be called to consider the history of the proceedings as well as the conduct of the parties and their respective counsel.

Thus, a denial of summary judgment does not excuse the parties and counsel from their obligations under Rule 11 and § 1927 for the remainder of the case. As the Rule 11 Advisory Committee aptly observed, "a litigant's obligations with respect to the contents of [court] papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Thus, an attorney, who advances a claim or defense during a pretrial conference on the eve of trial, is subject to the obligations of Rule 11(b) "measured as of that time." *Id.*

Resisting this conclusion, Zieske points to the Advisory Committee's statement that, "if a party has evidence with respect to a contention that would suffice to defeat a motion for summary judgment based thereon, it would have sufficient evidentiary support for purposes of Rule 11." *Id.* When read in context, however, this statement simply recognizes that (1) a factual contention a party makes in support of or in opposition to summary judgment satisfies Rule 11 so long as it is supported by some evidence at the time it is made, and (2) a court's finding of a material dispute as to that contention reflects the existence of such evidentiary support. But that is different from what we have here.

In this case, the district court imposed sanctions much later in the proceedings, with a more complete record before it and with the ability to evaluate the entire procedural history as well as the evidence each side presented at trial. Accordingly, its earlier denial of Doig's summary judgment motion did not handcuff its ability to evaluate Zieske's compliance with Rule 11 and § 1927 as the case proceeded.

The cases upon which Zieske relies do not mandate a contrary conclusion. In *LeBeau v. Libbey-Owens-Ford Co.*, for example, we held that the district court abused its discretion in imposing sanctions against the Equal Employment Opportunity Commission (EEOC) and awarding attorneys' fees to an employer and a union in a Title VII case. 799 F.2d 1152, 1164 (7th Cir. 1986). There, the district court had denied summary judgment, ruling that the question of the defendants' intent could not be answered as a matter of law, five years before holding that the EEOC's suit was frivolous and ordering sanctions. *Id.* at 1157. In reviewing the district court's decisions, we noted that "when a trial judge rules that there are facts under which a plaintiff can prevail, it is highly inconsistent for him to later find the suit frivolous because it is foreclosed as a matter of law." *Id.* at 1158. But the panel followed that observation with a caveat: it did "not suggest ... that no suit that survives a motion for summary judgment can ever be found frivolous." *Id.* at 1158 n.7.

**\*7** Zieske's citations to *Lemaster v. United States*, 891 F.2d 115 (6th Cir. 1989), and *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452 (2d Cir. 1988), are similarly misplaced. We observe, as an initial matter, that both cases involved a prior version of Rule 11 rather than the current version. *See Calloway*, 854 F.2d at 1469 (noting that Rule 11 required filings to be "well grounded in fact"). But, even putting that to the side, *Lemaster* and *Calloway* actually support Doig's position. In both cases, the courts affirmed the lower courts' orders imposing sanctions well after summary judgment despite the fact that the courts had denied summary judgment motions earlier in the proceedings. *See Lemaster*, 891 F.2d at 121 (noting that the "mere survival of a summary judgment motion, in which all facts are construed in the non-movant's favor, does not insulate the party from sanctions if it is later determined that all factual claims were groundless"); *Calloway*, 854 F.2d at 1473 (affirming sanctions and explaining that "[i]t is ... entirely possible that a baseless factual claim will survive a motion for summary judgment, particularly where an attorney prepares an affidavit for a client s[t]ating a material fact for which there is no basis").

**[13]** For these reasons, the sole basis Zieske presents for challenging the district court's sanctions order—that it could not do so because it had denied summary judgment earlier—is legally unsound. With that, we turn to the district court's reasons for imposing sanctions.

In its order, the district court recounted the September 2013 status hearing and its admonition to Zieske that, even though he might have had an objectively reasonable basis to commence the case, he could lose it as the litigation proceeds. The court also marked the significance of the May 7, 2014, hearing, during which Zieske reported that he would not be able to produce Doige's mother as a witness. By that time, the district court concluded, Fletcher, Bartlow, and Zieske should have realized that no one from Doige's family would be able to refute Bovard's account that Doige was at TBCC at the relevant time or contradict the defendants' evidence that it was Doige and not Doig who had painted the desert landscape.

In addition, the district court found it "[m]ost troubling[ ]" that, while Doig had provided the plaintiffs with a list of potential witnesses who could verify that he was not at TBCC in 1976 and 1977, the plaintiffs had done nothing to seek evidence from any of them. Commenting on this approach, the court cited our statement in *Hill v. Norfolk and Western Railroad Co.*, that such an "ostrich-like tactic" is "as unprofessional as it is pointless." 814 F.2d 1192, 1198 (7th Cir. 1987).

Turning to the trial, the district court noted that Fletcher's recollections—the plaintiffs' principal evidence— were "irreparably shaky and, in fact, wrong." For example, Fletcher initially believed that the TBCC art teacher was a different person; he could not identify the parole officer or

superintendent at the facility; and he incorrectly recalled that his brother was the person to first suggest that Doig had painted the landscape. This was not surprising given that Fletcher was in his sixties by the time of the trial and the events in question took place in the 1970s. Indeed, Fletcher himself admitted that his recollection was "rough."

The district court contrasted this with the evidence Doig presented to corroborate his assertion that he was nowhere near Thunder Bay during the years in question. For example, Doig not only testified that he was attending a Toronto school in the late 1970s, but he also presented his yearbook photographs as well as other pictures of him in Toronto during that time. And Doig's mother corroborated his testimony, testifying that no one in the family had ever been to Thunder Bay.

