UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHAD PELISHEK,

            Plaintiff,

v.                                            Case No. 23-CV-1048

CITY OF SHEBOYGAN,

            Defendant.

## ORDER

**1. Background**

On July 23, 2025, the court issued its decision and order addressing the parties' respective summary judgment motions. (ECF No. 176); *Pelishek v. City of Sheboygan*, No. 23-CV-1048, 2025 U.S. Dist. LEXIS 140645 (E.D. Wis. July 23, 2025). In that decision, the court devoted many pages to discussing misrepresentations of both law and fact in the plaintiff's summary judgment submissions, both in the materials submitted in support of the plaintiff's motion for partial summary judgment and in the materials submitted in opposition to the defendants' summary judgment motion. *Id.* at *6-*26. In light of those misrepresentations, the court found that the plaintiff had failed to sustain his burden and denied the plaintiff's motion for summary judgment. (ECF No. 176 at 14.)

In addition, the court ordered plaintiff's counsel—Jennifer DeMaster and Chris Kachouroff—to show cause as to why sanctions, including dismissal of the plaintiff's action, should not be imposed pursuant to Federal Rule of Civil Procedure 11(c) and the court's inherent authority. *See Pelishek*, 2025 U.S. Dist. LEXIS 140645, at *26; *see also* Gen. L.R. 83(d) ("Attorneys practicing before this Court are subject to the Wisconsin Rules of Professional Conduct for Attorneys…. After notice and opportunity to be heard, any attorney who violates those standards of conduct may be barred from practice before this Court, suspended from practice for a definite time, reprimanded, or subjected to such other discipline as the Court may deem proper.").

Kachouroff and DeMaster have now responded.[1] Kachouroff blames DeMaster for all the errors, stating that he had no role in drafting the relevant documents. (ECF No. 177 at 1.) DeMaster, in turn, blames her inexperience for the errors. (ECF Nos. 177 at 2; 15-19;177-2, ¶ 43.) In other words, she argues she was not dishonest but merely incompetent.

The court detailed counsel's misconduct in its prior order, *Pelishek*, 2025 U.S. Dist. LEXIS 140645, at *6-*26, and will not repeat it here. Suffice it to say that the court found that "counsel has misrepresented what courts have said, what their own proposed

---

[1] Kachouroff represents that he alone authored the response (ECF No. 177 at 1) and only his name appears in the signature block (ECF No. 177 at 20; *see also* ECF No. 181 at 16). The document, however, was filed by DeMaster, or at least under her ECF sign-on and password. This is improper. It is the sign-on, not the s/ followed by a name, that constitutes a signature for purposes of the Federal Rules. *See* Electronic Case Filing Policies and Procedures Manual (E.D. Wis.), II. C. 2. Henceforth, the Clerk will strike any filing in this matter in which the filing attorney's name does not appear in the signature block.

findings of fact say, and what the record before this court says." *Id.* at *16. Moreover, while the misconduct related to summary judgment has been the most extensive and egregious, in literally every "decision this court has issued in this case it has been necessary to comment on errors, misrepresentations, or general sloppiness attributable to plaintiff's counsel." *Id.* at *25 (citing decisions). In fact, this is the second time the court has had to expressly address the matter of sanctions for DeMaster. In the first instance, the court denied the defendants' motion for sanctions under 28 U.S.C. § 1927, noting that although DeMaster's conduct was unreasonable, it was not vexatious. Rather, it tended to reflect inexperience or incompetence. *Pelishek v. City of Sheboygan*, No. 23-CV-1048, 2025 U.S. Dist. LEXIS 15593, at *29 (E.D. Wis. Jan. 29, 2025) (citing Wis. SCR 20:1.1).

The defendants argue that counsel's pattern of misconduct merits the most severe sanction—dismissal of the plaintiff's action. (ECF No. 178 at 5.)