But this is not all. Doig also presented evidence indicating that, while he was not at Thunder Bay, Doige *was*. For instance, Doige's sister provided a copy of Doige's Lakehead University student ID card from the 1970s, bearing Doige's photo, name, and signature. A former TBCC inmate also reviewed the Lakehead ID photo and stated that he recognized the man as another TBCC inmate named Peter Doige, who happened to be a good painter. And Doig offered the statements of Doige's ex-wife, who through trial and deposition testimony recalled that Doige had told her that he had once been jailed in Thunder Bay.

**\*8** It was only after evaluating the entirety of the evidence and the procedural history of the case that the district court determined that, by May 7, 2014, Fletcher, Bartlow, and Zieske either knew or should have known that "they had no objectively reasonable basis for their claims that it was unreasonable for them to continue with the suit."

Although reasonable minds might disagree as to this determination, we apply a deferential standard when reviewing a district court's imposition of sanctions, and we cannot conclude that the district court's findings were unreasonable. See *Harrington v. DeVito*, 656 F.2d 264, 269 (7th Cir. 1981) ("Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found.").

To be fair, there is no indication that the plaintiffs or Zieske lacked a good faith basis to initiate the lawsuit; a case may be filed based upon the "shaky" memories of a litigant like Fletcher. But as the case progresses, such memories may either be borne out or invalidated by the evidence. Sometimes, as here, the record develops in a way that makes it plain that the memories were simply unfounded and incorrect. It is the responsibility of parties and their lawyers to discern if and when that happens and take the appropriate action consistent with their duties under Rule 11 and § 1927.

### B. Ability to Pay

Next, Zieske attacks the district court's failure to account for his ability to pay when calculating the appropriate sanctions award. In rejecting Zieske's argument that his ability to pay should be considered, the district court cited *Shales v. General Chauffeurs, Sales Drivers and Helpers Local Union No. 330*, 557 F.3d 746, 749 (7th Cir. 2009). In *Shales*, we held that an attorney's ability to pay is not relevant to the imposition of sanctions under § 1927. See *id.* We explained there that a violation of § 1927 is akin to an intentional tort, and just as "there is no principle in tort law that damages depend on a tortfeasor's assets," so too in the § 1927 context, "[d]amages depend on the victim's loss, not the wrongdoer's resources." *Id.*

**[14]** **[15]** This rule comports with § 1927's purpose to compensate the injured party and compel the attorney to "bear the cost of his own lack of care." *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987) (quoting *In re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985)); *cf. Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205 (10th Cir. 2008) (noting that § 1927 "fits much more comfortably with a victim-centered approach" and expressing "reluctan[ce] to supply a parsimony provision where Congress has not done so"). The district court, therefore, did not abuse its discretion when it refused to consider Zieske's ability to pay when imposing sanctions.

### C. Attorneys' Fees Award

**[16]** Finally, Zieske argues that the district court improperly placed upon him the burden to disprove the propriety of the attorneys' fees award. As he sees it, the court presumed that the defendants' requested fees were reasonable and effectively required Zieske to disprove their reasonableness. He says that the following statement in the court's order demonstrates this point:

> But Zieske is wrong that he could not meaningfully respond to Defendants' itemized fees and costs. The court told Zieske that he 'should assume that the court will find

that sanctions are warranted for the post-5/7/2014 time frame.' That meant that Zieske should explain whether the fees and costs incurred by Defendants after May 7, 2014 were reasonable—plainly indicating that the court would find that reasonable fees and costs incurred after that date directly resulted from his sanctionable conduct (continuing the litigation).

**\*9  [17]** Zieske is correct that the "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (superseded in part by statute on other grounds). But the district court followed this principle, requiring the defendants to file a memorandum with evidentiary support substantiating the fees they sought. The defendants complied and filed a 350-page document with billing entries and supportive materials.

Rather than filing a response challenging the defendants' request, Zieske submitted a document requesting additional clarification from the court as well as additional time to file a response. At this request, the district court responded that Zieske should assume that the court would find sanctions were warranted for the post-May 7, 2014 timeframe, and the court granted Zieske's requested extension. Zieske again filed a document arguing that he was not sufficiently informed of the basis for the sanctions against him and had not been afforded an adequate opportunity to respond to the requested fees. Thus, in the passage Zieske cites, the district court was merely recounting its order that Zieske file substantive challenges to the defendants' petition. It does not support Zieske's contention that the district court was presuming the reasonableness and appropriateness of the defendants' request.

Indeed, prior to arriving at the final amount, the district court considered each of Zieske's arguments that the fees were unreasonable, conducted its own independent review, and deducted the requested fee amount by twenty percent. We find no abuse of discretion in the district court's conclusions.

### III

For the foregoing reasons, we AFFIRM the award of sanctions and the judgment of the district court.

**All Citations**

--- F.4th ----, 2025 WL 2112705

---

## Footnotes

1   Although Doig filed a cross-appeal, he has chosen not to pursue it.

2   The facts are taken from the district court's findings from the bench trial and are uncontroverted unless otherwise noted.

3   After this motion was filed, Judge Gary Feinerman retired, and the case was reassigned to Judge Mary M. Rowland.

4   The district court did not rely on its inherent authority when imposing sanctions, viewing Rule 11 and § 1927 as sufficient grounds for its order. Thus, we limit our discussion to these two sources of authority.

5   Whether and to what degree a claimant's patently inaccurate, self-serving statements alone can overcome a mountain of directly contradictory evidence, such as what the defendants presented in this case, is a question not before us today.

---

**End of Document**   © 2025 Thomson Reuters. No claim to original U.S. Government Works.