**2. Applicable Law**

In assessing whether to impose sanctions and the nature of any sanction under Rule 11, the court's considerations include:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

3

Fed. R. Civ. P. 11, Advisory Committee Note to 1993 Amendment. Any sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

A court considers sanctions of counsel cautiously and judiciously. "[A] district court must also bear in mind that such sanctions are to be imposed sparingly, as they can 'have significant impact beyond the merits of the individual case' and can affect the reputation and creativity of counsel." *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003) (quoting *Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 118 (7th Cir.1994)). On the one hand, a court should not impose sanctions simply to address persnickety frustration with the parties. On the other hand, the court must not shirk its obligation to impose sanctions when they are warranted. Sanctions are an important means of ensuring the integrity of the legal profession, upholding the dignity of the judicial process, and protecting the public.

The court is also mindful that mistakes happen. As the legal community adjusts to the promise and perils of artificial intelligence, even some courts have seemingly fallen victim to hallucinating artificial intelligence. *See* Justin Henry, "Judge Scraps Opinion After Lawyer Flags Made-Up Quotes," Bloomberg Law (July 24, 2025), available at https://www.bloomberglaw.com/bloomberglawnews/business-and-practice/XE9T5PAC000000. There is a difference between conduct that the court finds incorrect as opposed to that which is so unreasonable as to be sanctionable.

"Mere clumsy lawyering is not enough." *Fuery v. City of Chi.*, 900 F.3d 450, 464 (7th Cir. 2018). Rather, "[t]he standard for imposing sanctions under Rule 11 is an objective determination of whether a sanctioned party's conduct was reasonable under the circumstances." *Brown v. Fed'n of State Med. Bds.*, 830 F.2d 1429, 1435 (7th Cir. 1987). "At the very least, the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely." *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024).

3. Analysis

   3.1. Factors

The court accepts that counsel's errors likely were not the result of an intentional effort to mislead the court but rather partially a product of DeMaster's inexperience. But in much the same way as there is a distinction between an intentional and a negligent act, inexperience mitigates but does not excuse misconduct.

But not all of the errors can be fairly attributed to inexperience. Inexperience may lead an attorney to employ ineffective systems for checking citations. But after identifying errors in legal citations, even the most inexperienced attorney should recognize the need to manually check every citation.

DeMaster and Kachouroff engaged in similar conduct in at least one other case. *Coomer v. Lindell*, Civil Action No. 22-cv-01129-NYW-SBP, 2025 U.S. Dist. LEXIS 128372 (D. Colo. July 7, 2025). Although they insisted in *Coomer* that the conduct was the result

5
Case 2:23-cv-01048-WED    Filed 09/18/25    Page 5 of 14    Document 184

of DeMaster mistakenly filing an earlier draft, that court found that they failed to prove that explanation.

If this court accepted the explanation that plaintiff's counsel provided in the Colorado case, it would mean that by at least February 25, 2025—that date they filed their brief in the Colorado action—they had first-hand knowledge of the danger of artificial intelligence hallucinating cases and misrepresenting holdings. After all, they allegedly recognized the misrepresentations in that case and removed them only to have DeMaster mistakenly file an uncorrected draft. Yet, despite knowing that they were employing artificial intelligence in a way that may result in fabricated caselaw, DeMaster and Kachouroff submitted their brief in support of their motion for summary judgment in this case a week later (and their response to the defendants' motion over a month later), apparently without verifying all of their citations.

The misrepresentations here were pervasive. They were both legal and factual, appeared in documents submitted in support of the plaintiff's motion and in response to the defendants' motion, and persisted even after counsel partially corrected the filings.

There is no evidence that counsel's misrepresentations were vexatious, but they significantly complicated the work of the defendants and the court.

Counsel does not present evidence of their financial resources.

### 3.2. Findings

Whether caused by misused artificial intelligence, misunderstanding the appropriate bounds of legal argument, simple sloppiness, or an intentional effort to mislead the court, misrepresentations of the law should never appear in any court filing. Significantly aggravating counsel's conduct is the fact that misrepresentations persisted after counsel recognized certain errors and amended their briefs. It is inexcusable that counsel would file amended briefs, correcting certain misrepresentations without comprehensively reviewing every citation and argument.

Misrepresentations, whether of law or fact, result in the needless expenditure of resources by the court and an opponent "in exposing the deception." *See Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023). Misrepresentations "promote[] cynicism about the legal profession and the American judicial system." *Id*.

The court accepts that the misrepresentations originated with DeMaster. However, the court cannot wholly excuse Kachouroff. It was Kachouroff that signed and filed the corrected briefs (ECF Nos. 161, 163, 175.) He knew not only that DeMaster was inexperienced but that she had mishandled this litigation. DeMaster asked for Kachouroff's assistance after the denial of her motion to compel resulted in the defendants seeking over $45,000 in expenses. *See Pelishek v. City of Sheboygan*, No. 23-CV-1048, 2025 U.S. Dist. LEXIS 44559, at *2 (E.D. Wis. Mar. 12, 2025). More significantly, he had first-hand experience with the danger of artificial intelligence fabricating citations,

*see Coomer v. Lindell*, Civil Action No. 22-cv-01129-NYW-SBP, 2025 U.S. Dist. LEXIS 77555, at *2 (D. Colo. Apr. 23, 2025), and he knew that DeMaster had submitted briefs to the court with misleading and fabricated citations.

Of course, Kachouroff's culpability and misconduct pales in comparison to that of DeMaster. The fact that she employed Westlaw's Quick Check would mitigate her conduct were it not for the fact that she failed to manually check every citation after she recognized that Quick Check allegedly did not identify her misrepresentations, misquotes, and even a citation to a non-existent case.

Her current attempt to continue to defend her citation to *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007) (ECF No. 177-4 at 2) is troubling because it tends to reflect a basic misunderstanding of the principles of legal writing and argument. *See* Fed. R. Civ. P. 11 Advisory Committee Note to 1993 Amendment. ("[A] litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit."). A citation introduced with a "see" signal acknowledges that "there is an inferential step between the authority cited and the proposition it supports" but the "[c]ited authority clearly supports the proposition" and the stated proposition "obviously follows from it." *See The Bluebook: A Uniform System of Citation* R. 1.2(a), at 62(Columbia L. Rev. Ass'n et al. eds., 21st ed. 2020). In no way did

8
Case 2:23-cv-01048-WED    Filed 09/18/25    Page 8 of 14    Document 184

*Boumehdi* "clearly support[]" the proposition that "ostracism and workload manipulation support hostile work environment claims" (ECF No. 163 at 22) that DeMaster asserted.

There is then the matter of the persistent factual misrepresentations, which the court finds to be entirely the responsibility of DeMaster. The court cannot dismiss this extensive misconduct as simply the product of an ineffective case management system. Ineffective case management may make it difficult for an attorney to identify the evidence to support a proposed fact. But every attorney, no matter how inexperienced, should recognize that, when a district court's local rules require factual statements in a brief to be supported by a citation to a proposed finding of fact, that cited proposed finding of fact must say what counsel represents.

In weighing the appropriate sanction, the court is mindful of the fact that the ultimate sanction of dismissal would significantly prejudice Pelishek. Moreover, accepting plaintiff's counsel's present arguments, Pelishek may have already suffered significant prejudice from the dismissal of a large part of his case because counsel failed to properly address the defendants' motion for summary judgment. However, Pelishek had received ample warnings. According to DeMaster, she explicitly told him at the outset of their relationship that she had no relevant experience. (ECF No. 177-2, ¶ 22.) Moreover, as noted, the court expressed concerns with DeMaster's competence in every decision it issued. Despite these explicit warnings, Pelishek has chosen to continue to have DeMaster represent him.

9
Case 2:23-cv-01048-WED     Filed 09/18/25     Page 9 of 14     Document 184

The extent and persistence of DeMaster's misconduct tends to favor dismissal, particularly in light of how she handled her inexperience over the course of this case. For example, when DeMaster's inexperience in discovery resulted in overbroad and otherwise poorly crafted discovery demands, rather than being chastened when defense counsel pointed this out, she responded with a motion to compel, peppered with indignant hyperbole. *See Pelishek*, 2025 U.S. Dist. LEXIS 44559, at *4-5 (stating that Pelishek's motion to compel "was the sort of motion that never should have merited court intervention, much less counsel's hyperbolic allegations of an 'egregious violation of discovery rules' and that defendants had engaged in 'blatant perjury'"). Even now, as noted above, the court is concerned that DeMaster might not fully recognize or appreciate her misrepresentations. The court cannot characterize this as simply a matter of an inexperienced attorney being in over her head.

That DeMaster has finally taken concrete steps to help address her inexperience, including bringing on Kachouroff and enrolling in continuing education courses aimed to address certain obvious deficits in her knowledge (ECF No. 177 at 16-19), tends to somewhat diminish the need for the harshest sanctions. With these measures there is less concern that, as this case continues, DeMaster will continue to engage in misconduct similar to that which has plagued this case. In light of these remedial measures, the court concludes that dismissal is both unnecessary and unduly harsh. A monetary sanction will

adequately deter plaintiff's counsel specifically and attorneys generally from engaging in future misconduct.

In identifying an appropriate sum, the court notes that counsel's misconduct in *Coomer v. Lindell*, 2025 U.S. Dist. LEXIS 128372 (D. Colo. July 7, 2025), resulted in sanctions of $3,000 each against Kachouroff and DeMaster. The *Coomer* court noted that figure was consistent with sanctions imposed by other courts for similar misconduct. *See id.* at *24.

In *Coomer*, however, the misconduct was more pervasive—roughly 30 misrepresentations of law. *Coomer*, 2025 U.S. Dist. LEXIS 77555, at *3. As that court described counsel's misrepresentations:

> These defects include but are not limited to misquotes of cited cases; misrepresentations of principles of law associated with cited cases, including discussions of legal principles that simply do not appear within such decisions; misstatements regarding whether case law originated from a binding authority such as the United States Court of Appeals for the Tenth Circuit; misattributions of case law to this District; and most egregiously, citation of cases that do not exist.

*Coomer*, 2025 U.S. Dist. LEXIS 77555, at *4.

Here, there were fewer misrepresentations of law but extensive misrepresentations of fact. Thus, the misconduct before this court could easily be regarded as more egregious than the misconduct in *Coomer* that resulted in a total sanction of $6,000.

In the hierarchy of misconduct, knowing misrepresentations are the most egregious. Negligent misrepresentations are less egregious, particularly when preceded

by some means of cite checking, such as Quick Check. Plaintiff counsel's conduct falls below these most severe categories in that the errors were partially corrected. But there is a big difference between the partial correction of misrepresentations and completely correcting all mistakes, especially when counsel chose to undertake only a cursory review of filings they had reason to suspect were plagued with misrepresentations.

As to DeMaster, the court finds that **$4,000** is sufficient but not greater than what is necessary to provide adequate deterrence for the pervasive misconduct that the court has identified. The court recognizes that this figure is arguably low in light of the extent of DeMaster's misconduct and the sanctions imposed in similar cases. It represents only a small fraction of the value of the time that has been needlessly diverted to this matter. The court nonetheless finds that this sum is high enough to cross the threshold into sufficiency, which is to say that a significantly higher sanction would also have been reasonable.

The court is mindful that the public admonition that this court's order represents also serves a deterrent purpose. Moreover, rather than paying additional sanctions to the court, counsel's funds are better spent on continuing education classes to address the myriad deficits in DeMaster's experience and abilities that this action have laid bare. Although the court will not explicitly order DeMaster to undertake continuing legal education, if she is intent on continuing a career as a litigator, the court strongly encourages her to immediately take courses in legal writing and research, discovery, case

management, summary judgment, and substantive law including civil rights and employment law.

As to Kachouroff, the court finds that **$500** is sufficient but not greater than what is necessary to provide adequate deterrence for counsel's misconduct, specifically filing briefs that he did not fully cite check, despite reason to suspect that the briefs contained errors. In accordance with Fed. R. Civ. P. 11(c)(1), the law firm of McSweeney, Cynkar, and Kachouroff, PLLC is jointly liable for this sanction.

That Kachouroff undertook what was in his words merely "a brief gloss" to "ensure that the case citations existed" was unreasonable under the circumstances. At a minimum, he should have reviewed every citation to ensure that each case reflected what DeMaster represented. If Kachouroff was unable to independently verify the accuracy of the citations in the amended brief, Rule 11(b)(2) requires that he not sign and file it. Taking DeMaster's word for the accuracy of the citations was unreasonable under the circumstances.

These sanctions are due to the Clerk of Court within **28 days** of the date of this order. The court finds that staying this order until the conclusion of this action would

unreasonably undermine the deterrent effect of these sanctions.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin this 18th day of September, 2025.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge